**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPHINE JAMES EDWARDS, on behalf of herself and all others similarly situated, <br><br>                      Plaintiff, <br><br> v. <br><br> HEARST COMMUNICATIONS, INC., <br><br>                      Defendant. | 15 Civ. _____ <br><br> **CLASS ACTION COMPLAINT** |

Plaintiff Josephine James Edwards ("Plaintiff" or "Edwards"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violation of Michigan's Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA"), against Hearst Communications, Inc. ("Defendant" or "Hearst"), and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

### NATURE OF THE CASE

1. Hearst publishes hundreds of magazines with worldwide circulation, including such well-known titles as *Good Housekeeping*, *Harper's Bazaar*, *Cosmopolitan*, *Esquire*, *Seventeen*, and *Country Living*.

2. But Hearst is not just a magazine publisher. It is also in the quite lucrative business of selling its subscribers' personal information. That personal information includes subscribers' full names, titles of magazines subscribed to, home addresses, as well as various other personal, lifestyle, and demographic information, such as gender, purchasing habits, political affiliation, religious practice, charitable donations, and the number, age, and/or gender of the subscriber's children

(collectively, the "Intimate Personal Data"). Hearst sells this Intimate Personal Data to third-party advertisers, scammers, and anyone else willing to pay for this information.

3.      As a result of Hearst's sale and disclosure of Intimate Personal Data, Hearst's subscribers, some of whom are the most vulnerable members of our society, are bombarded with personalized advertisements, junk-mail, and in some instances scams by mail and phone. Hearst's subscribers are completely unaware that Hearst is selling their personal information on the open market because Hearst does not obtain consent prior to selling the Intimate Personal Data.

4.      By selling and disclosing the Intimate Personal Data of Plaintiff and all other subscribers, without obtaining their consent, Hearst has acted and continues to act in direct violation of the VRPA, which prohibits companies, including Hearst, from disclosing without permission any record or information concerning a customer's purchase of written materials if the record identifies the customer.

5.      Accordingly, Plaintiff brings this Class Action Complaint against Hearst for its intentional and unlawful disclosure of its subscribers' Intimate Personal Data in violation of the VRPA, for breach of contract, and, in the alternative, for unjust enrichment.

## PARTIES

6.      Plaintiff Josephine James Edwards is a natural person and citizen of the State of Michigan.

7.      Defendant Hearst Communications, Inc. is a Delaware corporation with its principal place of business at 959 Eighth Avenue, New York, New York 10019. Hearst does business throughout the state of Michigan and the United States.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because: (i) the proposed class consists of well over

100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiff, are citizens of a state different from Hearst's home states; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  There are likely tens of thousands of individuals who, while residing in Michigan, had their Intimate Personal Data sold by Hearst. The estimated number of individuals residing in Michigan who were impacted by Hearst's conduct multiplied by the VRPA's statutory liquidated damages figure of $5,000 easily exceeds CAFA's $5,000,000 threshold.

9.      This Court has personal jurisdiction over Hearst because Hearst maintains its corporate headquarters and principal place of business in New York, New York.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Hearst maintains its corporate headquarters and principal place of business in this District.

## FACTUAL BACKGROUND

### I.      Michigan's Video Rental Privacy Act

11.      In 1988, members of the United States Senate warned that records of consumers' purchases and rentals of audiovisual and written materials offer "a window into our loves, likes, and dislikes," and that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7–8 (1988) (statements of Sens. Simon and Leahy, respectively).

12.     Recognizing the need to protect its citizens' privacy rights, Michigan's legislature enacted the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials," by prohibiting companies from disclosing certain types of sensitive consumer information. H.B. No. 5331, 1988 Mich. Legis. Serv. 378.

13.     Section 2 of the VRPA states:

> [A] person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

14.     Michigan's protection of the customer information reflects the "gut feeling that people ought to be able to read books and watch films without the whole world knowing," and recognizes that "[b]ooks and films are the intellectual vitamins that fuel the growth of individual thought. The whole process of intellectual growth is one of privacy—of quiet, and reflection. This intimate process should be protected from the disruptive intrusion of a roving eye." S. Rep. No. 100–599, at 6 (Statement of Rep. McCandless.)

