# HEARST *corporation*

Jonathan R. Donnellan
*Vice President*
*Deputy General Counsel*

**BY ECF**                                                                 January 6, 2016

*Office of*
*General Counsel*

*Eve Burton*
*Senior Vice President*
*and General Counsel*

*Jonathan R Donnellan*
*Mark C Redman*
*Vice President*
*Deputy General Counsel*

*Kristina E Findikyan*
*Larry M Loeb*
*Kenan J Packman*
*Peter P Rahbar*
*Maureen Walsh Sheehan*
*Ravi V Sitwala*
*Jack Spizz*
*Debra S Weaver*
*Senior Counsel*

*Jennifer Bishop*
*Abraham S Cho*
*Marianne W Chow*
*Adam Colón*
*Travis P Davis*
*Carolene S Eaddy*
*Shari M Goldsmith*
*Carl G Guida*
*Audra B Hart*
*Diego Ibargüen*
*Charlotte Jackson*
*Siu Y Lin*
*Alexander N Macleod*
*Kate Mayer*
*Kevin J McCauley*
*Alexandra McGurk*
*Jonathan C Mintzer*
*Aimee Nisbet*
*Elliot J Rishty*
*Shira R Saiger*
*Eva M Saketkoo*
*Aryn Sobo*
*Jennifer G Tancredi*
*Stephen H Yuhan*
*Counsel*

*Catherine A Bostron*
*Corporate Secretary*

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   ***Josephine James Edwards, individually and on behalf of others similarly situated v. Hearst Communications, Inc.*, 15-cv-09279-PKC-HBP**

Dear Judge Castel:

I write on behalf of Defendant Hearst Communications, Inc. ("Hearst") pursuant to Rule 4.A.1 of Your Honor's Individual Practices to respectfully provide a summary of the legal and factual bases for its anticipated Motion to Dismiss the Complaint in this matter pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, requesting a stay of this matter pending the outcome of a potentially dispositive case before the U.S. Supreme Court, and to request a briefing schedule for such Motion. An initial pretrial conference in this matter is scheduled for February 5, 2016 at 12:45 p.m.

1.   **Key Factual Allegations**: Hearst is a publisher of widely-circulated magazines (Compl. ¶ 1) and Plaintiff Josephine James Edwards purports to be a former subscriber to one of those magazines, *Good Housekeeping*. (Compl. ¶ 28) Plaintiff alleges that Hearst violated the Michigan Video Rental Privacy Act (the "VRPA"), M.C.L. § 445.1711 *et seq.*, by "selling" her so-called "Intimate Personal Data" ("IPD")[1]— including her name, title of the magazine she subscribed to, and home address—to third parties. (Compl. ¶¶ 2, 4, 5) Plaintiff claims that this resulted in her receiving "third-party print advertisements and marketing calls" (Compl. ¶ 56) and otherwise caused Plaintiff "irritation, annoyance, and fear that her personal information will fall into the hands of identity and/or financial thieves and other scammers." (Compl. ¶ 34) Plaintiff also alleges that Hearst breached its contracts with its *Good Housekeeping* subscribers by failing to comply with the Michigan VRPA. (Compl. ¶¶ 58-66) In the alternative to her breach of contract claim, Plaintiff claims that part of her magazine subscription price should have ensured the confidentiality of her IPD, that she did not get that value, and that Hearst was thus unjustly enriched. (Compl. ¶¶ 67-74) Plaintiff styles this case as a class action seeking a statutory penalty of $5,000 for herself and every member of

---

[1] The facts and allegations set forth in this letter are taken from Plaintiff's Complaint, *see* ECF No. 1, and are assumed true only for purposes of this letter and Hearst's forthcoming Motion to Dismiss.

