IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUZANNE BOELTER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 1:15-cv-03934-AT-JLC |
| v. | |
| HEARST COMMUNICATIONS, INC., Defendant. | |
| JOSEPHINE JAMES EDWARDS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 1:15-cv-09279-AT-JLC |
| v. | |
| HEARST COMMUNICATIONS, INC., Defendant. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT HEARST COMMUNICATIONS, INC.'S
SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS**

Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
Email: jdonnellan@hearst.com

*Attorneys for Defendant Hearst
Communications, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..........................................................................................................3

    I.  *SPOKEO* REQUIRES DISMISSAL OF THESE CASES FOR FAILURE TO
        SATISFY THE STANDING REQUIREMENTS OF ARTICLE III OF THE
        CONSTITUTION. ..........................................................................................3

        A.    *Spokeo* Requires a Tangible Injury or a Material Risk of Harm for Article III
              Standing. .......................................................................................3

        B.    Plaintiffs Have Alleged No Concrete Injury-In-Fact..................................6

    II.  EVEN IF THE COURT FINDS THAT PLAINTIFFS HAVE ARTICLE III
        STANDING TO PURSUE THEIR CLAIMS, THE CASE MUST BE DISMISSED
        BECAUSE THE AMENDED VRPA APPLIES RETROACTIVELY AND
        REQUIRES THAT PLAINTIFFS PLEAD AND PROVE ACTUAL DAMAGES. ...........8

        A.    The Michigan Legislature Unambiguously Expressed Its Intent that the
              Amended VRPA Be Applied To Existing Actions.................................10

        B.    Even if Legislative Intent Were Not Clear, the Amended VRPA Would
              Apply Retroactively Because It Is Remedial. .......................................14

CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Faulhaber*,
    403 N.W.2d 527 (Mich. Ct. App. 1987) .............................................................15

*Anderson v. Myers*,
    709 N.W.2d 171 (Mich. Ct. App. 2005) .............................................................11

*Attorney Gen. v. Flint City Council*,
    713 N.W.2d 782 (Mich. Ct. App. 2005) .............................................................16

*Bay City & E.S.R. Co. v. Austin*,
    21 Mich. 390 (1870) ...........................................................................................16

*Beaudry v. Telecheck Servs., Inc.*,
    579 F.3d 702 (6th Cir. 2009) ................................................................................5

*In re Certified Questions from the U.S. Court of Appeals for the Sixth Circuit*,
    331 N.W.2d 456 (Mich. 1982) ...............................................................9, 10, 15, 16

*Davis v. State Emps.' Ret. Bd.*, 725 N.W.2d 56 (Mich. Ct. App. 2006) ...........10, 11, 15

*Detroit Edison Co. v. Michigan*,
    31 N.W.2d 809 (Mich. 1948) ..............................................................................13

*Dow Chem. Co. v. Curtis*,
    430 N.W.2d 645 (Mich. 1988) ............................................................................12

*In re Facebook Internet Tracking Litig.*,
    No. 5:12-MD-02314-EJD, 2015 WL 6438744 (N.D. Cal. Oct. 23, 2015) ...............7

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998)................................................................................................4

*Frank W. Lynch & Co. v. Flex Techs., Inc.*,
    624 N.W.2d 180 (Mich. 2001)............................................................................10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015), *petition for cert. filed* (U.S. Mar. 10, 2016) (No.
    15-1141).................................................................................................................7

*Halaburda* v. *Bauer Publishing, Co., L.P.*,
    No. 12-cv-14221, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)..........................5

*Khan v. Children's Nat'l Health Sys.*,
   No. 8:15-cv-02125-TDC, 2016 WL 2946165 (D. Md. May 19, 2016) ...............................5, 6

*Lahti v. Fosterling*,
   99 N.W.2d 490 (Mich. 1959) ................................................................................................16

*People v. Bywater*,
   No. 320338, 2015 WL 2448684 (Mich. Ct. App. May 21, 2015), *appeal
   denied*, 872 N.W.2d 468 (Mich. 2015) ...............................................................................12

*People v. Sheeks*,
   625 N.W.2d 798 (Mich. Ct. App. 2001) ...............................................................................11

*Pub. Citizen v. Dep't of Justice*,
   491 U.S. 440 (1989) .................................................................................................................4

*Romein v. Gen. Motors Corp.*,
   425 N.W.2d 174 (Mich. Ct. App. 1988), *aff'd*, 462 N.W.2d 555 (Mich. 1990),
   *aff'd*, 503 U.S. 181 (1992) ...................................................................................................14

*Rookledge v. Garwood*,
   65 N.W.2d 785 (Mich. 1954) ................................................................................................15

*Smith v. Maryland*,
   442 U.S. 735 (1979) .................................................................................................................4

*Spokeo, Inc. v. Robins*,
   No. 13-1339, 136 S. Ct. 1540, 2016 WL 2842447 (May 16, 2016) ............................. *passim*

*Tiger Stadium Fan Club, Inc. v. Governor*,
   553 N.W.2d 7 (Mich. Ct. App. 1996) ...................................................................................12

