**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUZANNE BOELTER, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>   v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>                    Defendant. | Civil Action No. 15-cv-03934-AT |
| JOSEPHINE JAMES EDWARDS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>   v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>                    Defendant. | Civil Action No. 15-cv-09279-AT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SANCTIONS AGAINST DEFENDANT HEARST COMMUNICATIONS, INC.**
**AND ITS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Dated: August 8, 2016

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
pfraietta@bursor.com

*Attorneys for Plaintiffs*

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**

John C. Carey
David P. Milian*
Frank S. Hedin*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email:jcarey@careyrodriguez.com
dmilian@careyrodriguez.com
fhedin@careyrodriguez.com
*Pro Hac Vice Application Forthcoming

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................... 9

    A.    Applicable Legal Standard............................................................... 10

        1.    The Standard for Imposing Rule 11 Sanctions is Objective Unreasonableness.................................................................10

        2.    Baseless Factual Allegations In Answers and Other Pleadings Violate Rule 11...............................................11

    B.    Hearst's Answer Is Objectively Baseless and Was Filed for an Improper Purpose, In Blatant Violation of Rule 11 ................................ 12

        1.    Hearst's Answer Is Objectively Baseless ..................................12

        2.    Hearst Filed Its Answer For The Improper Purpose of Delaying Discovery. ..................................................19

    C.    Non-Monetary and Monetary Sanctions Should Be Imposed Against Hearst and Its Counsel............................................................... 22

        1.    The Court Should Enter a Default Judgment as to Liability Against Hearst or, Alternatively, Deem Admitted the Answers to Paragraphs 7 and 8 Of the Complaint.....................................23

        2.    The Court Should Direct Hearst to Reimburse Plaintiffs' Counsel Double Their Reasonable Attorneys' Fees and Costs Incurred Preparing this Motion ........................................25

CONCLUSION............................................................................................................. 26

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
58 F.3d 849 (2d Cir. 1995) ........................................................................... 24

*Bernal v. All Am. Inv. Realty, Inc.*,
479 F. Supp. 2d 1291 (S.D. Fla. 2007) ........................................................ 24

*Boelter v. Hearst Commc'ns, Inc.*,
No. 15 Civ. 3934 (S.D.N.Y.) .................................................................... 2, 3

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
498 U.S. 533 (1991) ..................................................................................... 22

*Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*,
28 F.3d 259 (2d Cir. 1994) .................................................................... 22, 25

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ..................................................................................... 10

*Edwards v. Hearst Commc'ns, Inc.*,
No. 15 Civ. 9279, (S.D.N.Y.) ................................................................... 2, 3

*Estate of Calloway v. Marvel Entertainment Group*,
9 F.3d 237 (2d Cir. 1993) ............................................................................ 26

*Forsythe v. Hales*,
255 F.3d 487 (8th Cir. 2001) ....................................................................... 24

*Gartenbaum v. Beth Israel Medical Center*,
25 F. Supp. 2d 645 (S.D.N.Y. 1998) ........................................................... 11

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995) ............................................................................ 25

*Gray v. Millea*,
892 F. Supp. 432 (N.D.N.Y. 1995).............................................................. 25

*Gruntal & Co. v. Co-Net Commc'ns, Inc.*,
No. 97 CIV. 9522 (AGS), 1998 WL 912074 (S.D.N.Y. Dec. 29, 1998)................................ 21

*In re September 11th Liability Insur. Coverage Cases*,
243 F.R.D. 114 (S.D.N.Y. 2007)................................................................. 12

*Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*,
239 F. Supp. 2d 26 (D.D.C. 2002)............................................................... 24

*Jimenez v. Madison Area Tech. College*,
   321 F.3d 652 (7th Cir. 2003) ............................................................. 22

*Johnson v. Sec'y, Dep't of Health & Human Servs.*,
   587 F. Supp. 1117 (D.D.C. 1984) ...................................................... 25

*Kahre-Richardes Family Found., Inc. v. Village of Baldwinsville*,
   953 F. Supp. 39 (N.D.N.Y. 1997) ...................................................... 23

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) .................................................. 20, 25

*Levine v. FDIC*,
   2 F.3d 476 (2d Cir. 1993) ................................................................. 19

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
   73 F.3d 1253 (2d Cir. 1996) ............................................................. 25

*Magnotta v. Berry*,
   No. 91 Civ. 0531, 1996 WL 11238 (S.D.N.Y. Jan. 5, 1996) ................. 19

*Margo v. Weiss*,
   213 F.3d 55 (2d Cir. 2000) .......................................................... 19, 23

*Nieman v. Bethlehem Nat. Bank*,
   32 F. Supp. 436 (E.D. Pa. 1939) ...................................................... 21

*O'Brien v. Alexander*,
   101 F.3d 1479 (2d Cir. 1996) ...................................................... 10, 19

*Paganucci v. New York*,
   993 F.2d 310 (2d Cir. 1993) ............................................................. 11

*Pannonia Farms, Inc. v. USA Cable*,
   426 F.3d 650 (2d Cir. 2005) ............................................................. 10

*Polar Int'l Brokerage v. Reeve*,
   196 F.R.D. 13 (S.D.N.Y. 2000) ........................................................ 26

*Porto Transport v. Consolidated Diesel Electric Corp.*,
   20 F.R.D. 1 (S.D.N.Y. 1956) ............................................................ 21

*Republic of Cape Verde v. A & A Partners*,
   89 F.R.D. 14 (S.D.N.Y. 1980) ..................................................... 11, 21

*Sun World, Inc. v. Lizarazu Olivarria*,
   144 F.R.D. 384 (E.D. Cal. 1992) ................................................. 11, 24

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995) ..................................................... 20

*Ted Lapidus, S.A. v. Vann,*
   112 F.3d 9196 (2d Cir. 1997) ................................................. 11

*Vasile v. Dean Witter Reynolds*,
   20 F. Supp. 2d 465 (E.D.N.Y. 1998) .................................... 22

*Wolters Kluwer Financial Services Inc. v. Scivantage et al., 07 CV 2352(HB),*
   2007 WL 4233020 (S.D.N.Y. Nov. 30, 2007) ....................... 12

## RULES

Fed. R. Civ. P. 8 ..................................................................... passim

Fed. R. Civ. P. 11 ................................................................... passim

Fed. R. Civ. P. 56(e) ..................................................................... 25

## STATUTES

Michigan Video Rental Privacy Act,
   H.B. 5331, 84th Leg., Reg. Sess., P.A. No. 378, § 2 (Mich. 1988) ............................................ 2

Plaintiffs Suzanne Boelter ("Plaintiff Boelter") and Josephine James Edwards ("Plaintiff James Edwards") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, hereby move for sanctions against Defendant Hearst Communications, Inc. ("Hearst") and its counsel pursuant to Federal Rule of Civil Procedure 11.

