**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPHINE JAMES EDWARDS, individually
and on behalf of all others similarly situated,

|                              Plaintiff,

    v.

HEARST COMMUNICATIONS, INC.,

|                              Defendant.

Civil Action No. 15-cv-09279-AT-JLC

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S SEPTEMBER 7, 2017 MEMORANDUM AND ORDER

Dated:  September 21, 2017

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
Frank S. Hedin*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email: jcarey@careyrodriguez.com
     dmilian@careyrodriguez.com
     fhedin@careyrodriguez.com
*Admitted Pro Hac Vice

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD........................................................................................... 2

I.  SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED
    AGAINST PLAINTIFF ON DISCLOSURES TO COMPANY 1 AND
    COMPANY 2 BECAUSE AN ERRONEOUS STATUTE OF
    LIMITATIONS RULING DURING PHASE 1 DISCOVERY
    PRECLUDED PLAINTIFF FROM PRESENTING DIRECT EVIDENCE
    OF THOSE DISCLOSURES................................................................ 3

II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING
    THE DISCLOSURES TO COMPANY 1 SHOULD HAVE BEEN
    GRANTED BECAUSE HEARST DOES NOT DISPUTE THAT IT
    TRANSMITTED PLAINTIFF'S PRI TO COMPANY 1 IN 2014, AND
    EXHIBIT 27 CONFIRMS THAT TRANSMISSION ....................................... 7

    A.  Even Without Exhibit 27, Plaintiff's Motion For Summary
        Judgment Should Have Been Granted Because Hearst "Does Not
        Dispute" That It Transmitted Plaintiff's PRI To Company 1 In
        2014......................................................................................................... 8

    B.  Exhibit 27 Demonstrates That Plaintiff's PRI Was Disclosed To
        Company 1 In 2014.............................................................................. 12

    C.  Exhibit 27 Is Not Hearsay.................................................................... 15

    D.  Even If Exhibit 27 Was Hearsay, It Is Properly Considered On
        Summary Judgment ............................................................................. 15

    E.  Even If Exhibit 27 Was Hearsay, It Is Admissible Under Rule
        807's Residual Exception .................................................................... 16

III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING
     THE DISCLOSURES TO DUNN DATA SHOULD HAVE BEEN
     GRANTED ...................................................................................................... 17

IV. THE ORDER SHOULD BE AMENDED OR SUPPLEMENTED TO
    ADDRESS PLAINTIFF'S ENTITLEMENT TO $5,000 STATUTORY
    DAMAGES ON HER INDIVIDUAL CLAIM UNDER THE MICHIGAN
    VRPA............................................................................................................... 18

CONCLUSION...................................................................................................... 20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Auz v. Century Carpet, Inc.*,
　2014 WL 199511 n.1 (S.D.N.Y. Jan. 17, 2014) ........................................................................ 15

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
　528 F. Supp. 2d 206 (S.D.N.Y. 2007) ...................................................................................... 15

*Hart v. Rick's Cabaret Int'l, Inc.*,
　60 F. Supp. 3d 447 (S.D.N.Y. 2014) .......................................................................................... 4

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
　2014 WL 4680849 (S.D.N.Y. Sept. 17, 2014) .......................................................................... 2

*Santos v. Murdock*,
　243 F.3d 681 (2d Cir. 2001) ..................................................................................................... 15

*Shrader v. CSX Transp., Inc.*,
　70 F.3d 255 (2d Cir. 1995) ......................................................................................................... 2

*United States v. Jackson*,
　335 F.3d 170 (2d Cir. 2003) ..................................................................................................... 16

*United States v. Morgan*,
　385 F.3d 196 (2d Cir. 2004) ..................................................................................................... 16

**STATUTES**

M.C.L. § 445.1712 ............................................................................................................... 18, 19

M.C.L. § 445.1715 ................................................................................................... 2, 18, 19, 20

**RULES**

Fed. R. Civ. P. 56(d) ............................................................................................................... 3, 7

Fed. R. Evid. 801(c)(2) ............................................................................................................ 15

Fed. R. Evid. 807 ................................................................................................................. 16, 17

## INTRODUCTION

Plaintiff appreciates the careful and thorough analysis in the Court's September 7, 2017 Memorandum And Order, Doc. 196 (hereafter, the "Order").  In particular, Plaintiff took note of the Court's frustration at the lack of a clearer record of Hearst's disclosures of PRI to ███████ (hereafter "Company 1") and ███████████ ("Company 2").  Order at 48 ("The Court is frustrated by the parties' failure to provide a clearer record on summary judgment.").  Plaintiff also took note of the Order's invitation for Plaintiff to move for reconsideration on certain points. *Id.* at 49 ("[I]f Plaintiff believes that evidence of an actionable disclosure to Company 1 is contained in the record and the Court has overlooked it, Plaintiff is invited to file a motion for reconsideration on that ground.").