15.     As discussed below, Hearst is systematically violating the VRPA rights of thousands of Michigan residents who subscribe to its magazines.

## II.     Today's Consumers Value Information Privacy

16.     The FTC recently recognized that consumer data possesses inherent monetary value within our current information marketplace, publically stating that:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[1]

17.     In fact, it is now a pervasive practice for companies that collect consumer information to profit from sharing this data with numerous third parties, without ever disclosing such practices to or obtaining consent from the source consumer.  As a result, an entire industry

---

[1]     Statement of FTC Commissioner Pamela Jones Harbour, http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited November 6, 2015).

exists in which companies known as data miners purchase, trade, and otherwise collect massive databases of information about consumers in an open, unregulated market.[2]

18.     Data mining is especially troublesome when consumer information is sold to direct marketing companies, which often use information from subscriber lists to lure unsuspecting consumers, many of whom are elderly, into various scams, including fraudulent sweepstakes, charities, and buying clubs.

19.     The heightened demand for consumer information has caused consumers to recognize the economic value of their private data.  In fact, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their personal data.  As a result, individuals and businesses alike have begun quantifying the value of consumer data and the privacy rights implicated by that data.[3]

### III.     Hearst Unlawfully Sells its Subscribers' Intimate Personal Data

20.     Hearst maintains a vast database of its subscribers' Intimate Personal Data, which it discloses to data mining companies, including Insource and others, who then supplement that information with sensitive personal information about each Hearst subscriber, including gender, purchasing habits, political affiliation, religious practice, charitable donations, and (when applicable) number, age, and gender of the subscriber's children. (*See, e.g.,* **Exhibit "A"** hereto.)

---

[2] *See* Martha C. White, *Big Data Knows What You're Doing Right Now*, time.com (July 31, 2012), http://moneyland.time.com/2012/07/31/big-data-knows-what-youre-doing-right-now/(last visited November 6, 2015).

[3] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited November 6, 2015) ("The real policy issue is not whether consumers value online privacy. It is obvious that people value online privacy.").

21.     Hearst then sells its mailing lists – which include subscribers' Intimate Personal Data, and can include the sensitive information obtained from data miners – to third parties, allowing those companies to identify which individuals purchased which magazines. (*See, e.g., id.*)

22.     As a result of Hearst's data compiling and sharing practices, companies can purchase mailing lists from Hearst that identify Hearst subscribers by their most intimate details: income, political affiliation, religious practice, and charitable donations. Hearst's disclosure of such sensitive and personal information puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

23.     Hearst does not seek its subscribers' prior consent to any of these disclosures and its subscribers remain unaware that their Intimate Personal Data and other sensitive personal information is being bought and sold on the open market.

24.     Consumers can sign up for Hearst subscriptions through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Hearst never requires the individual to agree to any terms of service, privacy policy, or information-sharing policy. Consequently, Hearst uniformly fails to obtain any form of consent from—or even provide notice to—its subscribers before disclosing their Intimate Personal Data.

25.     As a result, Hearst disclosed and continues to disclose its customers' Intimate Personal Data—including their reading habits and preferences that can "reveal intimate facts about our lives, from our political and religious beliefs to our health concerns"[4]—to anybody willing to pay for it.

---

[4] *California's Reader Privacy Act Signed into Law*, Electronic Frontier Foundation (Oct. 3, 2011), https://www.eff.org/press/archives/2011/10/03 (last visited November 6, 2015).

26.     By and through these actions, Hearst has intentionally disclosed to third parties its Michigan subscribers' Intimate Personal Data without consent, in direct violation of the VRPA and in breach of its contracts with Plaintiff and the other members of the Class.

**IV.    The Experience of Plaintiff Josephine James Edwards**

27.     Plaintiff Josephine James Edwards is a resident and citizen of the State of Michigan.

28.     During portions of 2013 and 2014, Ms. Edwards subscribed to *Good Housekeeping* magazine.

29.     *Good Housekeeping* is published, owned, and operated by Hearst.

30.     Ms. Edwards has never agreed to allow Hearst to sell or disclose her Intimate Personal Data to anyone.

31.     Hearst never gave Ms. Edwards prior notice of any sale of her Intimate Personal Data.

32.     However, beginning on the date that Ms. Edwards subscribed to *Good Housekeeping*, and continuing for one year after she cancelled her subscription to *Good Housekeeping*, Hearst disclosed, without consent or prior notice, Ms. Edwards's Intimate Personal Data (including information that identifies Edwards as a *Good Housekeeping* subscriber) to data mining companies including Insource and others, who then supplemented that information with data from their own files.