*300 West 57 Street*
*New York, NY 10019*
*T  212 649 2051*
*F  646 280 2051*
*Email: jdonnellan@hearst.com*

a putative class of all Michigan resident *Good Housekeeping* subscribers whose IPD has been shared with third parties without consent, creating a theoretical damages claim of catastrophic proportions. While the VRPA does not apply to all those who may possess IPD, plaintiff alleges that Hearst is a "retailer" covered by the law because it sells magazine subscriptions. (Compl. ¶ 43)

It is important to note that a substantially similar putative class action lawsuit, arising under substantially similar factual allegations[2], was filed against Hearst over six months ago in this same federal district. That matter, styled *Boelter v. Hearst Communications Inc.*, 15-cv-03934 (S.D.N.Y.), is currently pending before the Honorable Analisa Torres. Plaintiff in this matter failed to designate her Complaint as related to the *Boelter* action on the Civil Cover Sheet, *see* ECF No. 2, despite having taken large portions of the allegations in the *Boelter* Complaint and including them verbatim in her own Complaint. The plaintiff in the *Boelter* case has since filed a Notice of Related Action, *see* ECF No. 3, to make this Court aware that a substantially similar putative class action lawsuit was previously filed, and is still pending, in this district.[3]

**2.    The Statute At Issue**: The Michigan VRPA was enacted in 1988, in the wake of the federal Video Privacy Protection Act ("VPPA"). Both laws were a reaction to a newspaper article that discussed videos that Judge Robert Bork had rented from his neighborhood video store; the article was published during debate over Judge Bork's nomination to the Supreme Court. *See* Privacy: Sales, Rentals of Videos, Etc., House Legislative Analysis Section, H.B. 5331 (Mich. 1989). The Michigan law is far broader than the VPPA, and is not confined to video rental histories. It provides that persons "engaged in the business of selling at retail, renting, or lending books or *other written materials* . . . shall not disclose to any person, other than the customer, a record *or information concerning* the purchase, lease, rental, or borrowing of those materials by a customer *that indicates* the identity of the customer." M.C.L. § 445.1712 (emphasis added). The VRPA incorporates several exceptions to its broad sweep, including disclosures "for the exclusive purpose of marketing goods and services directly to the consumer." M.C.L. § 445.1713(d). The VRPA thus makes an exception for the very sort of disclosures targeted by the Complaint. Those invoking the marketing exception "shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." *Id*. Violation of the VRPA is punishable criminally as a misdemeanor (§ 445.1714), and also carries a minimum civil penalty of $5,000— providing for "the greater of" that penalty or actual damages caused by disclosure. *Id*. § 445.1715. In addition, the VRPA provides separately for the recovery of attorneys' fees and costs. *Id*. The VRPA's generous penalty and fee

---

[2] The Plaintiff in *Boelter* alleges she subscribed to Hearst's *Country Living* magazine, but the Plaintiff in this present action alleges she subscribed to Hearst's *Good Housekeeping* magazine.

[3] In light of the *Boelter* plaintiff's Notice of Related Action, we anticipate this action will be consolidated with the *Boelter* action. As such, we have not provided here a proposed briefing schedule for Hearst's Motion to Dismiss. In the event this Court decides this matter is not related to the *Boelter* action and should not be consolidated as such, and determines the case should not be stayed pending *Spokeo*, *see* section 3 below, Hearst would request 30 days from such decision in which to file its Motion to Dismiss in this matter.

provisions make claims by individual plaintiffs economically feasible given the clear legal bar on class actions under the VRPA in Michigan courts.[4]

This suit is one of several putative class actions in recent years targeting media companies and challenging decades-old practices that are fully disclosed to consumers. Prior to these suits, the Michigan VRPA had never been enforced or challenged since its 1988 enactment.

**3.      Plaintiff Lacks Standing Because She Alleges No Injury in Fact**:  Plaintiff lacks Article III standing because the VRPA at the center of her Complaint does not codify any concrete and particularized injury, and Plaintiff does not otherwise allege a plausible injury in fact.

Article III standing requires a concrete and particularized "injury in fact." A statute authorizing a right of action absent an injury in fact cannot satisfy these requirements. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (Article III standing cannot be erased "by statutorily granting the right to sue to a plaintiff who would not otherwise have standing"); *Robainas v. Metro. Life Ins. Co.*, No. 14cv9926 (DLC), 2015 WL 5918200, at *6-7 (S.D.N.Y. Oct. 9, 2015), *appeal filed*, No. 15-3504 (2d Cir. Oct. 30, 2015) ("While 'Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules . . . Article III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  Nor can Plaintiff rely on state law to expand Article III standing. *See, e.g.*, *Ross v. AXA Equitable Life Ins. Co.*, No. 14-CV-2904, 2015 WL 4461654, at *8 (S.D.N.Y. July 21, 2015); *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744, 2014 WL 1133567, at *10 (S.D.N.Y. Mar. 21, 2014); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992) (state legislatures may not "by way of a state created right, confer injury in the Art. III sense where none would otherwise exist").