*Trostel, Ltd. v. Dep't of Treasury*,
   713 N.W.2d 279 (Mich. Ct. App. 2006) ...............................................................................10

*Twp. Van Buren v. Garter Belt Inc.*,
   673 N.W.2d 111 (Mich. Ct. App. 2003) ...............................................................................16

*Warth v. Seldin*,
   422 U.S. 490 (1975) .................................................................................................................6

**Statutes**

Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711 *et seq.* ......................................... *passim*

**Other Authorities**

2A N. Singer, *Sutherland Statutes and Statutory Construction* § 47.24 (7th ed.
   2013) .....................................................................................................................................12

Antonin Scalia & Bryan A. Garner, *Reading Law: The Art of Interpreting Legal Texts* 107-11 (2012) .................................................................................12

Mich. Const. art. IV, § 27 ...........................................................................9

Mich. S. Journal, 98th Leg., Reg. Sess., No. 33 (Apr. 12, 2016), *available at* http://www.legislature.mi.gov/(S(edhmuaopndaijx1dllhyr3vl))/documents/2015-2016/Journal/Senate/pdf/2016-SJ-04-12-033.pdf...............................9

Mich. S. Journal, 98th Leg., Reg. Sess., No. 33 (statement of Senator Warren).........................12

Testimony of Ari J. Scharg, Cmte. on Commerce & Trade, Mich. House of Reps., Feb. 9, 2016, *available at* http://house.michigan.gov/sessiondocs/2015-2016/testimony/Committee325-2-9-2016.pdf ......................................13

*Use of Immediate Effect in Michigan*, Citizens Research Council of Michigan Memorandum No. 1133 (Mar. 2015), crcmich.org/use_of_immediate_effect_in_michigan................................9

iv

Per this Court's May 19, 2016 Order, Defendant Hearst Communications, Inc. ("Hearst") submits this memorandum of law to present supplemental authority in further support of its motion to dismiss the Consolidated Amended Complaint, No. 15-cv-03934-AT, ECF No. 67, (the "Consol. Compl.") in these actions.

## PRELIMINARY STATEMENT

From its very first letter to the Court and throughout its Motion to Dismiss briefing, Hearst has consistently stressed that Plaintiffs do not have standing to sue under the Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711 *et seq.* (the "VRPA") because they have failed to plausibly allege a concrete injury-in-fact—*i.e.*, actual harm—as required by Article III of the United States Constitution.  *See* Defendant Hearst Communications, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss, No. 15-cv-03934-AT, ECF No. 72, Ex. 1 ("Mot. Dismiss") at § I.A.; Defendant Hearst Communications, Inc.'s Reply Memorandum of Law In Further Support of Its Motion to Dismiss, No. 15-cv-03934-AT, ECF 72, Ex. 3 ("Reply Mot. Dismiss") § II.A.  Two recent developments in the law—one from the U.S. Supreme Court and one from the Michigan legislature—confirm Plaintiffs' lack of standing and now make evident that this minimal threshold "actual injury" requirement is not only of constitutional import; it is required by the statute itself.

*First*, on May 16, 2016, the Supreme Court issued its long-awaited opinion on Article III standing in *Spokeo, Inc. v. Robins*, No. 13-1339, 136 S. Ct. 1540, 2016 WL 2842447 (May 16, 2016), holding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at *7.  Instead, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  Plaintiffs would have this Court believe that *Spokeo* changes nothing, and that they can continue to press forward with these actions based on no

1

more than an allegation of a bare statutory violation even if Hearst's purported violation of that statute caused them no concrete injury-in-fact.[1]  Plaintiffs are wrong on the law.

In *Spokeo*, the Supreme Court repeatedly stressed that a "bare procedural violation" of a statute does not satisfy Article III.  *Id*. at *7, 8.  Rather, an injury is concrete only if it is "tangible" or presents a "*material* risk of harm." *Id*. (emphasis added).  *Spokeo* validates what Hearst has argued all along—that these Plaintiffs have alleged no concrete injury-in-fact and do *not* have Article III standing to pursue their claims—and abrogates the line of cases that Plaintiffs have relied on to support standing before this Court.  If anything, the inquiry in these consolidated actions is easier than in *Spokeo*.  Here it is evident that Plaintiffs' specious arguments that they have suffered "actual injury" in the form of unwanted junk mail and marketing calls, *see* Consol. Compl. ¶ 73, or because they were deprived of the "full value" of their magazine subscriptions, *see id* ¶¶ 70-72, are not merely unrecognized in law and unsupported by factual allegations, they do not constitute the concrete injury-in-fact required by Article III of the Constitution.  *See Spokeo*, 2016 WL 2842447, at *7-8, and § I.B below.