## INTRODUCTION

Hearst and its counsel are attempting to manufacture an issue of fact where none exists as a ploy to convince this Court to unnecessarily "phase" discovery between Plaintiffs' individual and class claims.  Hearst's Answer denies that Plaintiff Boelter and Plaintiff James Edwards are subscribers to *Country Living* and *Good Housekeeping*, and remarkably asserts that all knowledge or information as to whether Plaintiffs are subscribers of those magazines is "exclusively within" Plaintiffs' control.  After over a month of meet and confer attempts by Plaintiffs' counsel, Hearst continues to stand by these untenable denials.  Hearst does so in the face of indisputable evidence – subscriber records possessed and maintained by Hearst itself – demonstrating that both Plaintiff Boelter and Plaintiff James Edwards are subscribers of the magazines at issue.

Even worse, with respect to Plaintiff Boelter, Hearst has admitted on numerous occasions that she was, in fact, a subscriber to *Country Living* magazine.  When Plaintiff Boelter submitted a sworn declaration stating that she was a subscriber to *Country Living* in November 2015, Hearst produced no evidence to the contrary.  When this Court heard oral argument on Plaintiff's Motion for Preliminary Injunction, Hearst's counsel, Jonathan R. Donnellan, admitted that Plaintiff Boelter subscribed to *Country Living*.  *See* Transcript of Proceedings, Dec. 17, 2015 (ECF No. 57), at 7:21-23 ("<u>The fact that plaintiff subscribed to Country Living magazine</u> is not confidential information.") (emphasis added).).  And on July 29, 2016, when Hearst served its Amended Objections and Responses to Plaintiff Boelter's First Sets of Requests for Production

1

and Interrogatories, Hearst again admitted that Plaintiff Boelter was a subscriber to *Country Living*.

Counsel for Plaintiffs attempted many times to resolve this issue amicably.  But after numerous calls, e-mails and formal letters, it has become apparent that Hearst and its counsel will not comply with their obligations under Federal Rule of Civil Procedure 8, let alone admit the truth of allegations that are corroborated by their own records, absent Court involvement.

Rule 11 sanctions are warranted in this case.  Hearst and its counsel should not be permitted to run roughshod over the pleading requirements and the discovery processes of the Federal Rules.  The non-monetary and monetary sanctions requested by Plaintiffs in this Motion will serve to both remedy Hearst's deficient Answer and deter Hearst and its counsel from further engaging in baseless and dilatory conduct going forward.

## BACKGROUND

On May 21, 2015, Plaintiff Boelter filed a class action complaint against Hearst, alleging claims for violation of the Michigan Video Rental Privacy Act, H.B. 5331, 84th Leg., Reg. Sess., P.A. No. 378, § 2 (Mich. 1988) (amended 2016) ("VRPA") and unjust enrichment.  *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 3934, Dkt. No. 1 (S.D.N.Y.).  Plaintiff Boelter's complaint alleged that "Plaintiff Boelter is a subscriber to *Country Living* magazine, which is published by Hearst." (ECF No. 1 at 2.)  The civil cover sheet filed together with Plaintiff Boelter's complaint provided the following address for Plaintiff Boelter: "4265 Lake Street, Spruce MI 48762, Alcona County".  (ECF No. 2 at 2.)

On November 24, 2015, Plaintiff James Edwards filed a class action complaint against Hearst, alleging similar claims.  *Edwards v. Hearst Commc'ns, Inc.*, No. 15 Civ. 9279, Dkt. No. 1 (S.D.N.Y.).  The caption of Plaintiff James Edwards's complaint and accompanying civil cover sheet identified Plaintiff James Edwards by her full legal name, Josephine James Edwards.

2

On November 16, 2015, in support of a motion for preliminary injunction filed in *Boelter*, Plaintiff Boelter submitted a sworn declaration, stating, *inter alia*, that "I am a Michigan citizen and a subscriber to *Country Living* magazine." (ECF No. 50, ¶ 3.) During oral argument on Plaintiff Boelter's motion for preliminary injunction, counsel for Hearst, Mr. Jonathan R. Donnellan, acknowledged "the fact" that Plaintiff Boelter subscribed to *Country Living*. *See* Transcript of Proceedings, Dec. 17, 2015 (ECF No. 57), at 7:21-23 ("<u>The fact that plaintiff</u> <u>subscribed to Country Living magazine</u> is not confidential information.") (emphasis added).)

On February 26, 2016, following consolidation of *Boelter* and *Edwards*, Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint" (ECF No. 67)) in *Boelter*, alleging claims against Hearst for violation of the VRPA and unjust enrichment. The Complaint alleges that "Plaintiff Boelter is a subscriber to *Country Living* magazine" (Complaint ¶ 7) and that "Plaintiff [James] Edwards is a subscriber to *Good Housekeeping* magazine" (*id.* ¶ 8), both of which are Hearst publications (*see id.* ¶¶ 7-8). The Complaint's caption and civil cover sheet again identify Plaintiff James Edwards by her full legal name, Josephine James Edwards.

On July 1, 2016, Hearst filed its Answer to the Complaint. (ECF No. 83.) With respect to Paragraph 7 of the Complaint, the Answer states:

> Hearst admits that it publishes *Country Living* magazine. <u>To the extent the allegations in paragraph 7 pertain to facts or information exclusively within Plaintiff Boelter's control, Hearst denies knowledge and information sufficient to form a belief as to the truth of such allegations.</u> The allegations in the sentence beginning "Because Plaintiff Boelter is entitled by law…" state legal conclusions to which no response is required. <u>Hearst denies the remainder of the allegations contained in paragraph 7.</u>

(Answer ¶ 7.) (emphasis added.) Likewise, with respect to Paragraph 8 of the Complaint, the Answer states:

> Hearst admits that it publishes *Good Housekeeping*
> magazine. <u>To the extent the allegations in paragraph 8 pertain to</u>
> <u>facts or information exclusively within Plaintiff Edwards's control,</u>
> <u>Hearst denies knowledge and information sufficient to form a</u>
> <u>belief as to the truth of such allegations.</u> The allegations in the
> sentence beginning "Because Plaintiff Edwards is entitled by
> law…" state legal conclusions to which no response is required.
> <u>Hearst denies the remainder of the allegations contained in</u>
> <u>paragraph 8.</u>

(*Id.* ¶ 8.) (emphasis added.)

On July 7, 2016, counsel for Plaintiffs spoke by telephone with counsel for Hearst to discuss Hearst's Answer to the allegations of Paragraphs 7 and 8 of the Complaint.  (*See* Declaration of Joseph I. Marchese ("Marchese Decl.") ¶ 3.)  On that call, counsel for Plaintiffs noted to Hearst's counsel that, although the Answer admits Hearst publishes the *Country Living* and *Good Housekeeping* magazines, the Answer denies that Plaintiff Boelter subscribed to *Country Living* and that Plaintiff James Edwards subscribed to *Good Housekeeping*, and denies that Hearst has sufficient knowledge to admit those allegations.  (*Id.*)  Plaintiffs' counsel stated that these denials were troubling in light of Hearst's obligations under Federal Rule of Civil Procedure 8, including its obligation to fairly respond to the substance of allegations and make "good faith" denials.  (*Id.*)  In response, Kristina Findikyan, counsel for Hearst, stated that Hearst could not determine from its records if Plaintiff Boelter subscribed to *Country Living*, and further stated that Hearst had no record of a *Good Housekeeping* subscription in the name of "Josephine James Edwards".  (*Id.*)  Counsel for Plaintiff explained that Plaintiff James Edwards was recently married and that her subscription to *Good Housekeeping* was likely in her maiden name, Josephine James.  (*See id.*)  Plaintiffs' counsel requested that Ms. Findikyan please ask Hearst to perform another search of its records and, should the records reveal that Plaintiff James Edwards is in fact a subscriber of *Good Housekeeping*, to amend its Answer accordingly.  (*Id.*)