Plaintiff thus moves for reconsideration on four discrete points.  <u>First</u>, due to an erroneous statute of limitations ruling by Judge Cott, Phase 1 discovery was limited to transmissions of the Plaintiff's PRI that occurred on or after June 25, 2011.  But the Order determined that the limitations period was tolled back to December 20, 2009.   So the limitation period that Judge Cott applied to Phase 1 discovery denied the Plaintiff discovery she specifically sought regarding transmissions of her PRI that occurred from December 20, 2009 to June 25, 2011.  That was improper, and it prevented Plaintiff from presenting direct evidence of the transmissions of her PRI to Company 1 and Company 2 that occurred from December 20, 2009 to June 25, 2011.  *See* Part I, below.

<u>Second</u>, with respect to Company 1, Plaintiff presented evidence confirming the transmission of her PRI to Company 1 in 2010 and 2014 – well within the limitation period. Thus Plaintiff's motion for summary judgment on transmissions to Company 1 should have been granted.  *See* Part II, below.

Third, with respect to Dunn Data, the Order found that Plaintiff established only that her PRI was "eligible" to be included in scheduled transmissions during the relevant time period, but had not presented direct evidence confirming those transmissions had actually been made. Order at 51. Thus the Court found a triable issue of fact as to whether the disclosures occurred, and denied both sides motions for summary judgment. Plaintiff respectfully requests reconsideration because based on the evidence presented, no reasonable jury could find that the transmissions to Dunn Data were not made. Summary judgment should be granted for the Plaintiff on this point. *See* Part III, below.

Fourth, and finally, Plaintiff's moving brief requested that the Court determine Plaintiff's entitlement to the $5,000.00 minimum statutory damage award provided by M.C.L. § 445.1715(a). Since the Court granted Plaintiff's motion for summary judgment by finding Hearst liable on Count 1, for violating the VRPA, *see* Order at 45 ("Defendant has violated the VRPA."), Plaintiff's entitlement to the $5,000.00 minimum statutory award is automatically established by operation of the statute. But the Order does not address Plaintiff's request for statutory damages. Plaintiff respectfully requests that this oversight be corrected by amending or supplementing the Order to confirm her entitlement to the $5,000.00 minimum statutory damages. *See* Part IV, below.

## LEGAL STANDARD

Motions for reconsideration are governed by Local Civil Rule 6.3. *See* S.D.N.Y. Local Civ. R. 6.3. Reconsideration should be granted where a court has overlooked controlling decisions or facts, "to correct a clear error or prevent manifest injustice." *Id.*; *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2014 WL 4680849, at *1 (S.D.N.Y. Sept. 17, 2014) (granting plaintiffs' motion for reconsideration).

I.    **SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED AGAINST PLAINTIFF ON DISCLOSURES TO COMPANY 1 AND COMPANY 2 BECAUSE AN ERRONEOUS STATUTE OF LIMITATIONS RULING DURING PHASE 1 DISCOVERY PRECLUDED PLAINTIFF FROM PRESENTING DIRECT EVIDENCE OF THOSE DISCLOSURES**

The Order correctly held that "any disclosure by Defendant that occurred after December 20, 2009 are actionable," based on tolling.  Order at 23.  However, the Order also granted summary judgment for Defendant on disclosures to Company 1 and Company 2 because the evidence did not demonstrate a disclosure within that time period.  *See* Order at 48-49, 50.  Plaintiff respectfully requests that the Court should reconsider those findings because of erroneous limitations placed on Phase 1 discovery.

First, Judge Cott limited Phase 1 discovery to "production of documents dating back to June 25, 2011."  *Edwards*, ECF No. 77, at 2.  Thus, during Phase 1 Plaintiff was denied discovery she specifically sought regarding transmissions of her PRI that occurred from December 20, 2009 to June 25, 2011.  The evidence in the record reflects that Hearst was a member of both the Company 1 and Company 2 data cooperatives during at least a portion of that time period.  *See* Ex. 26 (Company 1 Contract), Def. Suppl. SOF ¶ 37 (providing testimony that by 2011 Hearst was "no longer participating in the [Company 1] co-op"); Ex. 30 (Company 2 Contract), Pl. 56.1 ¶ 122 ("Hearst was not participating in the [Company 2] co-op in 2011 through November 2012.").  And with respect to Company 2, the evidence in the record shows that Hearst was transmitting subscriber information for *Good Housekeeping* and *Redbook* magazines – two magazines to which Plaintiff subscribed – to Company 2 pursuant to its 2007 contract.  *See* Ex. 30.  This evidence strongly suggests that Hearst transmitted Plaintiff's PRI to Company 2 during the time period December 20, 2009 to June 25, 2011.  But because Judge Cott denied any discovery relating to this relevant time period, Plaintiff was precluded from "present[ing] facts essential to justify [her] opposition."  *See* Fed. R. Civ. P. 56(d).