33.     Furthermore, during that same period, Hearst sold mailing lists containing Ms. Edwards's Intimate Personal Data to third parties seeking to contact Hearst subscribers, without first obtaining Ms. Edwards's written consent or even giving her prior notice of the sales.

34.     Because Hearst sold and disclosed her Intimate Personal Data, Ms. Edwards is now bombarded with junk mail and telephone solicitations offering, *inter alia*, discounted magazine subscriptions and consumer products and services she neither wants nor needs. These unwanted

advertisements and telephone solicitations waste Ms. Edwards's time, money, and resources, and cause her irritation, annoyance, and fear that her personal information will fall into the hands of identity and/or financial thieves and other scammers. This increase in harassing junk mail and phone calls received by Ms. Edwards is directly attributable to Hearst's sale of her Intimate Personal Data.

35.     Additionally, because Ms. Edwards is entitled under Michigan law to privacy in her Intimate Personal Data, and because she paid money for her subscription to *Good Housekeeping*, Hearst's sale of Edwards's Intimate Personal Data deprived Ms. Edwards of the full set of benefits to which she was entitled as part of her *Good Housekeeping* subscription, thereby causing her economic harm.

## CLASS ALLEGATIONS

36.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of a class of similarly situated individuals, defined as follows (the "Class"): "All Michigan residents who subscribed to *Good Housekeeping* and had their Intimate Personal Data disclosed by Hearst to third parties."[5]

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant, and (5) the legal representatives, successors, or assigns of any such excluded person.

---

[5] Plaintiff reserves the right to revise the definition of the Class as necessary based upon information learned in discovery.

37.     **Numerosity**: The number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Ultimately, members of the Class will be easily identified through Defendant's records.

38.     **Adequate Representation:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Neither Plaintiff nor her counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.

39.     **Commonality and Predominance:** There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

   a)  Whether Hearst is "engaged in the business of selling at retail" books or other written materials (*i.e.*, magazines);

   b)  Whether Hearst obtained adequate consent before disclosing to third parties Plaintiff's and the Class members' Intimate Personal Data;

   c)  Whether Hearst's disclosure of Plaintiff's and the Class members' Intimate Personal Data violated the VRPA;

   d)  Whether Hearst's sale of Plaintiff's and the Class members' Intimate Personal Data constitutes a breach of contract; and

e) Whether Hearst's sale of Plaintiff's and the Class members' Intimate Personal Data unjustly enriched Hearst.

40. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the VRPA.

41. This class action is also appropriate for certification because Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, rather than on facts or law applicable only to Plaintiff.

**FIRST CAUSE OF ACTION**
**Violation of Michigan's Video Rental Privacy Act, M.C.L. § 445.1712**
**(On Behalf of Plaintiff and the Class)**

42. Plaintiff incorporates the foregoing allegations in paragraphs 1-41 as if fully set forth herein.

43. As a magazine publisher that sells subscriptions to consumers, Hearst is engaged in the business of selling written materials at retail. *See* M.C.L. § 445.1712.

44.     By paying for and subscribing to *Good Housekeeping*, Plaintiff purchased written materials from Hearst. *See* M.C.L. § 445.1712.

45.     Because Plaintiff purchased written materials from Hearst, Plaintiff is a "customer" within the meaning of the VRPA.  *See* M.C.L. § 445.1711(a).

46.     Beginning on the date Plaintiff initiated her *Good Housekeeping* subscription and continuing at all times relevant for one year after Plaintiff cancelled her *Good Housekeeping* subscription, Hearst disclosed Plaintiff's Intimate Personal Data, which identifies Plaintiff as a *Good Housekeeping* subscriber in two ways: (1) Hearst disclosed mailing lists containing Plaintiff's Intimate Personal Data to data mining companies, who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Hearst; and, (2) Hearst sold its mailing lists containing Plaintiff's Intimate Personal Data, enhanced with additional information from data miners, to other third parties who were then able to use the mailing lists to contact Hearst subscribers. The additional information obtained from the data miners increased the value of the lists and, as a result, increased Hearst's profits generated from selling the lists.