Further, the Complaint does not set forth any plausible theory of actual damages from the alleged disclosure of Plaintiff's status as a *Good Housekeeping* subscriber. Conclusory allegations of "overpayment" (*e.g.*, Compl. ¶ 53) are insufficient for standing purposes. *See, e.g.*, *Carlsen v. GameStop, Inc.*, No. 14-3131, 2015 WL 3538906, at *4 (D. Minn. June 4, 2015), *appeal filed*, No. 15-2453 (8th Cir. July 7, 2015) (claim "that [plaintiff] would not have paid as much for the . . . subscription if he had known how his [personal information] would be handled" did not confer standing).

Alternatively, in the event the Court denies the motion to dismiss based on standing, it should stay the action pending the outcome of a potentially dispositive case concerning Article III standing that was argued November 2, 2015 and will be decided this Term by the U.S. Supreme Court. In *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.), the Supreme Court will decide whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute. Because *Spokeo* may be dispositive of

---

[4] The VRPA was enacted three years following enactment of a Michigan court rule that bars the maintenance of class actions based on statutory penalty claims, absent an express statutory provision permitting a class remedy. Mich. Court Rule 3.501(A)(5) (prohibiting class action for recovery of statutory minimum "without regard to actual damages" unless the statute under which recovery is sought "specifically authorizes" such class actions). The Michigan Legislature deliberately chose not to include such a provision in the VRPA. *See Malcolm v. City of East Detroit*, 468 N.W.2d 479, 482 (Mich. 1991) (applying "well-tested principle of construction that the Legislature is held to be aware of the existence of the law in effect at the time of its enactments").

this case on the fundamental threshold issue of standing, without the need to reach separate issues concerning jurisdiction,[5] state legislative power to confer standing, or the constitutional validity of the VRPA, a stay of proceedings would be particularly appropriate.  *See, e.g., Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("[A] court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action.") (collecting Second Circuit cases).[6]

**4.     The Court Lacks Jurisdiction Over Plaintiff's Claim**:  This case should not be in federal court.  Michigan specifically intended that the VRPA's statutory penalty claims be litigated individually, and designed the law to that end.  (*See* Sec. 2, *supra*)  Plaintiff invokes jurisdiction under the Class Action Fairness Act (28 U.S.C. § 1332(d)) ("CAFA") for her putative class action, but neither CAFA nor Federal Rule of Civil Procedure 23 create class action jurisdiction over a state claim that Michigan specifically determined should be maintained on an individual basis.  Michigan's bar on class action relief for statutory penalty claims is "sufficiently interwoven with the scope of [the] substantive right or remedy" created by the VRPA as to limit the remedy in class cases to actual damages.  *See Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 423, 429 (2010) (Stevens, J., concurring and providing controlling fifth vote to plurality).  Rule 23 and CAFA thus cannot be applied in this case to override Michigan's bar on class action relief.  *Id*.  Indeed, CAFA was intended in large part to bar plaintiffs from "gaming the system" to expand class action liability as plaintiff has done here.  *See id*. at 459 (Ginsburg, J., dissenting).  Because Plaintiff's class action for statutory damages is legally untenable, there is no jurisdictional basis for Plaintiff's claim.  The Complaint raises no federal question, and Plaintiff's claim does not satisfy the amount in controversy requirement for regular diversity jurisdiction under 28 U.S.C. § 1332(b).  Moreover, Plaintiff has not shown actual damages, let alone actual damages sufficient to satisfy CAFA's amount in controversy requirement.  *Id*. § 1332(d)(2).

**5.     The VRPA Violates The First Amendment**:  Plaintiff's claims fail because the VRPA is unconstitutional on its face and as applied.

---

[5] This issue, set forth in section 4 below, is another Article III deficiency supporting dismissal under Rule 12(b)(1).