*Second*, even if *Spokeo* did not require dismissal of these cases, on May 2, 2016, Michigan passed an amendment clarifying the reach of the VRPA.  The Amended VRPA— which, as demonstrated in Part II below, was intended to be applied retroactively—makes clear that Plaintiffs cannot sustain their current actions because, among other reasons, the VRPA does not permit claims premised on mere statutory violations.  Instead, the Amended VRPA explicitly requires a plaintiff to allege actual damages caused by a defendant's supposed violation of the statute in order to bring a claim for civil damages.  S.B. 490, 98th Leg., Reg. Sess., P.A. 92 (Mich. 2016) ("Amended VRPA") (attached hereto as Exhibit A) at Sec. 5.  Plaintiffs Boelter

---

[1] *See* Plaintiffs' Letter dated May 16, 2016 re: Supplemental Authority in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, No. 15-cv-03934-AT, ECF No. 74.

and Edwards have failed to do so.  They have alleged no facts plausibly showing that they have

suffered any actual damages as a result of Hearst's purported disclosure of their purchases of

*Country Living* and *Good Housekeeping* magazines.  Just as Plaintiffs' allegations are

insufficient to allege constitutional injury-in-fact, they are also insufficient to allege the actual

damages required by the Amended VRPA.  As a result, the amendment to the VRPA provides a

separate and independent basis to dismiss the cases under Federal Rule of Civil Procedure

12(b)(6).

## ARGUMENT

I.   *SPOKEO* **REQUIRES DISMISSAL OF THESE CASES FOR FAILURE TO SATISFY THE STANDING REQUIREMENTS OF ARTICLE III OF THE CONSTITUTION.**

### A.   *Spokeo* **Requires a Tangible Injury or a Material Risk of Harm for Article III Standing.**

In *Spokeo, Inc. v. Robins*, No. 13-1339, 136 S. Ct. 1540, 2016 WL 2842447 (May 16,

2016), the Supreme Court was asked to decide whether allegations that the plaintiff's personal

information had been disclosed in violation of the Fair Credit Reporting Act ("FCRA"), without

more, was sufficient to confer Article III standing.  The FCRA provisions at issue in *Spokeo*

outlined procedures that credit reporting agencies were to follow to ensure that the information

they were disclosing was accurate.  A violation of those procedures, and the resulting

dissemination of *inaccurate* information,[2] gives rise, under the statute, to a cause of action.

The Supreme Court flatly rejected the argument and the Ninth Circuit's holding that the

mere disclosure of false information in violation of the FCRA was itself sufficient to confer

Article III standing.  Instead, the Court held that a plaintiff must offer allegations demonstrating

---

[2] The *Spokeo* parties and Court assumed for purposes of the case's 12(b)(6) motion to dismiss procedural posture that the information disclosed by defendant Spokeo about the plaintiff was incorrect.

that a "concrete" injury has resulted from an alleged statutory violation. *Spokeo*, 2016 WL 2842447, at *7. A "bare procedural violation", it held, will not suffice, because such a violation "may result in no harm." *Id*. at *8. Instead, to be "concrete", an alleged injury "must be '*de facto*'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* at *7 (citation omitted). Although the Court recognized that certain intangible harms may satisfy the concreteness standard, it made clear that in order to constitute an injury-in-fact, an intangible harm must pose "the risk of real harm".[3] *Id.* at *8. In doing so, the Supreme Court acknowledged that not every disclosure in violation of the statute—even *inaccurate* disclosures—would result in a concrete injury because a violation of the FCRA "may result in no harm. . . . [and] not all inaccuracies cause harm or present any material risk of harm." *Id.*

At the end of the day, *Spokeo* requires this Court to answer one question: "whether the [VRPA violation] alleged in this case entail[s] a degree of risk sufficient to meet the

---

[3] One can imagine intangible injuries that might be concrete, such as slander *per se*. *See Spokeo*, 2016 WL 2842447, at *8. Plaintiffs' claims of injury, however, are not based on any intangible yet concrete injury. *Spokeo* makes abundantly clear that the disclosure of personal information, even if in violation of a statute, does not automatically result in a concrete harm. Nor could the VRPA conceivably fall into the narrow category of statutes that the Supreme Court used to illustrate when a violation of statutory right may on its own constitute injury-in-fact. *Spokeo*, 2016 WL 2842447, at *8 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) and *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). In those cases, the statutes at issue conferred an affirmative right—such as the right to obtain election-related information from the Government—the denial of which was alone sufficient to evince a concrete harm to plaintiff. The VRPA creates or confers no such affirmative individual right—in fact, it explicitly permits disclosures of subscriber information for a variety of purposes including, *e.g.*, for marketing purposes, and thus is not of the species of rights-conferring statute the mere violation of which is sufficient to confer Article III standing. Moreover, the violation of the VRPA could never give rise to a concrete harm based on the protection of any purported "privacy interest" alone: the Supreme Court has long recognized that, outside a fiduciary relationship, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (collecting cases).

concreteness requirement." *Spokeo*, 2016 WL 2842447, at *8.  The clear answer is no.  Unlike

the allegations in *Spokeo* where the plaintiff was alleging that *false* information bearing on his

*employability* had been disclosed in contravention of the FCRA, it is difficult to imagine in the

current cases how the alleged disclosure of entirely *accurate* information *about the purchase of a*

*magazine subscription* to *Country Living* or *Good Housekeeping* creates any tangible or material

risk of harm.  *See infra* at Part I.B.  Indeed, the legislature could not have viewed the disclosures

of information about the purchase of videos, books and other materials as working any inherently

tangible harm (or pose any serious risk of harm), because they explicitly *permit* disclosure of the

exact same information for marketing purposes.[4]  *Compare* M.C.L. § 445.1712 *with* M.C.L.