Later on July 7, 2016, Plaintiffs' counsel memorialized the parties' conversation

regarding Plaintiff Boelter in an e-mail to Hearst's counsel, which stated in pertinent part:

> On the call, we discussed Hearst's denials of Ms. Boelter's allegation of subscribership, and you stated that you were not sure if Ms. Boelter is or was a subscriber to *Country Living* Magazine.  This response was troubling in light of Hearst's denials and obligations pursuant to F.R.C.P. 8.  As you know, Federal Rule of Civil Procedure 8(b)(4) states that "a party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." FRCP 8(b)(4).  Thus, to the extent Hearst can confirm that Ms. Boelter is or was a subscriber to *Country Living* Magazine it must admit that.  Further, if Hearst cannot confirm or deny whether Ms. Boelter is or was a subscriber to *Country Living* Magazine, Federal Rule of Civil Procedure 8(b)(5) provides that "a party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state."  FRCP 8(b)(5).  In general, Rule 8 also requires Hearst to provide a fair, good faith response to the substance of plaintiff's allegations of subscribership.   Thus, Hearst is obligated by Rule 8 to investigate whether Ms. Boelter is or was a subscriber to *Country Living* Magazine.

(*Id.* ¶ 4; Marchese Decl. Ex. A.)

The following day, July 8, 2016, Plaintiffs' counsel memorialized the parties'

conversation regarding Plaintiff James Edwards in an e-mail to Hearst's counsel, which stated in

pertinent part:

> To add to Phil's synopsis with respect to point 3, Hearst's response at paragraph 8 regarding Ms. James is identical to its response to paragraph 7 as it relates the Plaintiff's status as a subscriber. As I said in our telephone call, Ms. James married and changed her name to Edwards prior to the filing of her lawsuit. Her maiden name was Josephine James.  As with Ms. Boelter, to the extent Hearst is able in good faith to confirm Ms. James as a subscriber, Hearst is required to admit the allegation. If Hearst cannot in good faith confirm or expressly deny whether Ms. James is or was a subscriber to Good Housekeeping Magazine, Rule 8(b)(5) provides that "a party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state."  I understand that the marriage and name change were not pled. Nevertheless, a response to paragraph 8's allegations as pled is

5

> required by the rules. Please advise whether Hearst will agree to
> amend its answer accordingly.  Thanks.

(Marchese Decl. ¶ 5; Marchese Decl. Ex. B.)

On July 12, 2016, Hearst's counsel responded by e-mail to Plaintiffs' concerns regarding

the Answer at Paragraphs 7 and 8, stating:

> This serves to confirm both Hearst's Answer in regards to
> paragraphs 7 and 8 of the Consolidated Complaint and also what I
> stated on the phone during our meet and confer:  <u>Hearst does not
> have knowledge and information sufficient to form a belief as to
> the truth of the allegations that Plaintiff Suzanne Boelter is a
> subscriber to Country Living, or that Plaintiff Josephine James
> Edwards is a subscriber to Good Housekeeping.</u>  Neither Hearst's
> records nor the allegations of the Consolidated Complaint are
> sufficient to permit a definitive answer as to whether either
> plaintiff is a subscriber, and we have no intention of making any
> legal admission unless and until we are certain that plaintiffs were
> in fact subscribers to the magazines at issue.  <u>While we intend to
> take discovery on this point, at this time it is exclusively within
> Plaintiffs' knowledge whether they were subscribers.</u>  That is why
> we answered as we did, which is fully compliant with Fed. R. Civ.
> P. 8.  Moreover, with respect to Ms. Edwards specifically, Hearst
> does not have any record indicating that a Michigan citizen named
> Josephine James Edwards is a subscriber to Good Housekeeping
> magazine, as alleged in the Consolidated Complaint.

(Marchese Decl. ¶ 6; Marchese Decl. Ex. C at 1 (emphasis added).)

On July 13, 2016, counsel for Plaintiffs visited a website operated by CDS Global, a

Hearst company, on which any person can search for a subscriber of a Hearst publication by

name and address.  (Marchese Decl. ¶ 7; Marchese Decl. Ex. D.)  The CDS Global website

visited by Plaintiffs' counsel is accessible from both www.countryliving.com and

www.goodhousekeeping.com.  (Marchese Decl. ¶ 7.)  A simple search of Plaintiffs' names and

addresses generates records stating that they were subscribers to the magazines at issue.  (*Id.*;

Marchese Decl. Exs. E-F.)  The address matching Plaintiff Boelter's subscription was included

on her civil cover sheet.  (Marchese Decl. ¶ 7.)  And consistent with the information Plaintiff's

counsel clearly conveyed to Hearst's counsel by telephone and e-mail a week earlier, Plaintiff

James Edwards' subscription was located on the CDS Global website by searching for her

maiden name, Josephine James.  (*Id.*)

On July 14, 2016, counsel for Plaintiffs sent Hearst's counsel a letter pursuant to Federal

Rule of Civil Procedure 11(c)(2).  (*Id* ¶ 8; Marchese Decl. Ex. G.)  The letter stated that

Plaintiffs' counsel had located records on Hearst's own publically available website proving that

Plaintiffs were subscribers to the publications at issue.  (Marchese Decl. Ex. G at 2.)  True and

correct copies of those records were attached to the letter as Exhibits.  (*Id.* at 3-8.)  The letter

notified Hearst that, unless the company amended its Answer to admit the allegations of

Paragraphs 7 and 8 of the Complaint by August 4, 2016 (i.e., within 21 days from the date of the

letter), Plaintiffs intended to file the motion for Rule 11 sanctions accompanying the letter (*id.* at

9-12), supported by necessary briefs and materials.  (*Id.* at 2.)

On July 29, 2016, Hearst served on Plaintiffs its amended objections and responses to

Plaintiff Boelter's first set of interrogatories and first set of requests for production of

documents.  (Marchese Decl. ¶ 9; Marchese Decl. Exs. H-I.)  Hearst generally objected to every

interrogatory and request for production as, *inter alia*, "premature, overbroad, and unduly

burdensome to the extent that they seek documents or information other than those pertaining to

Plaintiff Suzanne Boelter's individual claims and any defenses thereto."  (*See generally*

Marchese Decl. Exs. H-I.)  Notably, however, in both its interrogatory and request for production

responses, Hearst stated:

> Hearst will construe 'Plaintiff' as, and will provide
> responses and produce documents with respect to, a Suzanne
> Boelter who was sent *Country Living* magazines at the address
> 4265 Lake Street, Spruce, MI 48762-9740, which Plaintiff listed as
> her address in her original Civil Cover Sheet.