Second, Hearst's Rule 30(b)(6) designee testified that Hearst does not preserve records of its transmissions of subscriber data to third parties:

> Q:      What do they do?  Why don't you have those records [of the transmissions] anymore?
>
> A:      There is no business value for us to retain that data.
>
> Q:      So you don't retain them?
>
> A:      We do not, upon transmission, retain records of our transmissions.

Ex. 2 (Murphy Dep. at 320:16-321:2).  Thus, granting summary judgment for Hearst on the disclosures to Company 1 and Company 2 unjustly rewards Hearst for shoddy recordkeeping. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Third, during Phase 1 discovery Hearst failed to conduct a reasonable search for ESI that would have found evidence of these transmissions.  We know this because ▮▮▮▮ produced a document, Exhibit 18C, which is a confirmation of a transmission to ▮▮▮▮ that was copied by email to Charlie Swift, an individual identified in Hearst's interrogatory responses as a person with knowledge of Hearst's transmissions of PRI.  *See* Exhibit 23, at 9 (Hearst's response to Interrogatory No. 1).

**From:** Damron Megan - mdamro [mailto:Megan.Damron@acxiom.com]
**Sent:** Wednesday, March 04, 2015 8:19 PM
██████████████
**Cc:** Charlie_Swift - Charlie Swift (Hearst) <CSwift@hearst.com>; Mize Rosetta - rcambi <Rosetta.Mize@acxiom.com>;
Vanthournout James - jvanth <James.Vanthournout@acxiom.com>; Andrew_Kirshenbaum - Andrew Kirshenbaum
(Hearst) <akirshenbaum@hearst.com>
**Subject:** January 2015 Dataline Extract

████
The January 2015 ████ Extract has been uploaded to your ftp site.

File Name: - ████ _DEMO_306231.dat.gz

Record Count: -  128,953,838

Please let me know if you have any questions.

████████████

Thanks

Megan

Despite its obvious relevance and importance to this case, Hearst did not produce this document.

So we asked Hearst's Rule 30(b)(6) witness how that happened:

> Q:  Did you even make any effort, did anyone at the Hearst Company make any effort to check Mr. Swift's e-mail for these transmission confirmations?
>
> MS. FINDIKYAN:  Objection.  This is outside the scope of Phase I and what the Court ordered us to do as part of Phase I and our obligation, which we entirely met and I'm going to direct you not to answer the question.
>
> MR. BURSOR:  What is the basis for that direction?
>
> MS. FINDIKYAN:  The Order of Judge Cott.
>
> …

Q:      Did you make any effort to search Mr. Swift's e-mails – for transmissions of Ms. James Edwards' Personal Reading Information?

A:      I won't answer the question on advice of counsel.

…

MS. FINDIKYAN:      You can answer that question.

A:      Yes, we did.

Q:      How did you do that and fail to find this [Exhibit 18C]?

A:      The search of the e-mail was relative to certain parameters, relative to the Plaintiff's name.

Q:      So you designed the search to fail?

A:      As I understood, those were the directions of the Court Order.

Ex. 2 (Murphy Dep. at 325:2-327:9).

When Hearst searched Mr. Swift's email, it searched only for documents that contained the Plaintiff's name – on the theory that Phase 1 discovery was limited to the individual claims of the named Plaintiff.  So if the words "Josephine James Edwards" did not appear in any of Mr. Swift's emails (which, of course, they didn't), the search would come up empty (which, of course, it did).  This happened because Judge Cott refused to impose any ESI protocol on Phase 1 discovery.  *See* 10/11/16 Hearing Tr. at 47-50; *Boelter* ECF No. 126 ("THE COURT: The issue on the floor is, does the protocol apply to phase-one discovery, correct?  …  THE COURT:  Okay.  Application denied.").  Hearst then took advantage of the lack of an ESI protocol by running narrow searches obviously designed to fail.