47.     By selling or otherwise disclosing its subscriber lists, Hearst disclosed to persons other than Plaintiff records or information concerning Plaintiff's purchase of written materials from Hearst, namely *Good Housekeeping*. M.C.L. § 445.1712.

48.     Because the information sold or otherwise disclosed by Hearst contained Plaintiff's name and address, and the fact that she subscribed to *Good Housekeeping*, the records and/or information sold or otherwise disclosed by Hearst indicated Plaintiff's identity. M.C.L. § 445.1712.

49.     Plaintiff never consented – orally, in writing or otherwise – to Hearst's disclosure of her Intimate Personal Data.

50.     Hearst failed to provide Plaintiff notice prior to its disclosure of her Intimate Personal Data to third parties.

51.     Hearst's disclosure of Plaintiff's Intimate Personal Data violated Plaintiff's common law right to privacy.

52.     Hearst's disclosure of Plaintiff's Intimate Personal Data violated Plaintiff's statutorily-protected right to privacy in her reading habits. M.C.L. § 445.1712.

53.     Because Plaintiff and the Class paid monetary consideration for their Hearst subscriptions with the understanding that Hearst was obligated to comply with and respect their legal rights under the VRPA, Hearst's disclosure of Plaintiff's and the other Class members' Intimate Personal Data in violation of the VRPA deprived them of the full value of their paid Hearst subscriptions and caused them to overpay for their Hearst subscriptions.

54.     Hearst's unlawful sale of Plaintiff's and the Class members' Intimate Personal Data deprived Plaintiff and the Class members of the value they ascribe to the privacy of their Intimate Personal Data, thereby causing them economic harm.

55.     Because Hearst's failure to comply with the VRPA deprived Plaintiff and the Class of their statutorily-guaranteed right to control the disclosure and use of their Intimate Personal Data, Hearst has diluted the value of Plaintiff's and the other Class members' Intimate Personal Data, and deprived them of the opportunity to sell their Intimate Personal Data at market rates for their own financial gain.

56.     Hearst's disclosure of Plaintiff's Intimate Personal Data to third parties has also caused an influx of third-party print advertisements and marketing calls to her cellular phone, causing damages in the form of decreased available cellular phone minutes, as well as emotional distress in the form of irritation, aggravation, anxiety, and fear that her information will be obtained and misused by identity and/or financial thieves and scammers.

57.     As a direct and proximate result of Hearst's past and continued disclosure of Plaintiff's and the Class members' Intimate Personal Data in violation of the VRPA, Plaintiff and the other Class members have suffered privacy and economic injuries. On behalf of herself and the Class, Plaintiff seeks: (1) an injunction requiring Defendant Hearst to obtain consent from Michigan subscribers prior to the disclosure of their Intimate Personal Data as required by the VRPA; (2) actual damages, including disgorgement, or $5,000.00, whichever is greater, per Class member pursuant to M.C.L. § 445.1715(a); and (3) costs and reasonable attorneys' fees pursuant to M.C.L. § 445.1715(b).

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

58.     Plaintiff incorporates the foregoing allegations in paragraphs 1-41 as if fully set forth herein.

59.     Hearst offered to sell magazine subscriptions to Plaintiff and the other Class members for specific prices. Plaintiff and the other Class members accepted Hearst's offers by agreeing to pay the offered prices as consideration for purchasing the magazine subscriptions. Accordingly, Hearst entered into binding contracts for magazine subscriptions with Plaintiff and the other Class members.

60.     By virtue of the laws in existence at the time the contracts between Hearst and Plaintiff and the other Class members were entered into, including the VRPA, these contracts included obligations for the parties to abide by all applicable laws, including the VRPA.

61.     Plaintiff and the other Class members performed under the contracts with Hearst by paying monetary consideration to Hearst for the purchase of the magazine subscriptions, and by complying with all applicable laws.

62.     Whether such sensitive personal information as the Intimate Personal Data is disclosed to third parties as a result of a consumer transaction is likely to affect a consumer's decision to purchase a product or service.