[6] A number of federal courts have stayed proceedings pending the Supreme Court's decision in *Spokeo*.  *See, e.g., Davis v. Nationstar Mortg., LLC*, No. 15-CV-4944, 2016 WL 29071, at *3-4 (E.D. Penn., Jan. 4, 2016); *Kamal v. J. Crew Grp. Inc.*, No. 15-0190, 2015 WL 9480017, at *2 (D.N.J. Dec. 29, 2015); *Acton v. Intellectual Capital Mgmt.*, 15-CV-4004, 2015 WL 9462110, at *3 (E.D.N.Y. Dec. 28, 2015); *Luster v. Jewelers*, 15-cv-2854, 2015 WL 9255553, at *3 (N.D. Ga. Dec. 17, 2015); *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 15-cv-969, 2015 WL 7444409, at *3 (M.D. Fla. Nov. 20, 2015); *Schartel v. OneSource Tech.*, *LLC*, No. 15 CV 1434, 2015 WL 7430056, at *2 (N.D. Ohio Nov. 17, 2015); *Lopez v. Miami-Dade Cty.*, No. 15–Civ–22943, 2015 WL 7202905 (S.D. Fla. Nov. 6, 2015); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15–04767, 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015); *Duchene v. Westlake Servs., LLC*, No. 13–cv–01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015); *Salvatore v. Microbilt*, No. 14–CV–1848, 2015 WL 5008856 (M.D. Penn. Aug. 20, 2015); *Perrill et al. v. Equifax Info. Servs., LLC*, 14-cv-00612 (W.D. Tex. Aug. 4, 2015); *Stone v. Sterling Infosystems, Inc.*, No. 15–cv–00711, 2015 WL 4602968 (E.D. Cal. July 29, 2015); *Provo v. Rady Children's Hosp. San Diego*, No. 15cv0081, 2015 WL 6144029 (S.D. Cal. July 29, 2015); *Hillson v. Kelly Servs., Inc.*, No. 15–CV–10803, 2015 WL 4488493 (E.D. Mich. July 15, 2015); *Boise v. ACE USA, Inc.*, No. 15–Civ–21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015); *Larson v. Trans Union, LLC*, No. 12–cv–05726, 2015 WL 3945052 (N.D. Cal. June 26, 2015); *Ramirez v. Trans Union*, LLC, No. 12–cv–00632, 2015 WL 6159942 (N.D. Cal. June 22, 2015); *Williams v. Elephant Ins. Co.*, No. 15–cv–00119, 2015 WL 3631691 (E.D. Va. May 27, 2015).


a. *Facial Invalidity*[7]: A law is void on its face under the overbreadth doctrine if it "does not aim specifically at evils within the allowable area of [government] control, but . . . sweeps within its ambit other activities that . . . constitute an exercise" of protected expression. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). The VRPA is a classic example of an overbroad law. It is a deliberate and sweeping attempt to criminalize and deter through draconian penalties a broad array of speech protected by the First Amendment. The statute is content-based, discriminates between different types of speech and different speakers, and specifically targets non-commercial speech by making direct marketing exempt. The law was in fact a reaction to a newspaper article, and an explicit effort to restrain such reporting—or any other expression relating to any individual's consumption of any other "written materials." (Compl. ¶ 11) The VRPA thus targets fully protected non-commercial speech and is subject to strict constitutional scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011) (citation omitted); *see also, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). The VRPA is void for overbreadth because it makes illegal a substantial amount of protected expressive activity, and because it is not susceptible to any constitutional saving construction. *See, e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). The overbreadth doctrine is not concerned with the statute as applied to a defendant's conduct—it permits a challenge to a statute on its face because it threatens others not before the court and thus is an exception to the rule that individuals generally may not litigate the rights of third parties. *E.g.*, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985). The VRPA also fails strict scrutiny because it discriminates on the basis of content, seeking to foreclose newspaper reporting, for example, but not marketing. *See Reed*, 135 S. Ct. at 2230; *R.A.V.*, 505 U.S. at 381, 387. It further discriminates against only certain speakers, namely those "in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings . . . ." M.C.L. § 445.1712(2); *see Brown*, 131 S. Ct. at 2740 (striking statute singling out purveyors of video games for disfavored treatment).

b. *Unconstitutional As Applied*: Separate and independent from its facial invalidity, the VRPA is also unconstitutional as applied against Hearst. The Complaint targets fully protected non-commercial speech, and cannot survive strict scrutiny. The IPD at issue does not fit any definition of commercial speech. Neither the fact that IPD may be sold nor the arid nature of its content make it commercial speech. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952); *Sorrell v. IMS Health, Inc.*, 630 F.3d 263, 271-72 (2d Cir. 2010) ("The First Amendment protects even dry information, devoid of advocacy, political relevance, or artistic expression."), *aff'd*, 131 S. Ct. 2653, 2666-67 (2011) (quoting same); *see also United States v. Stevens*, 559 U.S. 460, 468-72 (2010). Protection of Plaintiff's purported privacy interest in the fact that she subscribes to *Good Housekeeping* magazine is not a compelling government interest, certainly not one overriding Hearst's rights under the First Amendment, and the VRPA is not narrowly tailored to