§ 445.1712(d).  Plaintiffs' argument to the contrary—that a violation of a statute prohibiting the

disclosure of entirely *truthful* information is sufficient without more for Article III standing—can

find no support in the *Spokeo* decision.  A violation of the VRPA on its own, and Plaintiffs'

alleged "injury" in this case, are not the sort of concrete harm that the Supreme Court has now

made plain is required to support Article III standing.[5]

---

[4] Even if they had, of course, it has never been clear that a *state* legislature has the same power as Congress to elevate certain intangible harms to a concrete injury sufficient to satisfy Article III. *Compare Spokeo*, 2016 WL 2842447, at *7, *with* Mot. Dismiss § I.A; Reply Mot. Dismiss § II.A.1; *Khan v. Children's Nat'l Health Sys.*, No. 8:15-cv-02125-TDC, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (finding "no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant who has not suffered a concrete injury.").

[5] *Spokeo* abrogates the Article III rulings from the Eastern District of Michigan VRPA cases heavily relied upon by Plaintiffs throughout this case.  Those cases (starting with *Halaburda* v. *Bauer Publishing, Co., L.P.*, No. 12-cv-14221, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)) found Article III standing only "reluctan[tly]", relying entirely on the Sixth Circuit decision in *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009). *See Halaburda*, 2013 WL 4012827, at *4-5; *see also* Reply Mot. Dismiss § II.A.1.  *Beaudry*, like *Spokeo*, was an FCRA case.  *Spokeo* makes clear that the Sixth Circuit was wrong in *Beaudry* when it concluded that a violation of the FCRA's requirement that credit reporting agencies use reasonable procedures to ensure the accuracy of the information they disseminate would be enough to meet Article III's "actual injury" requirement.  *Spokeo*, 2016 WL 2842447, at *8.

**B.   Plaintiffs Have Alleged No Concrete Injury-In-Fact.**

Not only did *Spokeo* confirm what Hearst has argued throughout this case—that a mere allegation that the VRPA has been violated will not support Article III standing—it also confirmed that in order to adequately allege standing when "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" injury-in-fact. *Spokeo*, 2016 WL 2842447, at *5 (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Plaintiffs have failed to do so.

Instead, over the course of this litigation, Plaintiffs have proffered several theories of "actual injury"—none of which are supported by *factual* allegations sufficient to plausibly allege any *de facto* injury.  At the motion to dismiss stage, they argued that they had alleged "actual injury in the forms of overpayment and Hearst's retention of money received by selling her Personal Reading Information."  Opp'n to Mot. Dismiss § I.C.  As Hearst demonstrated in its Motion to Dismiss, these theories were both factually and legally unsupported. *See* Mot. Dismiss § I.A (Plaintiffs do not allege, *e.g.*, that they were aware of the VRPA's "statutory privacy protections" prior to purchasing subscriptions; that Hearst would have charged less for their subscriptions had it not disclosed their information; or even that the purchase price of *Country Living* and *Good Housekeeping* subscriptions is higher for Michigan residents to account for the "statutory privacy protections" of the VRPA); Reply Mot. Dismiss § II.A.1.[6]  Nor would allegations of purported overpayment—even if Plaintiffs had alleged such facts, and not just conclusions—be sufficient to allege a legally cognizable concrete injury. *See* Mot. Dismiss § I.A.; Reply Mot. Dismiss § II.A.1; *see also Khan*, 2016 WL 2946165, at *6-7 (allegations of

---

[6]  As noted in Hearst's Motion to Dismiss, the very idea that the price of a *Country Living* subscription includes a "non-disclosure" premium is implausible given the VRPA's *permissive* disclosures for marketing purposes.  Mot. Dismiss § I.A.

"overpayment" and "diminution in value of PII" not sufficient to demonstrate concrete injuries

under *Spokeo;* alleged violation of *state* statute not sufficient to confer Article III standing); *In re*

*Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2015 WL 6438744, at *5 (N.D.

Cal. Oct. 23, 2015) ("[C]ourts have found insufficient for standing purposes generalized

assertions of economic harm based solely on the alleged value of personal information" in the

absence of allegations "that anyone was willing to pay for their personal information or that its

purported conduct lessened the value of that information or affected its marketability"); *cf. In re*

*Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 149 (3d Cir. 2015)

("[W]hen it comes to showing 'loss,' . . . [plaintiffs] allege no facts suggesting that they ever

participated or intended to participate in the market they identify, or that the defendants

prevented them from capturing the full value of their . . . information for themselves.  For

example, they do not allege that they sought to monetize information about their internet usage,

nor that they ever stored their information with a future sale in mind.  Moreover, the plaintiffs do

not allege that they incurred costs, lost opportunities to sell, or lost the value of their data as a

result of their data having been collected by others."), *petition for cert. filed*, (U.S. Mar. 10,

2016) (No. 15-1141).