(Marchese Decl. Ex. H at 2, Ex. I at 2.)  And in response to Interrogatory No. 4 – requiring

Hearst to "[i]dentify all entities to which Hearst discloses Hearst Magazines subscribers'

Personal Reading Information" – Hearst stated, in pertinent part:

> During the Relevant Time Period, Hearst transmitted the
> name and address of Suzanne Boelter as a *Country Living*
> subscriber to *Midwest Living* one time for the exclusive purpose of
> marketing goods and services directly to Suzanne Boelter.

(Marchese Decl. Ex. H at 13 (emphasis added)).

On August 4, 2016, the deadline for Hearst to amend its Answer pursuant to the 21-day

safe harbor period triggered by Plaintiffs' Rule 11 letter, Mr. Donnellan sent a letter to Plaintiffs'

counsel regarding Hearst's Answer to Paragraphs 7 and 8 of the Complaint.  (Marchese Decl. ¶

10; Marchese Decl. Ex. J.)  In the letter, Hearst doubled down on its previous untenable denials

regarding Plaintiffs' subscriptions, stating in pertinent part:

> As stated by my colleague Kristina Findikyan in her July
> 12, 2016 email, Hearst does not have knowledge or information
> sufficient to form a belief as to the truth of the allegations that
> Plaintiff Suzanne Boelter was a subscriber to *Country Living* at the
> time of the filing of the Consolidated Complaint, or that Plaintiff
> 'Josephine James Edwards' was a subscriber to *Good*
> *Housekeeping* at the time of the filing of the Consolidated
> Complaint. The information necessary to definitively answer
> whether either plaintiff is a subscriber is exclusively within
> plaintiffs' knowledge at this time. Nothing in the July 14 Letter
> changes that fact, much less compels a judicial admission that
> plaintiffs are subscribers.

(Marchese Decl. Ex. J at 1-2.)

On August 8, 2016, the parties filed a proposed Civil Case Management Plan and

Scheduling Order, in which Hearst proposes the parties conduct discovery "in two phases."

(Marchese Decl. ¶ 11; Marchese Decl. Ex. K.)  Under Hearst's proposal, the parties would take

discovery as to "the claims of the individually named Plaintiffs first, followed by the class

claims." (Marchese Decl. Ex. K at 3.)  According to Hearst, "[t]here is a genuine dispute concerning Ms. Boelter's subscriber status that discovery will resolve.  The same applies to Ms. Edwards." (*Id.*)  Plaintiffs opposed phasing discovery.  (*Id.* at 2.)  Plaintiffs explained that Hearst has already admitted Plaintiff Boelter is a subscriber, that Plaintiffs have indisputable evidence from Hearst's own records demonstrating that both Plaintiffs are subscribers, and that Hearst's proposal would only serve to unfairly prejudice Plaintiffs and the class.  (*Id.* at 2.)  Plaintiffs stated:

> The phasing proposed by Defendant would be unfairly prejudicial to Plaintiffs.  It would limit Plaintiffs' rights to take discovery, even after discovery had already been stayed for many months.  In essence, Defendant seeks to limit discovery to issues and information that are already within Hearst's knowledge, possession, and control (e.g., Plaintiffs' status as subscribers and Hearst's disclosure of their Personal Reading Information).  Defendant also seeks to limit discovery to matters that have already been admitted (e.g., Plaintiffs' status as subscribers and Hearst's disclosure of their Personal Reading Information). . . . Plaintiffs need to take discovery beyond the individual claims of Ms. Boelter and Ms. Edwards in order to meet their burden of moving for class certification at 'an early practicable time.'

(*Id.*)

## ARGUMENT

Hearst's Answer at Paragraphs 7 and 8 is directly contradicted by readily available evidence, which Hearst itself possesses and maintains, demonstrating that Plaintiffs are both subscribers of the magazines at issue.  Moreover, Hearst and its counsel have admitted that Plaintiff Boelter is a subscriber of *Country Living* on multiple occasions, including in open court and most recently in Hearst's interrogatory responses.  Hearst is refusing to amend its Answer for the improper and dilatory purpose of stonewalling class discovery.  Both non-monetary and monetary sanctions against Hearst and its counsel are warranted under Rule 11.

A.      **Applicable Legal Standard**

Federal Rule of Civil Procedure 11(a) requires that every paper submitted to the court on behalf of a represented party be signed by an attorney of record.  Fed. R. Civ. P. 11(a); *O'Brien v. Alexander,* 101 F.3d 1479, 1488 (2d Cir. 1996).  Rule 11(b) provides, in pertinent part, that an attorney "signing, filing, submitting, or later advocating" a "pleading, written motion, or other paper" is certifying "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances": (1) the pleading "is not being presented for any improper purpose;" and (2) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."  Fed. R. Civ. P. 11(b)(1)-(4).  The court may impose sanctions on any attorney or party who violates Rule 11(b).  *See* Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

1.      **The Standard for Imposing Rule 11 Sanctions is Objective Unreasonableness**

"Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them."  *Pannonia Farms, Inc. v. USA Cable,* 426 F.3d 650, 652 (2d Cir. 2005).  The Supreme Court has held that the "central purpose of Rule 11 is to deter baseless filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact and legally tenable."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990).

The standard for imposing sanctions under Rule 11 is objective unreasonableness, meaning that liability may be imposed if a claim is objectively unreasonable in light of relevant

factual support existing at the time the claim was made.  *See Ted Lapidus, S.A. v. Vann,* 112 F.3d

9196 (2d Cir. 1997) (liability may be imposed if the attorney's claim to have evidentiary support

is not objectively reasonable); *Gartenbaum v. Beth Israel Medical Center,* 25 F. Supp. 2d 645,

646 (S.D.N.Y. 1998) ("The district court has the task of objectively determining whether the

attorney facing sanctions had a reasonable evidentiary basis for the claim when the pleading was

signed.") (citing *Paganucci v. New York,* 993 F.2d 310 (2d Cir. 1993).

### 2.    Baseless Factual Allegations In Answers and Other Pleadings Violate Rule 11

Rule 11 sanctions can be imposed for baseless factual allegations in a pleading, as well as

for baseless denials of factual allegations in an answer.  *See* Fed. R. Civ. P. 11(b)(4) (signatory of

filing certifies that "the denials of factual contentions are warranted on the evidence or, if

specifically so identified, are reasonably based on belief or a lack of information"); *see also*

*Republic of Cape Verde v. A & A Partners*, 89 F.R.D. 14 (S.D.N.Y. 1980) (denial in answer

violates Rule 11 if contrary to known information); *see also, e.g., Sun World, Inc. v. Lizarazu*

*Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992) (concluding that, where defendant made

knowingly false statements in Answer, among engaging in other fraudulent conduct, the

"appropriate sanction is the striking of [defendant's] answer, the dismissal of his counterclaim

and the entry of default judgment against him on [plaintiff's] complaint").  Baseless factual

allegations in a pleading are serious because of the cost and delay they cause. As Judge

Hellerstein of this District noted:

> The evidentiary foundation upon which an attorney rests
> his assertions of fact is, for the most part, exclusively within the
> control of the attorney and his client. In order to function, the court
> must repose trust in the attorneys who come before it to make
> factual representations supported by evidence. . . . In a complex
> case, baseless factual contentions can delay the time for
> presentation of evidence to the fact-finder for years, at an expense
> running into the millions of dollars.