That was improper.  Charlie Swift, and possibly others at Hearst, received email confirmations of file transfers that included the Plaintiff's PRI.  Exhibit 18C is one of those.  But

Hearst never searched for and never produced any of these documents because, though they quite obviously relate to the transmissions of Plaintiff's PRI, the Plaintiff's name does not appear in the confirmation emails.  So we share the Court's frustration at the lack of a clearer record of Hearst's disclosures of PRI to Company 1 and Company 2.  Order at 48 ("The Court is frustrated by the parties' failure to provide a clearer record on summary judgment.").  But the gaps in the record were caused by Hearst's failure to preserve key evidence – the transmissions themselves – and by Hearst's misuse of the discovery phasing order to frustrate the search for the most important documents in the case, such as emails confirming file transmissions.  We expect more of the evidence that Hearst improperly withheld will be revealed during Phase 2 discovery.  But for now, the limitations imposed on Phase 1, as applied by Hearst, unfairly prevented Plaintiff from presenting clearer evidence confirming Hearst's transmissions of her PRI to Company 1 and Company 2.  *See* Fed. R. Civ. P. 56(d) (permitting the court to defer or deny a motion for summary judgment where the nonmovant shows that "for specified reasons, it cannot present facts essential to justify its opposition").

II.     **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE DISCLOSURES TO COMPANY 1 SHOULD HAVE BEEN GRANTED BECAUSE HEARST DOES NOT DISPUTE THAT IT TRANSMITTED PLAINTIFF'S PRI TO COMPANY 1 IN 2014, AND EXHIBIT 27 CONFIRMS THAT TRANSMISSION**

As the Order states at page 46, "Defendant does not dispute that it transmitted certain subscriber data – including name, address, and a three-character code identifying magazine title – to Company 1 in 2014."  That should be the beginning and end of the analysis establishing Plaintiff's claim based on the transmission of her PRI to Company 1.  To the extent more is required, Defendant also "does not dispute … that Plaintiff's status as an expired subscriber to *Good Housekeeping* was eligible to be included" in those transmissions, *see id.*, and Defendant's contract with Company 1 required the transmission of "complete previous-month customer

7

history transaction information on a monthly basis," *id.*  Hearst did not provide any evidence that would call into question the fact that these contracted-for, scheduled, automated transmissions did in fact occur.

Nevertheless, the Court denied Plaintiff's motion and granted summary judgment for Defendant.  This was error in at least three respects.  First, even without Exhibit 27, Defendant's admission that it transmitted Plaintiff's PRI to Company 1 in 2014, together with the testimony of the Hearst and Acxiom Rule 30(b)(6) designees confirming that these transmissions were made on a scripted scheduled program is sufficient to support summary judgment for the Plaintiff with respect to the transmissions to Company 1.  *See* Part II.A, below.

Second, the Court misread Exhibit 27 as evidence that the transmissions of Plaintiff's PRI occurred only "as early as March or April 2009," Order at 48, despite the Defendant's admission that such transmissions also occurred in 2014, which admission is confirmed by Exhibit 27 itself. *See* Part II.B, below.

Third, the Court held that Exhibit 27 was inadmissible hearsay.  *See* Order at 47.  That was error because Exhibit 27 is not offered for the truth of its contents and thus it is not hearsay. *See* Part II.C, below.  Even if Exhibit 27 was hearsay, it should properly be considered on a summary judgment motion because Plaintiff could present it in admissible form at trial by calling a witness to lay the foundation for the business records exception, *see* Part II.D, below, and because it already qualifies under Rule 807's exception for hearsay that is particularly trustworthy, *see* Part II.E, below.

### A.   Even Without Exhibit 27, Plaintiff's Motion For Summary Judgment Should Have Been Granted Because Hearst "Does Not Dispute" That It Transmitted Plaintiff's PRI To Company 1 In 2014

Hearst "does not dispute that it transmitted certain subscriber data – including name, address, and a three-character code identifying the magazine title – to Company 1 in 2014."

8

Order at 46, *citing* Pl. 56.1 ¶¶ 106-09.  Thus, even without Exhibit 27, Hearst's admission that

Plaintiff's PRI was "eligible for transmission" to Company 1 in 2014 should have compelled the

Court to grant Plaintiff's motion for summary judgment with respect to the disclosures to

Company 1 – particularly since Hearst also admitted that it failed to preserve evidence of those

transmissions.  Hearst's Rule 30(b)(6) designee, James Murphy testified:

> Q:      Did Hearst transmit Josephine James Edwards' Personal
>         Reading Information to [Company 1]?
>
> A:      Ms. Edwards was eligible to receive – excuse me.  Ms.
>         Edwards was eligible to be transmitted to [Company 1]
>         during the relevant period.
>
> Q:      How many times did Hearst transmit Ms. James Edwards'
>         PRI to [Company 1]?
>
> A:      I would need to reference this extract document.
>
> …
>
> Q:      Was it on the third Monday of each month?
>
> A:      To the best of our knowledge, that was the frequency in
>         which we were sending the [Company 1] output.
>
> Q:      Who sent it?
>
> A:      Acxiom.
>
> Q:      Do you know who at Acxiom sent it?
>
> A:      I believe it was an automated process.