63.     Hearst's failure to perform its contractual obligations imposed by the VRPA and owed to Plaintiff and the other Class members – including maintaining the confidentiality of their Intimate Personal Data – constitutes a material breach by Hearst of the contracts with Plaintiff and the other Class members.

64.     Plaintiff and the other Class members have suffered actual damages as a result of Hearst's breach in the form of the value that Plaintiff and the other Class members pay for and ascribe to the confidentiality of their Intimate Personal Data, which is tangible and will be calculated at trial.

65.     Additionally, because Hearst profited from its breach, Plaintiff and the other Class members are entitled to disgorgement of all profits obtained by Hearst from its unlawful disclosure of its subscribers' Intimate Personal Data.

66.     Accordingly, Plaintiff and the other Class members seek an order declaring that Hearst's conduct constitutes a breach of contract, and awarding Plaintiff and the Class disgorgement of Hearst's unlawfully obtained profits and damages in an amount to be calculated at trial.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(In the Alternative to Breach of Contract)**
**(On Behalf of Plaintiff and the Class)**

67.     Plaintiff incorporates the foregoing allegations in paragraphs 1-41 and 58-66 as if fully set forth herein.

68.     Plaintiff's claim for unjust enrichment is brought in the alternative to her claim for breach of contract.

69.     Plaintiff and the Class members conferred a benefit on Hearst, namely the provision of their Intimate Personal Data and payment to Hearst for their magazine subscriptions. Hearst received and retained the information and money belonging to Plaintiff and the Class when Plaintiff and the Class subscribed to Hearst publications.

70.     Hearst appreciates and/or has knowledge of such benefits.

71.     Under principles of equity and good conscience, because Hearst failed to comply with the VRPA, Hearst should not be allowed to retain the full amount of money Plaintiff and the Class paid for their subscriptions or the money it received by selling Plaintiff's and the Class's Intimate Personal Data.

72.     Plaintiff and the Class members have suffered actual damages as a result of Hearst's unlawful conduct in the form of the value that Plaintiff and the other Class members pay for and ascribe to the confidentiality of their Intimate Personal Data, which is tangible and will be calculated at trial.

73.     To prevent inequity, Hearst should return to Plaintiff and the other Class members the value they ascribe to the confidentiality of their Intimate Personal Data and all money derived from Hearst's sale and disclosure of Plaintiff's and the other Class members' Intimate Personal Data.

74.     Accordingly, Plaintiff and the other Class members seek an order declaring that Hearst's conduct constitutes unjust enrichment, and awarding Plaintiff and the other Class restitution in an amount to be calculated at trial equal to the amount of money obtained by Hearst through its sale and disclosure of Plaintiff's and the Class's Intimate Personal Data.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Josephine James Edwards, on behalf of herself and the Class, prays that the Court enter judgment in her favor and against Hearst and for the following relief:

(1)     Certify the Class as defined above, appoint Plaintiff as Class Representative, and designate her counsel as Class Counsel;

(2)     Declare that Hearst's conduct as described herein violates the Video Rental Privacy Act, M.C.L. § 445.1712;

(3)     Declare that Hearst's conduct as described herein constitutes a breach of contract, or, in the alternative, unjust enrichment;

(4)     Award actual damages, including disgorgement, or $5,000, whichever is greater, to each Class member, as provided by the Video Rental Privacy Act, M.C.L. § 445.1715(a);

(5)     Award injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Hearst to cease the unlawful disclosures discussed herein;

(6)     Award of reasonable attorneys' fees, interest and costs, M.C.L. § 445.1715(b); and

(7)     Such other and further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of all claims so triable.

Dated:  November 24, 2015                    Respectfully submitted,

                                            /s/ John C. Carey

                                            **CAREY RODRIGUEZ
                                            MILIAN GONYA, LLP**

                                            John C. Carey (NY Bar No. JC-4639)
                                            jcarey@careyrodriguez.com
                                            David P. Milian*
                                            dmilian@careyrodriguez.com
                                            Frank S. Hedin*
                                            fhedin@careyrodriguez.com
                                            1395 Brickell Avenue, Suite 700
                                            Miami, Florida 33131
                                            Telephone: (305) 372-7474
                                            Facsimile:  (305) 372-7475
                                            *Pro Hac Vice Application Forthcoming*

                                            ***Counsel for Plaintiffs and the Putative Class***

16