---

[7] Prior to the briefing in the *Boelter v. Hearst Communications, Inc.* matter currently pending in the S.D.N.Y., the Michigan VRPA had never been subject to a facial challenge on First Amendment grounds, likely because the state statute appears never to have been the subject of litigation until recently. On November 2, 2015, pursuant to Federal Rule of Civil Procedure 5.1(a)(2) Hearst notified the Michigan Attorney General of the constitutional challenge to the VRPA in the *Boelter* matter and on December 28, 2015, the Michigan Attorney General's Office moved to intervene in the case to defend the statute's constitutionality. Hearst anticipates also notifying the Michigan Attorney General of this matter once its constitutional challenge has been filed.

directly advance that interest in any event, being both over-inclusive and under-inclusive in its scope.

**6.     Failure to State a Claim**:

a.  *VRPA Claim*:  The VRPA by its terms imposes liability on retailers only.  M.C.L. § 445.1712.  Hearst's sale of *subscriptions*, however, is not "at retail," notwithstanding the Complaint's contrary conclusion (Compl. ¶ 43).  *Cf. Haley v. Nunda Twp.*, No. 250082, 2005 WL 94791, at *2 (Mich. Ct. App. Jan. 18, 2005).  Plaintiff admits that she was a subscriber and does not claim to have paid the full cover retail price of *Good Housekeeping* magazine.

Plaintiff's VRPA claim also fails because the VRPA specifically provides for the disclosure of IPD for marketing purposes, Hearst informed Plaintiff that her IPD could be disclosed for marketing purposes, and Plaintiff has alleged no non-marketing uses or that she asked that her IPD not be disclosed.  *See* M.C.L. § 445.1713(d).  Plaintiff's allegation that she did not receive notice of possible disclosure for marketing purposes (Compl. ¶¶ 24, 50) is belied by every issue of *Good Housekeeping* magazine, which informs readers that "we make our subscriber list available to companies who sell goods and services by mail . . . ."

b.  *Breach of Contract Claim*:  Plaintiff's breach of contract claim relies on the assumption that there is a contractual relationship between Hearst and *Good Housekeeping* subscribers that "include[s] obligations for the parties to abide by all applicable laws, including the VRPA." (Compl. ¶ 60)  Even assuming for the sake of argument that Hearst has violated the VRPA by disclosing Plaintiff's IPD, Plaintiff has identified no contract controlling their relationship or Hearst's relationship with other *Good Housekeeping* subscribers, let alone does she point to any particular contractual provision that incorporates the terms of the Michigan VRPA and thus could be breached by Hearst's alleged actions.  As such, Plaintiff has not stated a claim for breach of contract.

c.  *Unjust Enrichment Claim*:  Plaintiff's unjust enrichment claim relies entirely on the theory that the VRPA created an entitlement to confidentiality in Plaintiff's IPD, and that she paid more for her subscription in expectation of that privacy.  (Compl. ¶¶ 35, 53)  No claim is stated under the facts alleged.  First, the VRPA is her exclusive remedy as to any purported privacy interest concerning her IPD and preempts any unjust enrichment claim.  *See, e.g.*, *Dep't of Agric. v. Appletree Mktg., LLC*, 779 N.W.2d 237, 241-43 (Mich. 2010); *Jackson v. PKM Corp.*, 422 N.W.2d 657, 664-65 (Mich. 1988). Second, the VRPA does not create a right to be free of "unwanted advertisements and telephone solicitations" from marketers. *Cf.* M.C.L. § 445.1713(d). Third, Plaintiff's conclusory claim that she overpaid for her subscription is not plausible and is without factual basis.  Plaintiff does not allege that she was even aware of the VRPA's statutory protections for which she claims to have "paid monetary consideration" before purchasing a subscription to *Good Housekeeping* magazine (Compl. ¶¶ 35, 53).

          Respectfully submitted,

          /s/ Jonathan R. Donnellan
          Jonathan R. Donnellan

cc:         All counsel of record (via email)