      When Plaintiff Boelter moved for a preliminary injunction some months after filing her

initial complaint, she relied on a different theory of injury, arguing that purported violations of

the VRPA injured her because the alleged disclosures "resulted in the receipt of unwanted

solicitations and junk mail from advertisers."  ECF No. 65 (Mem. Order) at 3 (describing

Plaintiffs' theory); *see also* Consol. Compl. ¶¶ 7, 8 (incorporating this "junk mail" theory of

actual injury into both Plaintiffs' consolidated actions).  But Plaintiffs have offered no support

for their theory that even if they did receive "unwanted" junk mail, such junk mail was the result

of any alleged disclosure by Hearst, or that it resulted in a *de facto* injury under *Spokeo*. To begin with, there is no legal or factual basis to conclude that the receipt of unwanted junk mail is a concrete injury for purposes of Article III. And in any event, Plaintiffs' conclusory allegation that any "unwanted" junk mail received was the result of any Hearst disclosure is unsupported by any factual allegations that might make such a claim plausible—such as the date on which it was received, the form it took, or any other fact indicating a connection between the solicitation and Hearst (let alone between any solicitation and the disclosure of either Plaintiff *as a Country Living or Good Housekeeping purchaser*, as opposed to originating from any other magazine, catalog, charitable organization or other entity with which Plaintiffs might have a relationship). Nor is there any allegation that prior to Plaintiffs' subscriptions, they received no (or less) junk mail. The omission of such factual allegations (and complete absence of proof at the Preliminary Injunction stage) is fatal to any claim of *de facto* injury.[7] Plaintiffs' lack of Article III standing warrants immediate dismissal of these cases.

## II. EVEN IF THE COURT FINDS THAT PLAINTIFFS HAVE ARTICLE III STANDING TO PURSUE THEIR CLAIMS, THE CASE MUST BE DISMISSED BECAUSE THE AMENDED VRPA APPLIES RETROACTIVELY AND REQUIRES THAT PLAINTIFFS PLEAD AND PROVE ACTUAL DAMAGES.

Even if Article III of the Constitution did not pose a bar to this action, the Complaint must be dismissed for the additional reason that it is barred by the recent amendments to the VRPA. *See* Amended VRPA (attached hereto as Exhibit A). The clarifications provided by the Amendment are extensive,[8] and make clear that an individual has statutory standing to bring a

---

[7] Indeed, on her Motion for Preliminary Injunction, Plaintiff Boelter did not identify even a single instance of a solicitation that she received tied to an alleged Hearst disclosure.

[8] Attached hereto for the Court's convenience as Exhibit B is a chart setting forth the original provisions of the VRPA and the revised provisions. What the amendments do *not* do, however, is cure the constitutional infirmities inherent in the VRPA. Thus, even if the Court were to determine that the privacy interest purportedly reflected in the VRPA was sufficient to create a

lawsuit under the Michigan VRPA only if they have suffered "actual damages" as a result of a prohibited disclosure.  *See* Ex. A, Amended VRPA at Sec. 5.  For all the reasons set forth in Part I.B above and in Hearst's prior motion papers, Plaintiffs have failed to meet this standard as a matter of law.

The Amended VRPA—including its "actual damages" requirement—applies retroactively to these consolidated actions.[9]  Ex. A, Amended VRPA at Enacting Section 2.[10] Michigan law recognizes two exceptions to the general presumption of prospective application that are relevant here.  *In re Certified Questions from the U.S. Court of Appeals for the Sixth Circuit*, 331 N.W.2d 456, 463 (Mich. 1982) (describing "four rules" to be considered "in determining whether a new act applie[d] to a pre-enactment cause of action" under Michigan law).  A Michigan statute will be applied to pre-enactment causes of action where:

---

material risk of harm, it still would *not* be an interest in which the State of Michigan has a substantial (let alone compelling) interest in protecting, let alone be narrowly tailored to that interest, and for that reason the VRPA, even as amended, would still fail to survive any level of First Amendment scrutiny.  *See* ECF No. 73.

[9] In *Boelter v. Advance Magazine Publishers*, No. 15-cv-05671-NRB (S.D.N.Y.) and other actions, counsel for Plaintiffs has argued that the Amended VRPA can only be applied prospectively.  *See, e.g.*, Letters dated May 4 & 10 (ECF Nos. 42, 44) in No. 15-cv-05671-NRB (S.D.N.Y.) and Letter dated May 16, 2016 (ECF No. 19) in No. 16-cv-01812-KMK (S.D.N.Y.). It is clear from those submissions that Plaintiffs misunderstand (or misconstrue) the applicable Michigan law on this point.