11

*In re September 11th Liability Insur. Coverage Cases,* 243 F.R.D. 114, 124 (S.D.N.Y. 2007) (awarding $750,000 in Rule 11 sanctions for unsupportable factual contentions by Zurich Insurance Co. that the Port Authority was not covered under the insurance program); *see also Wolters Kluwer Financial Services Inc. v. Scivantage et al.,* 07 CV 2352(HB), 2007 WL 4233020, at *2-3 (S.D.N.Y. Nov. 30, 2007) ("Such [ethical misconduct] is a drain on valuable judicial resources: when, for example, a litigant misleads the Court, it necessarily takes more time for the Court to try and sift through the facts and separate truth from falsehood.").

### B.    Hearst's Answer Is Objectively Baseless and Was Filed for an Improper Purpose, In Blatant Violation of Rule 11

Hearst lacked any good-faith basis to deny that Plaintiffs were subscribers of the magazines at issue, or to deny that it has knowledge or information sufficient to form a belief as to the truth of those allegations. Hearst's subsequent unwillingness to amend its Answer after being afforded a reasonable amount of time to further investigate its denials at Paragraphs 7 and 8 demonstrates more than a failure to conduct a reasonably inquiry, which is alone sufficient to trigger sanctions under Rule 11.  Hearst's refusal to admit what its own records show – that Plaintiffs are subscribers of Hearst's publications – demonstrates that Hearst and its counsel are using the false denials at Paragraphs 7 and 8 for an improper purpose.  Specifically, Hearst and its counsel are attempting to create an issue of fact where none exists, to form a false factual narrative they hope will induce the Court into staying all class discovery pending a lengthy period of unnecessary individual discovery.

### 1.    Hearst's Answer Is Objectively Baseless

Federal Rule of Civil Procedure 8 require that "[d]enials shall fairly meet the substance of the averments denied." Fed. R. Civ. P. 8(b).  A party cannot deny an averment entirely if there is a portion that it should fairly admit.  Instead, "[w]hen a pleader intends in good faith to deny

only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder." *Id.*

As described above, Hearst has known all along that Plaintiff Boelter is a *Country Living* subscriber, and it knew at the time it filed the Answer that Plaintiff James Edwards is a *Good Housekeeping* subscriber. Hearst not only maintains records pertaining to its customers and their corresponding magazine subscriptions, including records pertaining to Plaintiff Boelter and Plaintiff James Edwards, but we now know that Hearst makes those records publically available on its CDS Global website. (*See* Marchese Decl. ¶ 7; Marchese Decl. Exs. E-F.) It appears that Hearst's counsel has personally known about the CDS Global website since the beginning of this case, having filed a motion to dismiss on August 17, 2015 that quoted, and requested that the Court take judicial notice of, the same www.countryliving.com website that links to the CDS Global website. (*See* ECF No. 18 at 46-47; *see also* Marchese Decl. ¶ 7.)[1] Moreover, on November 16, 2015, in support of her motion for preliminary injunction, Plaintiff Boelter submitted a declaration stating that "I am a Michigan citizen and a subscriber to *Country Living* magazine." (ECF No. 50, ¶ 3.) Hearst presented no evidence to refute that sworn statement. And on December 17, 2015, at oral argument on Plaintiff Boelter's motion for preliminary injunction, Hearst's counsel affirmatively represented to the Court that Plaintiff Boelter is a

---

[1]     In a footnote of the motion to dismiss relating to Hearst's request for judicial notice, Hearst stated: "Notably, Plaintiff [Boelter] has not alleged any details of her alleged subscription [to *Country Living*], including the date(s) on which she subscribed or the method of her subscription. Plaintiff cannot … avoid consideration of relevant documents that would reasonably be expected to be referenced in a complaint by carefully omitting such references." (ECF No. 18 at 46 n.20.) In other words, immediately after asking the Court to take judicial notice of its own website, part of which contains documentary evidence of Plaintiff Boelter's subscription (the existence of which Hearst was obviously aware yet failed to inform the Court), Hearst and its counsel had the audacity to criticize Plaintiff Boelter for failing to present that very same evidence to the Court, thereby suggesting that it did not exist. As this record demonstrates, Hearst and its counsel have been proceeding in bad faith since the beginning of this litigation.

subscriber of *Country Living*.  (*See* ECF No. 57 at 7:21-23. (Jonathan R. Donnellan stating that

"[t]he fact that plaintiff subscribed to Country Living magazine is not confidential information.")

(emphasis added).)

Remarkably, despite knowing (and, in the case of Plaintiff Boelter, admitting) that

Plaintiffs are subscribers of *Good Housekeeping* and *Country Living*, Hearst filed the following

Answer to Paragraphs 7 and 8 of the Complaint:

> To the extent the allegations in paragraph [7/8] pertain to
> facts or information exclusively within Plaintiff['s] control, Hearst
> denies knowledge and information sufficient to form a belief as to
> the truth of such allegations. . . . Hearst denies the remainder of the
> allegations contained in paragraph [7/8].

(Answer ¶¶ 7-8.)

This Answer at Paragraphs 7 and 8 – which is conditioned by the statement "[t]o the

extent the allegations in paragraph [7 and 8] pertain to facts or information exclusively within

Plaintiff[s'] control . . ." (*id.*) – completely fails to comply with Rule 8(b) because the allegations

in Paragraphs 7 and 8 of the Complaint do not "pertain to facts or information exclusively within

Plaintiffs' control."  As discussed above, Hearst possesses records pertaining to its customers

and the magazines to which they subscribe, and makes those records publically available on its

CDS Global website.  (*See* Marchese Decl. ¶ 7.)  Plaintiffs' counsel recently searched the CDS

Global website for, and located, records definitively proving that both Plaintiffs subscribed to the

magazines at issue.  *(See id.*; Marchese Decl. Exs. E-F.)  Thus, the allegations of Paragraphs 7

and 8 do not "pertain to facts and information exclusively within Plaintiff[s'] control," but rather

pertain to facts and information contained within Hearst's own records.  Accordingly, the second

half of the Answer at Paragraphs 7 and 8 – that ". . . Hearst denies knowledge and information

sufficient to form a belief as to the truth of such allegations" – is complete nonsense.  Hearst has

merely stated that it has no knowledge or information about matters that <u>no one except Plaintiffs</u> <u>have any knowledge or information about</u>.  That answer applies to every allegation in every case. Significantly, Hearst has intentionally refused, as required by the Federal Rules, to answer the allegations of Paragraphs 7 and 8 <u>with respect to facts and information that are within its control</u>, including but not limited to the CDS Global records obtained by Plaintiffs' counsel.  *See* Fed. R. Civ. P. 8(b) ("Denials shall fairly meet the substance of the averments denied.").  In view of Hearst's publically available records pertaining to Plaintiffs' subscriptions, Hearst has no choice but to admit the allegations of Paragraphs 7 and 8 in full, or at the very least admit that it possesses records reflecting that Michigan residents named Suzanne Boelter and Josephine James have subscribed to the publications at issue.  Hearst's flat out denial of any knowledge of these facts is indefensible.[2]