Ex. 2 (Murphy Dep. at 346:13-348:21).

> Q:      Oh, wait a minute.  Now you're not certain that her
>         information was transmitted to [Company 1]?  Is that what
>         you're saying?
>
> A:      I said – I stated she was eligible based on the logic.  So as a
>         potential disclosure that's why we included it in our
>         interrogatory number 4.

> Q:     You admit in the interrogatory that she was disclosed to [Company 1], right?
>
> A:     I believe that interrogatory states "Ms. Edwards' Personal Reading Information met the criteria to be included in scheduled transmissions Acxiom made on behalf to [Company 1]."
>
> Q:     Was her data transmitted to [Company 1] or not?
>
> A:     She met the criteria to be included in a transmission but we don't know definitively.
>
> Q:     And the reason you don't know definitively is because you didn't preserve any records of all of those transmissions, isn't that right?
>
> A:     "Preserve" has a negative connotation.  As part of our normal business practice we do not keep a copy of our extracts to [Company 1].

Ex. 2 (Murphy Dep. at 357:3-358:16).

So, according to Mr. Murphy's testimony, Hearst does not "know definitively" if the Plaintiff's PRI, or anyone's, was disclosed to Company 1 because Hearst did not preserve any records of those transmissions.  Hearst, though, has the extract rules which provide the computerized logic identifying records "eligible" to be transmitted to Company 1, and the schedule for those transmissions.  Based on those extract rules, Hearst admits that "Ms. Edwards' Personal Reading Information met the criteria to be included in scheduled transmissions" (*id.* at 358:18-23) which were made "during the relevant time period" (*id.* at 346:22-23) on the "third Monday of each month" (*id.* at 348:11-15).

Acxiom's Rule 30(b)(6) designee, Mr. Vanthornout, explained how these transmissions to Company 1 were made:

> Q:   And there was an extract that you prepared, "you" being Acxiom, prepared on a monthly basis to send to this third party called [Company 1]?
>
> A:   Yes.
>
> Q:   And that extract included the customer's order history?
>
> A:   Not all order history.  More of a summary order history.
>
> Q:   And how was that file transmitted to [Company 1]?
>
> A:   SFPT [sic – SFTP, an acronym for "Secure File Transfer Protocol].
>
> Q:   Who does that?
>
> A:   It's a scripted, scheduled program ….

Ex. 5 (Vanthournout Dep. at 128:7-23).

Hearst does not dispute that these computerized, scheduled, automated transmissions occurred.  Hearst merely points to a lack of direct evidence of the transmissions, and questions their timing.  *See, e.g.*, Hearst SJ Oppn. at 58 ("Plaintiff has failed to establish with admissible evidence and actual transmission of her PRI to [Company 1] or Dunn Data in any relevant time period ….").  But the lack of direct evidence is explained by Hearst's failure to preserve the extracts, failure to conduct a proper ESI search for records of the transmissions, and by the limitations imposed on Phase 1 discovery, which were applied by Company 1 to withhold production of the extracts.[1]  In any event the timing is confirmed by Mr. Murphy's admissions that Plaintiff's PRI was "eligible" for transmission "during the relevant time period."  Ex. 2,

---

[1] Though Hearst failed to preserve records of these transmissions, Mr. Vanthournout testified that Acxiom has such records, and could retrieve them "probably overnight."  Ex. 5, Vanthournout Dep. at 129:20-22 ("Q: How long would it take you to get them?  A: Probably overnight.").  Plaintiff's initial Phase 2 subpoena to Acxiom requested those records, which we expect will confirm multiple transmissions of Plaintiff's PRI to Company 1 during the relevant timeframe.

Murphy Dep. at 346:22-23.  Hearst does not dispute the Plaintiff's PRI was transmitted.  Instead, Hearst merely claims that it cannot "know definitively" if her PRI was included in the transmissions because Hearst failed to preserve records of those transmissions.  *Id.* at 358:4-6 ("She met the criteria to be included in a transmission but we don't know definitively.").