[10]  Under Michigan law, the Amended VRPA takes immediate effect.  Article IV, Section 27 of the Michigan Constitution provides that all acts take effect 90 days after the end of the session at which it was passed, unless two-thirds of the legislature vote to give an act immediate effect. Mich. Const. art. IV, § 27.  Here, the legislature voted to give the Amended VRPA immediate effect (in a vote separate, as is typical, from the vote on the act itself).  *See* Mich. S. Journal, 98th Leg., Reg. Sess., No. 33 at 472 (Apr. 12, 2016), *available at* http://www.legislature.mi.gov/(S(edhmuaopndaijx1dllhyr3vl))/documents/2015-2016/Journal/Senate/pdf/2016-SJ-04-12-033.pdf.  As commentators have noted, more than 90% of enacted legislation in Michigan is given immediate effect under this procedure.  *See, e.g.*, *Use of Immediate Effect in Michigan*, Citizens Research Council of Michigan Memorandum No. 1133 (Mar. 2015), crcmich.org/use_of_immediate_effect_in_michigan/.  In any event, whether now or on July 31, 2016, the Amended VRPA requires dismissal of this action.

1.  The legislature has evinced an unambiguous intent—through express language or by implication—that the law apply retroactively.

2.  Even in the absence of any language or other direct evidence that the legislature intended a statute or amendment to apply to existing cases, a remedial act that "does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute."

*Id.*; *see also Davis v. State Emps.' Ret. Bd.*, 725 N.W.2d 56, 61 (Mich. Ct. App. 2006).  Both exceptions apply to the Amended VRPA.

### A.   The Michigan Legislature Unambiguously Expressed Its Intent that the Amended VRPA Be Applied To Existing Actions.

Under Michigan law, it is the manifest intent of the legislature that is most probative in determining if a law should be applied retroactively.  *See, e.g.*, *Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180, 182 (Mich. 2001) ("In determining whether a statute should be applied retroactively or prospectively only, '[t]he primary and overriding rule is that legislative intent governs.'" (alteration in original) (citation omitted)). The legislature need not use the word "retroactive" to evince their intent that a statute apply retroactively; the absence of such explicit statement is no bar to finding the requisite legislative intent.  *See, e.g.*, *Davis*, 725 N.W.2d at 60 & n.1 ("The Legislature's intent to apply an amended statute retroactively can be express or implied").  Where the legislature's intent to have a statute apply retroactively is clear "from the context of the statute itself. . . . [a]ll other rules of construction and operation are subservient to this principle."  *Id.* (alteration in original) (citation and quotation marks omitted).[11]

---

[11]  Of course, where the Legislature explicitly states that a statute is effective at a prior date, a statute should be applied retroactively; otherwise the language would be meaningless, a result anathema to Michigan courts.  *Trostel, Ltd. v. Dep't of Treasury*, 713 N.W.2d 279, 284 (Mich. Ct. App. 2006).  Contrary to Plaintiffs' suggestion, there is also no requirement in Michigan law that a statute must be written in the past tense to be given retroactive application.  *See, e.g.*, Pls.' Letter in 1:15-cv-05671-NRB (ECF No. 42) at 2.  Indeed, such a requirement defies common

The text of the Amended VRPA overwhelmingly indicates that the Michigan legislature intended the Amended VRPA to be applied retroactively.  This is plain from the Enacting Provision of the Amendment alone, which provides that the Amended VRPA is a "curative" amendment that was "intended to clarify" that a customer must allege actual damages to assert a civil claim for an alleged violation of the VRPA.  *See* Ex. A, Amended VRPA at Enacting Provision Section 2.  In determining legislative intent, of course, the Court must give effect to every "word, phrase, and clause in a statute."  *Anderson v. Myers*, 709 N.W.2d 171, 172 (Mich. Ct. App. 2005).  By using the words "curative" and indicating the amendment "clarified" the law, the Michigan legislature was indicating its clear intention—and its considered judgment about the application of the amendment.  *See People v. Sheeks*, 625 N.W.2d 798, 802-03 (Mich. Ct. App. 2001) (applying amendment retroactively because amendment was meant to "clarify, rather than substantively alter, the existing statutory provision[s]" and "resolve a controversy regarding its meaning").

The legislature also made its intent clear in the body of the statute itself, explicitly providing that one of the VRPA's subdivisions would *only* be applied *prospectively*, leaving no reasonable implication other than that the other amended provisions were not intended to be so limited.  *See* Ex A., Amended VRPA at Sec. 3(d) (stating that statutory exception for disclosures made in the ordinary course of business "**only applies** to a record or information that is created or obtained **after the effective date of the amendatory act** that added this subdivision" (emphasis added)).  By providing that one section of the Amended VRPA was to apply only prospectively (Sec. 3(d)'s "ordinary course of business" provision), but excluding such language from other

_____

sense where, as here, the legislature is not adding a new provision to the law (as in *Davis*, 725 N.W.2d at 60-61), but amending an existing law—otherwise the language would be meaningless and inapplicable to *future* actions—clearly an absurd result.