When Plaintiffs' counsel first communicated these concerns to Hearst's counsel by phone and e-mail, Hearst's counsel stated that Hearst could not determine from its records whether or not Plaintiff Boelter subscribed to *Country Living*, and that Hearst had no record of a *Good Housekeeping* subscription in the name of Josephine James Edwards.  (Marchese Decl. ¶ 3.) Hearst's counsel then sent an e-mail to Plaintiffs' counsel stating that "Hearst does not have knowledge and information sufficient to form a belief as to the truth of the allegations that Plaintiff Suzanne Boelter is a subscriber to Country Living, or that Plaintiff Josephine James Edwards is a subscriber to Good Housekeeping." (Marchese Decl. ¶ 6; Marchese Decl. Ex. C at 1.)  After discovering the searchable database of subscriber records on Hearst's own CDS Global website (*see* Marchese Decl. ¶ 7; Marchese Decl. Exs. D-F), Plaintiffs' counsel sent a Rule 11

---

[2]     Hearst's assertion that only Plaintiffs know whether they subscribed to the magazines at issue is even more ridiculous considering that Hearst is in the business of mailing magazines to subscribers.  How would Hearst be able to mail magazines to subscribers without knowing who those subscribers are?

letter to Hearst's counsel, explaining that Hearst's own records show that a *Country Living* subscriber named "Suzanne Boelter" resides at an address matching Plaintiff Boelter's address on the civil cover sheet accompanying her original complaint, and that the "Josephine James" listed as a *Good Housekeeping* subscriber in Hearst's records is the same person as Plaintiff James Edwards, whose name recently changed as a result of a marriage. (Marchese Decl. ¶ 8; Marchese Decl. Ex. G.)  The letter requested that Hearst amend its Answer accordingly.  (*Id.*) Twenty-one days later, Hearst's counsel sent Plaintiffs' counsel a letter stating that the Answer fully complies with Rule 8(b), completely ignoring its own evidence and prior statements to the contrary.  (*See* Marchese Decl. ¶ 10; Marchese Decl. Ex. J.)

Application of Rule 11 to these facts is exceedingly simple.  The Answer at Paragraphs 7 and 8 contains denials wholly at odds with easily verifiable facts that are readily available in Hearst's own, publically accessible records on CDS Global.[3]  The Answer's denials are also wholly at odds with the statements of Hearst's counsel in open court in December of 2015 and, most recently, with several key admissions made by Hearst in response to Plaintiff's interrogatories and requests for production – specifically, that "a Suzanne Boelter … has been sent *Country Living* magazines at the address 4265 Lake Street, Spruce, MI, 48762-9740, which Plaintiff listed as her address in her original Civil Cover Sheet," (Marchese Decl. Ex. H at 2, Ex. I at 2 (emphasis added)); and that "Hearst transmitted the name and address of Suzanne Boelter as a *Country Living* subscriber to *Midwest Living* one time for the exclusive purpose of marketing goods and services directly to Suzanne Boelter," (*id.* Ex. H at 13 (emphasis added)).

---

[3]      Hearst vouches for the accuracy of these records by listing CDS Global in its interrogatory responses as a source of discoverable information (Marchese Decl. Ex. H at 10, 15), and by relying on the www.goodhousekeeping.com website associated with the CDS Global website in its motion to dismiss Plaintiff Boelter's original complaint (ECF No. 18 at 46-47, 46 n.20).

Remarkably, even after these admissions, Hearst still refuses to amend its Answer at Paragraphs 7 and 8.

Instead, Hearst contends in its letter dated August 4, 2016 that the Answer's denial at Paragraph 7 is proper because the CDS Global records reflect Plaintiff Boelter's account as "canceled". (Marchese Decl. Ex J at 2.) That is preposterous. Hearst's CDS Global records reflect that Plaintiff Boelter remains a subscriber to *Country Living*, and that she will continue receiving issues through October 2016. (*See* Marchese Decl. Ex. E.) Though Hearst's records state that Plaintiff Boelter's "account" is "canceled" (*id.*) that does not mean she is no longer deemed a subscriber of the publication. To the contrary, having subscribed to *Country Living*, Plaintiff Boelter will forever be deemed a "subscriber" of *Country Living*; whether she is a current or former subscriber of the publication is of no consequence for purposes of answering the allegations of Paragraph 7 of the Complaint. Moreover, even if Plaintiff Boelter cancelled her subscription to *Country Living* sometime after initiating her lawsuit and before filing the consolidated Complaint – and there is no evidence to suggest she did – any such cancelation is completely irrelevant to this case. It is not material *when* Plaintiff Boelter subscribed to *Country Living* because, as both her original complaint and the operative Complaint plainly allege, Hearst disclosed her personal information relating to her subscription during the statutory period. Indeed, even Hearst has recognized that it is irrelevant whether Plaintiff Boelter is a present or former subscriber of *Good Housekeeping*. (*See* Marchese Decl. Ex. K at 3 (Hearst stating in proposed Case Management Plan that "even assuming that Plaintiffs were subscribers, there remain serious questions about whether either Plaintiff suffered a concrete injury in fact or otherwise have standing to continue to pursue her claims" (emphasis added)); Marchese Decl. Ex. C at 1 (Hearst's counsel stating in July 12, 2016 e-mail that "we have no intention of making

any legal admission unless and until we are certain that plaintiffs were in fact subscribers to the magazines at issue. While we intend to take discovery on this point, at this time it is exclusively within Plaintiffs' knowledge whether they were subscribers.") (emphasis added).).

Hearst next argues that the Answer's denial at Paragraph 8 is "entirely proper" because the CDS Global record for Plaintiff James Edwards "concerns an account for an individual named 'Josephine James,' *not* Josephine James Edwards as pled in the Consolidated Complaint." (Marchese Decl. Ex. J at 2.)  Hearst also argues that the Complaint is "deficient" because the caption includes an additional surname for Plaintiff James Edwards (her husband's name "Edwards") that is not present in Hearst's records.  (*Id.*)  These arguments fail for several reasons.  First, the name Josephine James Edwards provided Hearst all the information it needed, and more, to locate its CDS Global records for a Michigan resident named Josephine James who subscribed to *Good Housekeeping*.  Second, prior to the filing of the Answer, and prior to counsel for Plaintiffs' discovery of the CDS Global records, Plaintiffs' counsel repeatedly asked Hearst to search its records for "Josephine James," Plaintiff James Edwards's maiden name. Hearst therefore has no excuse for its false denial at Paragraph 8, and certainly has no excuse for its continued refusal to amend and correct its Answer after receiving Plaintiffs' July 14, 2016 letter.  Third, Hearst's suggestion that the Complaint is "deficient" for failing to allege Plaintiff James Edward's name exactly as it appears in Hearst's subscriber records is nonsense.  Earlier in this litigation it was Hearst who argued that Plaintiff Boelter, by failing to file her complaint "under a pseudonym," i.e., under a name *different* from her name in Hearst's records, had "demonstrate[d] that she has never placed any meaningful value on keeping her *Country Living* subscription a secret."  (ECF No. 53 at 14 n.4.)  This naturally begs the question – if a plaintiff can't sue Hearst under her name appearing in Hearst's records, and also can't sue Hearst under a

name different from her name appearing in Hearst's records, then how is anyone supposed to sue Hearst?