Hearst offers no evidence, nor any reason to believe, that the scheduled transmissions were not in fact made.  No reasonable jury, considering this evidence, could rule in Hearst's favor.  The only conclusion that could be reached by a rational jury considering this evidence is that Plaintiff's PRI was in fact disclosed to Company 1 in one or more transmissions that were made on the third Monday of each month during the relevant timeframe.  Thus even without Exhibit 27 – which confirms that Company 1 in fact received a transmission of Plaintiff's PRI in June 2014 – summary judgment should have been granted for the plaintiff with respect to the disclosures to Company 1.

With respect to Dunn Data, the Court was "skeptical of Defendant's position that these transmissions did not occur."  Order at 51.  On this basis, the Court denied both parties' motions and found a triable issue of fact.  Order at 52 ("[A] reasonable jury could draft the inference that these transmissions occurred, despite the lack of direct evidence.").  At the very least, the same skepticism the Court expressed with respect to the scheduled transmissions to Dunn Data should have applied with respect to the scheduled transmissions to Company 1, which would result in a finding of a triable issue of fact as to whether the scheduled, automated transmissions to Company 1 were made.

## B.  Exhibit 27 Demonstrates That Plaintiff's PRI Was Disclosed To Company 1 In 2014

Exhibit 27 was produced by Company 1's counsel with a cover letter describing it as a "Printout from the June 7, 2014 version of the [Company 1] Master File."  *See* Exhibit 28 (letter

from Company 1's counsel).  There is no question that Exhibit 27 is an authentic record produced by Company 1.  *See* Order at 46 ("Defendant does not challenge the authenticity of the document ….").  According to Company 1's lawyer, Exhibit 27 "represents how data from a file supposedly provided by Defendant was compiled into our cooperative data master file." Exhibit 28.

As the Court noted, Exhibit 27 contains records of two *Good Housekeeping* subscriptions dated "2010/03/10" and "2009/03/10."  Ex. 27.  The Court noted that "[p]resumably, when Plaintiff subscribed to *Good Housekeeping* in March 2009 … Defendant transmitted that information to Company 1 in its monthly update."  Order at 48.  Plaintiff agrees.  But the Court then went on to hold that the "dates [in Exhibit 27] suggest that any transmission of Plaintiff's personal information occurred as early as March or April 2009, which would be barred by the statute of limitations."  *Id.*  Plaintiff respectfully submits that the Court's finding overlooked data included within Exhibit 27 confirming that Plaintiff's PRI was disclosed to Company 1 in March of 2010, and in June 2014 – both well within the limitations period.

First, Exhibit 27 contains a field, highlighted below, indicating that ███████████



This is consistent with the testimony of Hearst's Rule 30(b)(6) witness confirming that Plaintiff's PRI was eligible for inclusion in scheduled transmissions to Company 1 on the third Monday of each month.  Ex. 2, Murphy Dep. at 348:11-15.  This is also consistent with Hearst's admission that "it transmitted certain subscriber data … to Company 1 in 2014."  *See* Order at 46, citing Pl. 56.1 ¶¶ 106-09.

Second, Exhibit 27 contains ███████████████████████████████████
████████████████████████



The subscription expiring on "2010/03/10" did not expire until that date – well within the statute of limitations period.  Thus, Company 1's database record could not have included the ███ for that subscription prior to March 10, 2010.  Hearst transmitted information to Company 1 indicating the expiration of this subscription on or after March 10, 2010, presumably in one of the monthly updates Hearst transmitted on the third Monday of each month.  This evidences a disclosure within the limitation period – which, again, Hearst does not dispute.

**C.      Exhibit 27 Is Not Hearsay**

Exhibit 27 is <u>not</u> hearsay because it is not offered for the truth of any matter asserted within that document.  *See* Fed. R. Evid. 801(c)(2) (defining hearsay as an out of court statement "a party offers in evidence to prove the truth of the matter asserted in the statement").  Plaintiff submitted Exhibit 27 to prove that Hearst transmitted her PRI to Company 1.  Exhibit 27 includes Plaintiff's PRI, and thus confirms that Company 1 received those data, regardless of the truth of the underlying record.