sections (including the "actual damages" requirement in Sec. 5), the Michigan legislature clearly demonstrated it knew that the statute would otherwise be subject to retroactive application. There would have been no reason for the legislature to expressly limit the ordinary course of business exception to prospective application if it did not intend the rest of the act to apply retroactively.  In short, the fundamental canon of statutory construction *expressio unius est exclusion alterius* unambiguously applies here.  *See, e.g.*, 2A N. Singer, *Sutherland Statutes and Statutory Construction* § 47.24 (7th ed. 2013); Antonin Scalia & Bryan A. Garner, *Reading Law: The Art of Interpreting Legal Texts* 107-11 (2012); *Dow Chem. Co. v. Curtis*, 430 N.W.2d 645, 660 (Mich. 1988).  To apply the entire Amended VRPA only prospectively would be to render the specific provision for prospective application in Section 3(d) superfluous—a reading Michigan courts avoid.  *Tiger Stadium Fan Club, Inc. v. Governor*, 553 N.W.2d 7, 15 (Mich. Ct. App. 1996) ("When construing a statute, a court should presume that every word in the statute has some meaning.  A construction that renders some part of the statute surplusage or nugatory should be avoided.  To the extent possible, effect should be given to every word in the statute."); *People v. Bywater*, No. 320338, 2015 WL 2448684, at *10 (Mich. Ct. App. May 21, 2015), *appeal denied*, 872 N.W.2d 468 (Mich. 2015).

The legislature's intent to have the Amended VRPA apply (with one exception) retroactively is also clear from the bill's legislative history.  State Senator Rebekah Warren—the Amendment's chief opponent in the Michigan Senate—conceded in legislative sessions prior to its passage that the Amendment likely would be interpreted to apply retroactively.  *See* Mich. S. Journal, 98th Leg., Reg. Sess., No. 33 at 469-71 (statement of Senator Warren) ("if passed, the law will likely be interpreted as retroactive . . . .").  Counsel for the plaintiffs in the Eastern District of Michigan cases, who testified at a hearing on the bill, similarly testified that the bill

12

sponsors sought to give the Amended VRPA "retroactive effect".  Testimony of Ari J. Scharg, Cmte. on Commerce & Trade, Mich. House of Reps., Feb. 9, 2016 ("Scharg Testimony"), at 10, *available at* http://house.michigan.gov/sessiondocs/2015-2016/testimony/Committee325-2-9-2016.pdf.[12]  In other words, in passing the Amended VRPA, *everyone*—supporters and opponents alike—understood that it would apply retroactively to pending actions.

Finally, the legislature's intent that the Amended VRPA apply retroactively to pending cases is underscored by the fact that the amendment arose (and was passed) amid debates concerning Article III standing—including the state of Michigan's position in *amici* briefing in the *Spokeo* case (*see, e.g.*, Mot. Dismiss § I.A; Reply Mot. Dismiss § II.A.1)—and the intended scope and parameters of the original Michigan VRPA that have been litigated in, but never resolved by, the several federal district courts that have been tasked in recent years applying the Michigan VRPA to magazine publishers and their alleged practice of renting magazine subscriber lists to third party marketers and data cooperatives.  The Michigan legislature can be presumed to know of these controversies and to have addressed them in the Amended VRPA. *Detroit Edison Co. v. Michigan*, 31 N.W.2d 809, 816 (Mich. 1948) ("If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change— rebutting the presumption of 'substantial change.'") (quoting 2A J.G. Sutherland, *Statutes and*

---

[12]  In papers filed in a parallel case pending before Judge Buchwald of this Court, the Bursor firm has attempted to distance themselves from this testimony by noting that Mr. Scharg does not represent Ms. Boelter and does not have "any affiliation with" the Bursor firm. *See Boelter v. Advance Magazine Publishers Inc.*, 1:15-cv-05671-NRB, ECF No. 44.  That carefully crafted protest omits, however, that the Bursor firm—the same counsel representing Plaintiffs in this case—is co-counsel with Mr. Scharg in a VRPA case that was filed in the Eastern District of Michigan just days after the amendments to the VRPA were passed by the Michigan legislature (but before the Governor signed them into law).  *See Moeller v. Am. Media Inc.*, 16-cv-11367, ECF No. 1 at signature page (filed Apr. 14, 2016, E.D. Mich.) (listing Ari Scharg, Scott Bursor, Joe Marchese *et al.* as counsel).

*Statutory Construction* § 47.24 (4th ed. 1972)); *Romein v. Gen. Motors Corp.*, 425 N.W.2d 174, 179 n.2 (Mich. Ct. App. 1988) (collecting "other cases in which courts have recognized a Legislature's right to cure retroactively a court's erroneous interpretation of a statute"), *aff'd*, 462 N.W.2d 555 (Mich. 1990), *aff'd*, 503 U.S. 181 (1992).