Hearst's new strategy of quibbling over semantics and maiden names to justify its Answer at Paragraphs 7 and 8 should be rejected.  It is well established that "[t]he creativity of an attorney may not transcend the facts of a given case" in the Rule 11 context.  *See Levine v. FDIC,* 2 F.3d 476, 479 (2d Cir. 1993); *see also, e.g., id.* ("[C]ounsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct acceptable of members of the bar of this court as well as those incorporated in Fed. R. Civ. P. 11.").  The facts of this case are simple, straightforward and supported by Hearst's own records. Plaintiffs are subscribers of *Good Housekeeping* and *Country Living*.  Hearst knew that Plaintiffs were subscribers to *Good Housekeeping* and *Country Living* at the time it filed its Answer denying that Plaintiffs were subscribers to *Good Housekeeping* and *Country Living*.  Hearst's Answer therefore violated Rule 11.  *See* Fed. R. Civ. P. 11(b)(4); *see also, e.g., O'Brien v.,* 101 F.3d at 1490 (affirming Rule 11 sanction for a single representation "totally lacking in evidentiary support"); *Margo v. Weiss,* 213 F.3d 55, 65 (2d Cir. 2000) (affirming Rule 11 sanctions imposed by the district court on the plaintiffs and their trial counsel for "fil[ing] affidavits . . . in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers"); *Magnotta v. Berry,* No. 91 Civ. 0531, 1996 WL 11238, at *4 (S.D.N.Y. Jan. 5, 1996) (imposing sanctions for "four statements" that were contradicted by testimonial evidence, and were thus "unsupported by the facts").

### 2.  Hearst Filed Its Answer For The Improper Purpose of Delaying Discovery.

Moreover, Hearst and its counsel willfully answered Paragraphs 7 and 8 with false denials, which they have refused to correct, in order to create an issue of fact where none exists,

19

for the improper purpose of delaying and multiplying these proceedings in violation of Rule 11(b)(1).

In determining whether a filing was made with an improper purpose, the Court should assess such objective factors as:

> Whether particular papers or proceedings caused delay that was unnecessary, whether they caused increase in the cost of litigation that was needless, or whether they lacked any apparent legitimate purpose. Findings on these points would support an inference of improper purpose. The court can make such findings guided by its experience in litigation, its knowledge of the standards of the bar of the court, and its familiarity with the case before it, and by reference to the relevant criteria under the Federal Rules such as those in Rule 1 and Rule 26(b)(1).

*Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995); *see also Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 661 (S.D.N.Y. 1996) (sanctions warranted where there is a "flagrant lack of merit" to party's claim and thus likelihood of improper motive).

Each of these factors is present here. Hearst's denials at Paragraphs 7 and 8 lack any legitimate purpose.  Hearst is attempting, through its Answer, to trick the Court into finding an issue of fact as to whether Plaintiffs subscribed to the relevant publications, and then use that non-existent issue to convince the Court to order a "phased" discovery process, thereby stonewalling all class discovery until after months of needless individual fact discovery on issues not even in dispute.  Nothing else explains why Hearst refuses to amend and correct its Answer consistent with its own statements in this litigation and its own records readily available on its website.

The facts of this case are similar to those of *Republic of Cape Verde*, where Judge Buchwald found an Answer's denials wholly unwarranted by the evidence, and made for an improper purpose, in clear violation of Rule 8(b) and Rule 11.  The Court explained:

> Defendants denied knowledge or information sufficient to
> form a belief as to truth of the allegations in paragraph 1 of the
> complaint which other than allegations about the defendants
> contained the allegation that 'plaintiff is a foreign government.'
> Apparently, that was the only portion of the allegation which
> defendants challenged.  That denial does not conform with Rule
> 8(b), which is also subject to the requirements of Rule 11.  A party
> may not deny knowledge or information of a matter of public
> record or general public notice.  *See, e. g. Nieman v. Bethlehem
> Nat. Bank*, 32 F. Supp. 436 (E.D. Pa. 1939), aff'd., 113 F.2d 717
> (3d Cir. 1940); Porto Transport v. Consolidated Diesel Electric
> Corp., 20 F.R.D. 1 (S.D.N.Y. 1956) and 2A Moore's Federal
> Practice P 8.22 (1979).

*Republic of Cape Verde*, 89 F.R.D. at 23.

In this case, Hearst's denials of the allegations of Paragraphs 7 and 8 are even more egregious than the denial in *Republic of Cape Verde*.  Hearst has not just denied knowledge or information of a matter of public record (on the Internet) in violation of Rule 8(b), Hearst has also denied knowledge or information of a matter <u>definitively reflected in its own internal records</u>.

There can thus be no dispute that Hearst's filing of and refusal to amend its baseless Answer, and its dilatory objectives motivating the Answer, are each sufficiently serious Rule 11 violations to warrant sanctions.  *See, e.g., id.; Gruntal & Co. v. Co-Net Commc'ns, Inc.*, No. 97 CIV. 9522 (AGS), 1998 WL 912074, at *3 (S.D.N.Y. Dec. 29, 1998) (finding defendant engaged in bad faith conduct warranting sanctions, explaining that "[the defendant] has been in possession of, or had easy access to, documentary evidence establishing the claims against it since, at the very latest, April 20, 1998," and that, by continuing to refuse to admit facts established by that evidence, defendant "knew that it was forcing plaintiffs to engage in needless motion practice.").

**C.    Non-Monetary and Monetary Sanctions Should Be Imposed Against Hearst and Its Counsel**

"[N]on-monetary, as well as monetary sanction[s], may be applied under . . . Rule [11], so long as the sanction is reasonably necessary to deter repetition of the offending conduct." *Jimenez v. Madison Area Tech. College,* 321 F.3d 652, 657 (7th Cir. 2003). The Court has "significant discretion in determining what sanctions . . . should be imposed for a [Rule 11] violation." *Id.*   "[T]he principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses[.]"  *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) (citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533 (1991)).

The Court's choice of appropriate sanctions "should have reference to the conduct which warrants the sanction and must be carefully tailored based on the facts before the Court." *Vasile v. Dean Witter Reynolds,* 20 F. Supp. 2d 465, 505-506 (E.D.N.Y. 1998). The Advisory Committee Notes accompanying the 1993 Amendments to Rule 11 include factors to be considered when determining whether sanctions are warranted and, if so, the type and degree of any sanction that should be imposed.  Those factors include: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.  *Id.*

Consideration of these factors demonstrates that severe sanctions are warranted in this case.  Because the denials in Hearst's Answer were knowingly false, failed to conform to the requirements of Rule 8(b), and were made by a sophisticated, well-capitalized litigant for improper and dilatory objectives, the imposition of both non-monetary and monetary sanctions is necessary to serve the required deterrent effect and maintain a close relationship between the sanctions and Hearst's conduct.  *See Margo*, 213 F.3d at 64-65; *see also Kahre-Richardes Family Found., Inc. v. Village of Baldwinsville,* 953 F. Supp. 39, 42 (N.D.N.Y. 1997), *aff'd,* 141 F.3d 1151 (2d Cir. 1998).  Specifically, the Court should issue an order entering a default judgment as to liability against Hearst (or, alternatively, deeming Hearst's Answer to admit Paragraphs 7 and 8 of the Complaint), and directing Hearst to reimburse Plaintiffs' counsel double their reasonable fees and costs incurred in investigating Hearst's Answer and preparing this Motion.