**D.      Even If Exhibit 27 Was Hearsay, It Is Properly Considered On Summary Judgment**

Even if it was hearsay, Exhibit 27 should still be considered because "[h]earsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial."  *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009); *see also Santos v. Murdock*, 243 F.3d 681, 682 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves *or* must contain evidence that *will be presentable in an admissible form at trial*.") (emphasis added); *Auz v. Century Carpet, Inc.*, 2014 WL 199511, at *1 n.1 (S.D.N.Y. Jan. 17, 2014) (rejecting argument that "the police report and the statements contained therein are inadmissible hearsay and therefore cannot be considered on summary judgment").  Here, Exhibit 27 will be admissible at trial.  From its contents the document is self-evidently a business record of Company 1 – it is a printout of a database record provided by a company whose business is to compile and maintain such databases.  The testimony of Acxiom's Rule 30(b)(6) witness concerning the "scripted scheduled program" of transmissions of Hearst subscriber PRI to Company 1 may be sufficient to establish the business records exception for Exhibit 27, which includes the data Acxiom sent to Company 1.  *See* Ex. 5 (Vanthournout Dep. at 128:7-23).  If more is required, Plaintiff easily

could subpoena a Company 1 witness for a Phase 2 deposition, or could call such a witness at trial, to establish that Exhibit 27 is a record of a regularly conducted activity under Rule 803(6), or to establish that it is admissible under Rule 807's residual hearsay exception.

### E. Even If Exhibit 27 Was Hearsay, It Is Admissible Under Rule 807's Residual Exception

Exhibit 27 is already subject to the catch-all hearsay exception of Federal Rule of Evidence 807. The Second Circuit has stated that hearsay should be admitted under Rule 807 if "(i) it is *particularly* trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004). In determining whether a statement is "particularly trustworthy," courts examine whether the document has "equivalent circumstantial guarantees of trustworthiness" as the exceptions to hearsay admissible under Rules 803 and 804, such as "corroborating circumstances indicating [its] trustworthiness." *United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003). Exhibit 27 satisfies all five *Morgan* factors:

> (1) Exhibit 27 is particularly trustworthy. It was produced by Company 1 with an accompanying letter from Company 1's counsel that states it is a ███████████████████████ ███████████████████████ Ex. 28. Exhibit 27 also contains a ███████ that is identical to the Hearst account number for Plaintiff's *Good Housekeeping* subscriptions. *See* PSOF ¶ 116 ("Hearst does not dispute that ████████ ████████ appears of Plaintiff's Exhibits 3 and 29 for certain of Plaintiff's expired *Good Housekeeping* subscriptions."). And it is corroborated by the testimony of Hearst's Rule 30(b)(6) designee concerning Plaintiff's "eligibility" for scheduled transmissions of PRI to Company 1 on the third Monday of each month. Ex. 2 (Murphy Dep. at 348:11-15). It is also corroborated by the testimony of Acxiom's Rule 30(b)(6) designee concerning the "scripted scheduled program" of

transmissions of this data to Company 1.  Ex. 5 (Vanthournout Dep. at 128:7-23)

(2)     Exhibit 27 bears on a material fact.  It demonstrates that Plaintiff's PRI was disclosed to Company 1 during the relevant time period.

(3)     Since Hearst failed to maintain records of its transmissions to Company 1, *see* Part I, above, Exhibit 27 is the most probative evidence confirming that Hearst disclosed Plaintiff's PRI to Company 1 during the relevant time period.

(4)     Admitting Exhibit 27 would be consistent with the rules of evidence and advance the interests of justice.  Hearst does not dispute that it made regular scheduled disclosures of subscriber PRI to Company 1, and that the extract rule for those disclosures confirms that Plaintiff's PRI was "eligible" to be included in those transmissions.  Hearst has offered no evidence that would call into question the fact that these automated, scheduled transmissions did in fact occur.

(5)     Hearst received adequate notice that Plaintiff would rely on Exhibit 27.  Exhibit 27 was included in Plaintiff's Local Rule 56.1 Statement, which was provided to Hearst on January 13, 2017, pursuant to the Court's Order.  *See Boelter* ECF No. 130.

Exhibit 27, if it were hearsay, would thus be subject to the catch-all hearsay exception of Federal Rule of Evidence 807.

## III.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING THE DISCLOSURES TO DUNN DATA SHOULD HAVE BEEN GRANTED

Plaintiff presented evidence that Hearst contracted to disclose Plaintiff's PRI to Dunn Data on a quarterly basis, and Hearst admitted that Plaintiff's data was "eligible" to be included in three transmissions to Dunn Data between June 2011 and March 2012.  Order at 51.  The Court denied Plaintiff's motion for summary judgment due to the lack of direct evidence confirming the transmissions.  But the lack of direct evidence is explained by Hearst's failure to preserve records of those transmissions.  *See* Part I, above.  Moreover, Hearst does not dispute that these transmissions occurred – it merely points to the lack of direct evidence.  As Hearst wrote in its May 22, 2017 summary judgment opposition brief, at page 59:

> Hearst does not dispute that there is evidence that Hearst transmitted unspecified PRI to Dunn Data *at some point in time*. Nor does it dispute that Plaintiff's PRI was *eligible* for transmission from June 2011 to March 2012 ….   But Hearst does dispute that Plaintiff has met her burden of establishing a transmission of any potentially actionable information *during that period*.