Because the Michigan legislature's intent to have the Amended VRPA apply retroactively to pending cases is clear from the text of the statute and all the surrounding circumstances (including its legislative history), and because the Amended VRPA clarifies that Plaintiffs may only assert a claim if they can demonstrate (and allege) actual injury, the Complaint in these actions must be dismissed with prejudice.  *See* Part I.B above and Mot. Dismiss § I.A.; Reply Mot. Dismiss § II.A.1 (detailing inadequacy of Plaintiffs' allegations of actual injury).

### B.   Even if Legislative Intent Were Not Clear, the Amended VRPA Would Apply Retroactively Because It Is Remedial.

Even if this Court found that, contrary to the text and history of the bill, the Michigan legislature had not expressed its intent that the Amended VRPA be applied retroactively, the Amended VRPA should still be applied to these actions because it meets the second of Michigan's criteria for retroactive application:  it is a remedial amendment.

> It is generally understood that if a statute or amendment is "*designed to correct an existing law,* redress an existing grievance, or introduce regulations conducive to the public good," it will be regarded as remedial in nature.
>
> . . . .
>
> *Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right, and to apply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or redress an injury.*

*Rookledge v. Garwood*, 65 N.W.2d 785, 789 (Mich. 1954) (emphasis added) (citations omitted). The Amended VRPA is clearly remedial. It creates no new substantive rights. It takes away no substantive rights. It still regulates the circumstances under which a retailer can engage in certain speech related to a customer's purchases. It still provides customers with a civil cause of action when a retailer has failed to comply. It simply clarifies and provides the definitive statement of the Michigan legislature's intent that a plaintiff must suffer actual damages in order to bring and sustain a claim under the VRPA, impacting only *how* a plaintiff may pursue a civil suit and what remedy is available to a plaintiff.

*In re Certified Questions*—the seminal case addressing retroactivity under Michigan law—is illustrative. In that case, the Michigan Supreme Court held that a statute imparting a comparative negligence regime in product liability actions was remedial and should be applied retroactively, despite the absence of any language to that effect in the amendment and despite the fact that it could have the impact of reducing the amount plaintiff might recover at trial. 331 N.W.2d at 466; *also compare Allstate Ins. Co. v. Faulhaber*, 403 N.W.2d 527, 529 (Mich. Ct. App. 1987) (change in statute of limitations from three to two years in insurance reimbursement actions was remedial and applied retroactively) *with Davis*, 725 N.W.2d at 62-66 (change in time to file vested benefits claims not retroactive). The same reasoning applies with equal force here.

Nor does the Amended VRPA take away any "vested right." Plaintiff (presumably) believes that she has a "vested right" in obtaining a windfall ($5,000) in the absence of being able to prove that she suffered any actual damages. But such an argument has no support in Michigan law. The ability to sue without proving actual damages is not a "vested right." Neither is having statutory damages available as an alternate remedy. Instead, it is well-established that "that which the legislature gives it may take away. A statutory defense, or a

15

statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it." *Lahti v. Fosterling*, 99 N.W.2d 490, 495 (Mich. 1959); *see also Bay City & E.S.R. Co. v. Austin*, 21 Mich. 390, 397 (1870) (amendment that removed statutory double damages applied because "[t]he plaintiff has no *vested right* to the double damages, nor to any damages"); *cf. Attorney Gen. v. Flint City Council*, 713 N.W.2d 782, 787 (Mich. Ct. App. 2005) (statute that reduced compensation of council members did not deprive council members of a vested right). Nor does Michigan recognize a "vested right" in the continuation of an existing law by precluding the amendment or repeal of the law. *Twp. Van Buren v. Garter Belt Inc.*, 673 N.W.2d 111, 135 (Mich. Ct. App. 2003).

Because the Amended VRPA is a remedial amendment that does not take away any vested right, it should be treated as retroactive even if the Court determines there is some question as to legislative intent.[13]  Because the Amended VRPA makes clear that Plaintiffs cannot state a claim in the absence of allegations of actual damages, and because the Consolidated Complaint includes no such factual allegations, this action must be dismissed.

---

[13] Plaintiffs have suggested in other proceedings that retroactive application of the Amended VRPA would violate the Contracts Clause of the Michigan or U.S. Constitutions or would otherwise be "unfair."  Pls.' May 4, 2016 Ltr., No. 1:15-cv-05671-NRB (ECF No. 42) at 3 n.3. Most obviously, Plaintiffs have alleged no contract at issue in this case, let alone one that the Amended VRPA impacts.  Even if they had identified any "contract" (with the State of Michigan or with Hearst), the Michigan Supreme Court has made clear that "the Legislature may modify, limit, and even alter the *remedy* for enforcement of a contract without violating the rule against retrospectivity. Thus, such a new act would . . . [require retroactive applicable of a remedial statute] because it does not completely deny a remedy with such restrictions that it impairs the value of the contract or the substantive right."  *In re Certified Questions*, 331 N.W.2d at 465.

**CONCLUSION**

For the reasons set forth above, Hearst respectfully requests that this Court dismiss these actions in their entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated:  May 31, 2016

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com

*Attorney for Defendant Hearst Communications, Inc.*

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 31, 2016.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan

18