> **1.    The Court Should Enter a Default Judgment as to Liability Against Hearst or, Alternatively, Deem Admitted the Answers to Paragraphs 7 and 8 Of the Complaint**

Despite knowing from the outset of this case that Plaintiff Boelter is a Hearst subscriber, and despite learning weeks ago that Plaintiffs possess evidence demonstrating that they are both Hearst subscribers, Hearst still refuses to amend its Answer to correct its denials at Paragraphs 7 and 8.  Not only are Hearst's denials completely untrue, but Hearst knows they are completely untrue, and is refusing to correct them for the improper purpose of delaying the commencement of class discovery.

Entry of a default judgment as to liability against Hearst is the most appropriate sanction under the circumstances.   Such a sanction is consistent with the Advisory Committee Notes to Rule 11, which provide that the Court, when asked to enter a sanction of this magnitude, should consider "whether [the sanctionable conduct] infected the entire pleading, or only one particular

count or defense." Rule 11(c) Advisory Comm. Notes (1993).  In this case, Hearst's baseless

denials at Paragraphs 7 and 8 of the Complaint "infect[] the entire pleading" because, if true,

they would completely bar relief to Plaintiffs under the VRPA.  Thus, Hearst's failure to admit

these allegations, despite having evidence of Plaintiffs' subscriptions in its own records, warrants

imposing on Hearst liability under the VRPA.  That would be an appropriate and narrowly tailed

sanction against Hearst.  *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir.

1995) (district court has discretion to enter default judgment as sanction where party has engaged

in "deliberate obstructionism," and collecting cases); *Int'l Painters & Allied Trades Indus.*

*Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) ("Just as a

court can dismiss a case when faced with dilatory tactics by the plaintiff, a district court has the

discretion to enter default judgment when a defendant fails to defend its case appropriately.");

*Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (default judgment appropriate where party

against whom judgment is sought engaged in willful violations of court rules, contumacious

conduct, or intentional delays); *see also, e.g., Sun World*, 144 F.R.D. at 390 (where defendant

made knowingly false statements in Answer, among engaging in other fraudulent conduct, the

"appropriate sanction is the striking of [defendant's] answer, the dismissal of his counterclaim

and the entry of default judgment against him on [plaintiff's] complaint.").  As an alternative

sanction, should the Court decline to impose entry of judgment as to liability against Hearst,

Plaintiffs request entry of an order deeming Hearst to have admitted the allegations of

Paragraphs 7 and 8 of the Complaint, which is also closely tailored to Hearst's conduct.  *See,*

*e.g., Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1301 (S.D. Fla. 2007) (where

court found "default judgment on liability … too severe of a sanction" for an "attempted fraud"

in an answer, court instead "instruct[ed] the jury that certain facts are deemed established");

*Johnson v. Sec'y, Dep't of Health & Human Servs.*, 587 F. Supp. 1117, 1121 (D.D.C. 1984).[4]

**2.    The Court Should Direct Hearst to Reimburse Plaintiffs' Counsel Double Their Reasonable Attorneys' Fees and Costs Incurred Preparing this Motion**

In addition to non-monetary relief, the Court should also impose monetary sanctions against Hearst, both to compensate Plaintiffs for the reasonable costs and fees incurred subsequent to Hearst's filing of (and refusal to amend) its baseless Answer, as well as to adequately deter Hearst from engaging in such conduct again.  Given Hearst's size and sophistication, an award of double the reasonable attorneys' fees and costs incurred by Plaintiffs' counsel in preparing this Motion is an appropriate monetary sanction.  *See, e.g, Caisse Nationale*, 28 F.3d at 266 (awarding double attorneys' fees incurred by movant after the date on which the offending party filed an Answer containing baseless assertions of fact and law in violation of Rule 11); *see also, e.g., Katzman,* 167 F.R.D. at 661; *Gray v. Millea,* 892 F. Supp. 432, 438 (N.D.N.Y. 1995).[5]

---

[4]      Even if the Court declines to deem admitted the allegations of Paragraphs 7 and 8 of the Complaint as a sanction, Hearst should not be permitted to use its denial of these allegations to delay the proceedings for unnecessary individual discovery.  It is well settled that "[a] denial in an answer is not sufficient to raise a genuine issue of fact."   *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *see also, e.g., Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995).  Hearst's own records and admissions in this litigation clearly demonstrate that Plaintiffs subscribed to the relevant publications during the relevant period of time.  Thus, even if Hearst's false denials remain, it would be a total waste of time for discovery to commence solely on an individual basis.

[5]      Should the Court grant Plaintiffs' request for monetary sanctions, Plaintiffs respectfully request leave to submit true and correct copies of their counsel's billing entries associated with investigating Hearst's Answer and bringing this Motion.

25

Hearst's misconduct extended to its in-house counsel.  As discussed above, Hearst's counsel made numerous false and misleading statements about Plaintiffs' subscriptions in the motion to dismiss briefing, in the motion for preliminary injunction briefing, and in e-mails and letters responding to inquiries from Plaintiffs' counsel over the past month regarding Hearst's Answer.  Hearst's counsel knowingly made these false statements of fact in an attempt to mislead the Court into delaying consideration of class issues, with the expectation that they will stand a better chance of having class certification denied if Plaintiffs are deprived a meaningful opportunity to take class discovery.  There is no excuse for such conduct, which strikes at the heart of the integrity of the judicial process.

Plaintiffs therefore request that the Court find Hearst and its in-house counsel engaged in a coordinated effort to improperly delay these proceedings, and hold Hearst and its counsel jointly and severally liable for any monetary sanctions imposed.  *See Estate of Calloway v. Marvel Entertainment Group,* 9 F.3d 237, 239-40 (2d Cir. 1993) (where sanctionable conduct is a "coordinated effort," joint and several liability for attorney and client may be appropriate); *see also, e.g., Polar Int'l Brokerage v. Reeve,* 196 F.R.D. 13 (S.D.N.Y. 2000) (holding that Rule 11 sanctions were warranted based on conflicting assertions made by lead counsel in a securities class action).

## CONCLUSION

For the foregoing reasons, the Court should impose the following sanctions on Hearst pursuant to Federal Rule of Civil Procedure 11: (1) enter a default judgment as to liability against Hearst, or alternatively deem Hearst to have admitted all allegations of Paragraphs 7 and 8 of the Complaint; and (2) order Hearst and its counsel to pay Plaintiffs double the fees and costs reasonably incurred by their counsel in investigating Hearst's Answer and preparing this Motion.

Dated: August 8, 2016

Respectfully submitted,

By:    */s/ Joseph I. Marchese*
      Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
      jmarchese@bursor.com
      pfraietta@bursor.com

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
Frank S. Hedin*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475
E-Mail: jcarey@careyrodriguez.com
dmilian@careyrodriguez.com
fhedin@careyrodriguez.com
*Pro Hac Vice Application Forthcoming

*Attorneys for Plaintiffs*

27