Hearst has not given any explanation – let alone one supported by evidence – as to how Plaintiff's PRI for her Hearst subscriptions came to be in Dunn Data's files, if not by transmissions from Hearst on the contracted-for schedule.  Nor has Hearst cited any evidence from which a jury could find that the contracted-for, scheduled, computerized, automated transmissions did not occur.  For these reasons, the Court should have granted Plaintiff's motion for summary judgment with respect to the disclosures to Dunn Data.

## IV.    THE ORDER SHOULD BE AMENDED OR SUPPLEMENTED TO ADDRESS PLAINTIFF'S ENTITLEMENT TO $5,000 STATUTORY DAMAGES ON HER INDIVIDUAL CLAIM UNDER THE MICHIGAN VRPA

M.C.L. § 445.1715 provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act.  The customer may bring a civil action against the person and may recover both of the following:
>
> (a)    Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater.
>
> (b)    Costs and reasonable attorney fees.

Plaintiff's moving brief requested that the Court enter "partial summary judgment on Count I, for violation of M.C.L. § 445.1712, by deeming Hearst's liability to Plaintiff on her individual claim established, and by deeming Plaintiff's entitlement to $5,000 statutory damages pursuant to M.C.L. § 445.1715(a) to be established."  Pl.'s 5/1/17 Moving Brief at 36-37.  The Court granted Plaintiff's motion in terms of finding Hearst liable on Count 1 for violating the

VRPA.  *See* Order at 45 ("Defendant has violated the VRPA.  Plaintiff's motion for summary judgment as to these disclosures to Experian is GRANTED …."); *id.* at 55 ("Plaintiffs motion for summary judgment as to the disclosures to Company 3 … is GRANTED ….").  But, having found liability, the Court did not address Plaintiff's entitlement to the $5,000 minimum statutory damage award.  Plaintiff respectfully requests that this oversight be remedied by amending or supplementing the Order to provide for an award of $5,000 on her individual claim.

The $5,000 statutory damages is the <u>minimum</u> that can be awarded.  *See* M.C.L. § 445.1715(a) ("Actual damages … or $5,000.00, *whichever is greater*.") (emphasis added).  And that liability is automatic – the statute states that a person who violates the VRPA "*shall* be liable … to the customer."  M.C.L. § 445.1715 (emphasis added).  While the statute permits Plaintiff to recover actual damages if they exceed the statutory minimum, in the interest of having this matter resolved on summary judgment, Plaintiff would forego a trial on actual damages provided her entitlement to an award of the statutory minimum is established by the summary judgment ruling.  In Plaintiff's view, this is established automatically by virtue of the finding that Hearst violated the VRPA.  But Plaintiff respectfully requests that the summary judgment ruling should make this explicit.

Plaintiff requested this relief in her moving brief.  While Hearst opposed her motion for summary judgment, Hearst did not make any argument concerning Plaintiff's entitlement to the minimum statutory damage award should she prevail on her individual claim, which she has now done.  And there are no grounds to deny Plaintiff's request for the minimum statutory damage award on her individual claim.[2]

---

[2] Plaintiff's entitlement to recover costs and reasonable attorney fees under M.C.L. § 445.1712(b) also has been established by the finding of liability against Hearst.  Plaintiff does not seek to establish the amount of her costs and reasonable attorney fees as part of this motion, but reserves her right to seek costs and reasonable fees at the appropriate time.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider four discreet aspects of its September 7, 2017 Memorandum and Order and:  (i) deny Defendant's motion for summary judgment with respect to Hearst's disclosures of Plaintiff's PRI to Company 1 and Company 2, (ii) grant Plaintiff's motion for summary judgment with respect Hearst's disclosures of Plaintiff's PRI to Company 1, (iii) grant Plaintiff's motion for summary judgment with respect Hearst's disclosures of Plaintiff's PRI to Dunn Data, and (iv) amend or supplement the Order to specify that Plaintiff's entitlement to the $5,000 minimum statutory damage award on her individual claim pursuant to M.C.L. §445.1715(a) has been established.

Dated:  September 21, 2017

Respectfully submitted,

By:      /s/ Scott A. Bursor
         Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
Frank S. Hedin*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email: jcarey@careyrodriguez.com
      dmilian@careyrodriguez.com
      fhedin@careyrodriguez.com
*Admitted Pro Hac Vice

*Attorneys for Plaintiff*