USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPHINE JAMES EDWARDS,  :
:
               Plaintiff, : **OPINION & ORDER**
:
  -v-   : 15-CV-9279 (AT) (JLC)
:
:
HEARST COMMUNICATIONS, INC., :
:
               Defendant. :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

      On November 24, 2015, plaintiff Josephine James Edwards brought a class action complaint against Hearst Communications, Inc., alleging unlawful disclosure of magazine subscribers' personal data in violation of a Michigan privacy law. Class-wide discovery is ongoing. Following a conference to discuss several discovery disputes, the Court ordered briefing on the issue of when Hearst's duty to preserve evidence relevant to Edwards' action arose, and on Edwards' request for discovery related to Hearst's document retention policies and practices. For the reasons set forth below, the Court concludes that Hearst's duty to preserve arose on May 21, 2015, upon the filing of the complaint in a case that was subsequently consolidated with this action. Separately, the Court finds that Hearst has responded insufficiently to Edwards' request regarding document retention, and directs that it respond anew and in conformity with this Opinion.

1

I. **BACKGROUND**

The Court assumes familiarity with the underlying facts in this action and will not recount them in any detail here.[1] To determine when Hearst's duty to preserve evidence arose, the Court must analyze whether (as Edwards contends) Hearst should have known that it could face future litigation after the dismissal of a prior action under Michigan's Video Rental Privacy Act ("VRPA"), or, alternatively, if (as Hearst contends) its duty to preserve ceased at the time of the dismissal of the prior case and arose again only upon the filing of a subsequent complaint alleging VRPA claims. The Court also considers whether, regardless of any duty Hearst may have had, Edwards is entitled to certain documents she seeks about document retention policies and practices at Hearst before, during, and after the pendency of the prior suit.

A. **Prior VRPA Litigation**

Michigan enacted the VRPA in 1988 to protect consumers' privacy with respect to the purchase, rental, or borrowing of certain goods. *Boelter*, 2017 WL 3994934, at *1. As relevant here, the statute prohibits entities that sell written materials such as magazines from disclosing information about the purchase of those materials where that information identifies the customer. VRPA, H.B. 5331,

---

[1] For a fuller recitation of the underlying facts, see Judge Torres' recent summary judgment decision in *Boelter v. Hearst Commc'ns, Inc.*, No. 15-CV-3934 (AT) (JLC), 2017 WL 3994934 (S.D.N.Y. Sept. 7, 2017), formerly the lead case in this proceeding.

84th Leg., Reg. Sess., P.A. No. 378, § 2 (Mich. 1988).[2]  Customers whose personal information is disclosed in violation of the VRPA may bring a civil action to recover the greater of actual damages or $5,000.  *Boelter*, 2017 WL 3994934, at *2.

The first VRPA action against Hearst was filed in the Eastern District of Michigan on September 24, 2012, by David Grenke.  *Grenke v. Hearst Communications, Inc.*, 12-CV-14221, Complaint, dated Sept. 24, 2012, Dkt. No. 1; Declaration of Stephen Yuhan ("Yuhan Decl."), dated Nov. 2, 2017, Dkt. No. 221-2, at ¶ 5.[3]  That same day, Grenke moved to certify a proposed class of "Michigan residents who had their Personal Reading Information disclosed to third parties by Hearst . . . without consent."  *Grenke*, Dkt. No. 2, at 2.  In his motion papers, Grenke explained that he had moved for certification "simultaneously" with his complaint in order to prevent Hearst from "pick[ing] off" his individual claims, and that a more "fulsome memorandum . . . in support of class certification" would follow after discovery on class-wide issues.  *Id.* at 1 & n.1.[4]  The following year, the

---

[2] The Michigan legislature amended the VRPA during the pendency of this action. *Boelter*, 2017 WL 3994934, at *2.  In deciding defendant's motion to dismiss, Judge Torres concluded that the pre-amendment version of the VRPA applies to this case. *Id.*

[3] Except where noted, docket numbers refer to the filings in this case.

[4] "Prior to the United States Supreme Court's decision in *Campbell–[Ewald] Emald Co. v. Gomez* [—— U.S. ——], 136 S. Ct. 663 [193 L.Ed.2d 571] (2016), plaintiffs would often file 'placeholder' motions for class certification with their complaints, to protect against any attempt by defendants to 'pick-off' the named plaintiff's individual claims by making a Fed. R. Civ. P. 68 offer of judgment above what the individual plaintiff could recover in the lawsuit.  After discovery, [p]laintiffs would then file bona fide motions for class certification."  *Boelter*, 2017 WL 3994934, at *11 (alterations in original).

3

parties stipulated to withdrawal of the motion for class certification on the condition that Hearst would not attempt to "pick off" claims without the consent of Grenke's counsel. *Id.*, dated August 20, 2013, Dkt. No. 39, at 4. While a renewed motion for class certification was scheduled for February 2015, *id.* at Dkt. No. 52, such a motion was never made.

Instead, after it came out during discovery that Grenke had never subscribed to the Hearst magazine that formed the basis of his complaint, Hearst moved to dismiss for lack of standing in October of 2014. *Id.*, Dkt. No. 70. Four months later, the parties jointly moved for dismissal with prejudice and the vacatur of all prior orders. *Id.*, Dkt. No. 94. The district court granted the parties' motion on February 23, 2015. *Id.*, Dkt. No. 95. The dismissal was not pursuant to a settlement and Hearst did not pay Grenke anthing. Yuhan Decl. ¶ 7.

According to its counsel, Hearst was not subject to any lawsuits alleging violations of the VRPA prior to the *Grenke* litigation, and faced no additional VRPA suits during the pendency of that action. *Id.* at ¶ 5. Hearst's counsel is also unaware of any pre-suit letters or inquiries about the VRPA, either before or during *Grenke*. *Id.* After the dismissal of *Grenke* on February 23, 2015, Hearst was unaware of any complaints, pre-suit letters, or inquiries regarding alleged violations of the VRPA until May 21, 2015, when the *Boelter* lawsuit was filed in this District. *Id.* at ¶ 7; *Boelter*, No. 15-CV-3934, Dkt. No. 1.

Hearst's counsel also believes that, at the time the suit was dismissed, the law firm that had brought *Grenke* was the only law firm actively filing any lawsuits

4

under the VRPA. Yuhan Decl. ¶ 6. According to Hearst's counsel, an attorney who signed the stipulation of dismissal on Grenke's behalf stated that his law firm did not intend to bring another suit against Hearst for violations of the VRPA. Yuhan Decl. ¶ 6.

B. **The Instant Litigation**

On May 21, 2015, Suzanne Boelter filed suit in this District against Hearst under the VRPA, seeking to represent "all Michigan residents who had their Personal Reading Information disclosed to third parties by Hearst without consent." *Boelter*, Dkt. No. 1, at ¶¶ 46, 52. Edwards initiated this class action against Hearst for violations of the VRPA on November 24, 2015. Dkt. No. 1, at ¶¶ 42–57. Edwards' complaint was subsequently consolidated with Boelter's, Dkt. No. 13 (although Boelter and Hearst later stipulated to the dismissal of Boelter's claims, *Boelter,* Dkt. No. 125).

Discovery in this case is being conducted in two phases, and is currently in "Phase II." *See* Case Management Plan, dated Aug. 18, 2016, Dkt. No. 40, at 2. The first phase was limited to claims of the individually named plaintiff, *id.*, following which both parties moved for summary judgment and Hearst moved to dismiss. Dkt. Nos. 132, 140. On September 7, 2017, Judge Torres denied Hearst's motion to dismiss and granted in part and denied in part both parties' motions for summary judgment. *Boelter*, 2017 WL 3994934, at *26. The second phase of discovery, which concerns the claims of the putative class, is now in process. Dkt. No. 190.

Judge Torres directed the parties to address all Phase II discovery disputes to me. *Id.*

On October 26, 2017, the Court held a conference to address several discovery disputes, including Edwards' requests that the Court set a briefing schedule for her anticipated motion for spoliation sanctions and order Hearst to produce documents responsive to her Request for Production No. 34, regarding document retention policies and practices from late 2009 through mid-2016. *See* Letter-motion ("Oct. 19 letter"), dated Oct. 19, 2017, Dkt No. 203.

Following the conference, the Court ordered further briefing as to whether Hearst had a duty to preserve evidence after the dismissal of *Grenke* but before the filing of *Boelter*, and as to Edwards' request for documents regarding document retention. Dkt. No. 216.

On November 2, the parties simultaneously filed memoranda of law. Memorandum of Law Regarding Its Duty to Preserve Documents ("Def. Mem."), Dkt. No. 221; Memorandum of Law Concerning Hearst's Duty to Preserve ("Pl. Mem."), Dkt. No. 222. On November 9, both parties replied. Reply Memorandum of Law Regarding Its Duty to Preserve Documents ("Def. Rep."), Dkt. No. 227; Second Memorandum of Law Concerning Hearst's Duty to Preserve ("Pl. Rep."), Dkt. No. 228.

## II. DISCUSSION

### A. Hearst's Duty to Preserve

The duty to "preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *United States v. Barnes*, 411 F. App'x 365, 368 (2d Cir. 2011) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)) (summary order).[5] The duty arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 708 (S.D.N.Y. 2017) (quoting *Kronisch v. United States*, 150 F.3d 112, 126–27 (2d Cir. 1998)), *objections overruled*, No. 14-CV-2385 (LGS), 2017 WL 3172715 (S.D.N.Y. July 25, 2017).

In certain circumstances, threats of litigation or prior litigation may put a party on notice of future litigation, and thus give rise to a duty to preserve. *See, e.g., Stinson v. City of New York*, No. 10-CV-4228 (RWS), 2016 WL 54684, at *4 (S.D.N.Y. Jan. 5, 2016); *M & T Mortg. Corp. v. Miller*, No. 02-CV-5410 (NG) (MDG),

---

[5] Even though this is a diversity action, both parties cite to federal law regarding the duty issue, which the Court considers appropriate given that it is analyzing a defendant's duty to preserve in anticipation of a potential motion for spoliation sanctions, and in "diversity actions, courts routinely apply federal law to motions for spoliation sanctions." *Steinsnyder v. United States*, No. 09-CV-5407 (KAM) (RLM), 2013 WL 1206451, at *13 (E.D.N.Y. Feb. 8, 2013) (collecting cases), *adopted by*, 2013 WL 1209099 (E.D.N.Y. Mar. 25, 2013).

7

2007 WL 2403565, at *5 (E.D.N.Y. Aug. 17, 2007); *Major Tours, Inc. v. Colorel*, No. 05-CV-3091 (JBS) (JS), 2009 WL 2413631, at *3–4 (D.N.J. Aug. 4, 2009). While determining when the duty arises "calls for a fact-intensive inquiry," *Moran v. Manos*, No. 04-CV-6896 (PGG), 2009 WL 1059637, at *5 (S.D.N.Y. Apr. 15, 2009), an incontrovertible "prerequisite to the duty to preserve is that there be actual litigation or reasonably foreseeable litigation." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-CV-816 (WHP) (GWG), 2015 WL 5769943, at *7 (S.D.N.Y. Oct. 2, 2015) (quotation marks omitted).

Edwards argues that Hearst's duty to preserve did not end when *Grenke* was dismissed because the circumstances of *Grenke's* dismissal highlighted the likelihood of future litigation. She contends that, because *Grenke* was dismissed after it came to light that the plaintiff was not a subscriber to a Hearst magazine, it was foreseeable that a bona fide class member would seek to prosecute the claims against Hearst. Pl. Mem. at 5–6. Edwards asserts that, because Judge Torres found that Hearst was on notice of class members' claims during *Grenke* for the purpose of tolling, Hearst was necessarily on notice of class members' claims for the purpose of the duty to preserve. Pl. Rep. at 2; *see also Boelter*, 2017 WL 3994934, at *9–11 (finding Edwards' claims were tolled by *Grenke*). Additionally, Edwards argues that it would make "no sense" in the context of a class action for preservation obligations to end with a procedural (as opposed to substantive) dismissal, because to find otherwise would require absent class members to

intervene or file duplicative lawsuits in order to ensure the preservation of evidence. Pl. Mem. at 6–7.

Hearst counters that when *Grenke* was dismissed, it was aware of no facts that could have reasonably led it to believe that additional VRPA litigation was forthcoming. Def. Mem. at 5. In support of its argument, Hearst points to a number of considerations: that, other than *Grenke*, Hearst had faced no VRPA litigation and had received no pre-suit letters or inquiries from any other subscribers or regulators; that *Grenke* was dismissed with prejudice upon plaintiff's motion, leaving no possibility of appeal; that the VRPA had "largely been a dead-letter statute;" and that the only law firm actively litigating VRPA cases at the time of *Grenke's* dismissal had represented that it did not intend to file any additional suits against Hearst. Def. Mem. at 5–6.

For the reasons that follow, the Court finds that Hearst's duty to preserve evidence ended upon the dismissal of *Grenke* because, at that point, future litigation was not reasonably foreseeable. First, dismissal of a case with prejudice on the parties' joint motion, and without any settlement, typically provides a defendant with a sense of finality, and certainly militates against the foreseeability of future litigation. *See, e.g., Henry v. Abbott Labs.*, 12-CV-841, 2015 WL 5729344, at *9 (S.D. Ohio Sept. 30, 2015) (finding that defendant's obligation to preserve did not survive dismissal of plaintiff's case with prejudice for failure to prosecute where plaintiff was later granted relief from dismissal and defendant reinstituted litigation hold), *aff'd in part, rev'd in part on other grounds*, 651 F. App'x 494 (6th

Cir. 2016). Second, future litigation would not have been reasonably foreseeable because, based on the record before the Court, Grenke's suit was the <u>only</u> VRPA action against Hearst in the 24 years since the statute was enacted. Third, Hearst had received no threats of litigation or other information that should have led it to believe it could face further VRPA litigation. Hearst had not received so much as one pre-suit letter or inquiry from any subscribers or regulators, and the one law firm that had brought VRPA cases represented that it did not intend to pursue further claims. The *Grenke* motion to certify had been withdrawn for more than a year by the time Hearst moved to dismiss on standing grounds in October of 2014, and still, not one subscriber made an inquiry or a threat to litigate until the *Boelter* action was filed.

Furthermore, the type of violation alleged in this case reduces the foreseeability of future litigation as compared to other types of violations. The court in *Book Dog Books*, cited by Hearst, considered how the nature of an alleged violation affects the likelihood of litigation. The court distinguished between a "serious accident or injury" where the injured party is "obviously aware of the incident" and which is "frequently followed by a lawsuit," and a situation where the level of harm is lower and the injured party is likely to be completely unaware of the incident, and thus suit is less likely. 2015 WL 5769943, at *7. Relying in part on this distinction, the court rejected the argument that a defendant had a duty to preserve counterfeit books following the resolution of a prior lawsuit and before the filing of a subsequent action. *Id.* at *7–9. Similarly, injured parties may never

become aware of the disclosure of their personal information in violation of the VRPA, thereby making it less foreseeable that they would sue regarding such violations.

In sum, given that *Grenke* was dismissed with prejudice on a joint motion, the lack of other suits brought against Hearst under the VRPA, the absence of threats or other specific information indicating that suit might follow, and the nature of injury caused by the alleged action, it was reasonable for Hearst to believe that no future litigation was forthcoming. *See, e.g., Cacace v. Meyer Mktg. (MACAU Commercial Offshore) Co.*, No. 06-CV-2938 (KMK) (GAY), 2011 WL 1833338, at *2 (S.D.N.Y. May 12, 2011) (rejecting argument that duty to preserve continued after plaintiff and defendant resolved dispute about design infringement and signed licensing agreement in 2004 because it was "entirely reasonable for defendants to believe that any lingering concern regarding potential infringement was addressed by, and resolved within, the licensing agreement," and finding that duty arose only when plaintiff warned defendants of infringement in 2006); *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006) (rejecting argument that duty to preserve survived November 2001 union grievance proceeding because defendant was not on notice of potential use of evidence after proceeding, and finding that duty did not arise until plaintiff initiated suit against former employer in July 2003). The Court cannot find, on the record before it, that Hearst should have known when *Grenke* was dismissed that evidence from that case might be

relevant to future litigation. Thus, the Court concludes that Hearst had no duty to preserve evidence relevant to a VRPA claim until *Boelter* was filed on May 21, 2015.

Edwards' arguments otherwise are unavailing. She has failed to demonstrate why Hearst should have been on notice of future litigation, and, as explained below, has instead relied on distinguishable cases and resorted to an unpersuasive policy argument about the purpose of class actions.

In several of the cases Edwards cites, courts found that a duty to preserve arose prior to the filing of a lawsuit because defendants received explicit threats of litigation or had other specific information suggesting suit would follow. Edwards points to *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006), in which the court found that a duty to preserve survived dismissal of a 2001 lawsuit and continued through the commencement of a new lawsuit in 2003. In finding that future litigation was "probable," even after dismissal of an earlier lawsuit, the *Napster* court pointed to a number of "indicators" that the defendant company would be sued again. *Id.* at 1070. For example, the plaintiffs had explicitly threatened the defendant with litigation in August of 2001. *Id.* at 1069. Furthermore, defendant was a multimillion dollar investor in a bankrupt entity (Napster) that faced suit from plaintiffs who were actively seeking to recover from solvent investors. *Id.* at 1070. Also, about a year before the lawsuit a company officer stated: "[w]e know we are going to get sued." *Id.* at 1069. Similarly, in *Major Tours, Inc.*, the court found that a duty arose almost two years before the filing of a complaint where defendants had received a letter alleging specific

violations, stating that the injured parties were entitled to monetary compensation, and requesting a response in order to avoid litigation. 2009 WL 2413631, at *3.

Edwards also relies on cases in which a duty to preserve arose upon the initiation of earlier litigation that continued <u>up until and after</u> the filing of the complaints in the actions she cited. These include *Stinson*, 2016 WL 54684, at *4, in which the court found that defendants' duty to preserve had arisen two years before 2010 where defendants faced a 2008 lawsuit with significantly similar allegations. The earlier lawsuit that triggered the duty to preserve was ongoing when the 2010 *Stinson* complaint was filed. *Id.* at *4. Notably, the court rejected plaintiffs' argument that the duty arose with the filing of an earlier grievance, because the grievance culminated in an arbitration and "[w]hen the arbitration process ended, any duty of preservation would have ended with it." *Id.* at *4 n.3. Similarly, Edwards cites to *M & T Mortg. Corp.*, in which the court found that a duty to preserve arose in 1999, when a complaint with "strikingly similar allegations" to the 2002 *M & T* complaint was filed. 2007 WL 2403565, at *5. However, the earlier action – a government enforcement action – was still ongoing when the *M & T* complaint was filed. *Id.*, at *2.

Edwards also cites dicta in a prior decision of this Court, *Pippins v. KPMG LLP*, No. 11-CV-0377 (CM) (JLC), 2011 WL 4701849, at *7 (S.D.N.Y. Oct. 7, 2011), *objections overruled*, 279 F.R.D. 245 (S.D.N.Y. 2012). In *Pippins*, this Court noted that even if, *arguendo*, the district judge denied a pending motion to certify, defendant would still be on notice that evidence might be relevant to potential

future litigation and thus still have a duty to preserve. *Id.* at *7. However, as discussed at the October 26 conference, Transcript ("Tr."), filed November 15, 2017, Dkt. No. 230, at 52, the circumstances in *Pippins* are far afield from those analyzed here. The *Pippins* case was being actively litigated at the time: the complaint was filed in January of 2011, the motion to certify was filed in April of 2011, and this Court's opinion was issued in October of 2011. *Pippins*, Dkt. Nos. 1, 33, 106. The case concerned classification of employees under federal and state labor laws, which is to say, issues that are nearly constantly litigated. Furthermore, the case involved nationwide and New York classes, *Pippins*, 2011 WL 4701849, at *3, and this Court was considering the implications of a denial of class certification (not of dismissal with prejudice). Thus, based on the circumstances in *Pippins*, this Court concluded that a number of potential actions could have resulted if a motion to certify was denied. Those circumstances are what made it foreseeable that the defendant in *Pippins*, unlike Hearst, could face future litigation.

Edwards' citation to Judge Torres' summary judgment decision in this case is also misplaced. Edwards argues that "in holding that *Grenke* tolled the statute of limitations . . . Judge Torres necessarily held that the filing of *Grenke* put Hearst on notice of the claims in this action, and of the need to preserve evidence concerning those claims." Pl. Rep. at 2. Even if the Court were to credit tolling as a factor in considering the duty to preserve, Judge Torres found that Edwards' claim was tolled by *Grenke* only <u>until</u> it was dismissed on February 23, 2015. *Boelter*, 2017 WL 3994934, at *11.

14

Finally, Edwards contends that an adverse ruling will "require absent class members to intervene or to file duplicative lawsuits" and will "fundamentally undermine the class action mechanism . . . ." Pl. Mem. at 7. However, this argument is not persuasive. To be clear, the Court is not today finding that a duty to preserve could never survive the dismissal of a case, particularly if it is known that members of a putative class wait in the wings ready to bring suit following the dismissal. The Court simply concludes that in this case, once *Grenke* was dismissed, Hearst was not on notice of future litigation to an extent sufficient to create a duty to preserve. The Court's decision thus does not have the broad ramifications that Edwards suggests it does.

### B. Edwards' Request for Production of Hearst's Document Retention Policies and Procedures

Edwards requests that the Court strike or overrule Hearst's objections to her Request for Production No. 34 ("Request 34"), which seeks "[a]ll documents concerning [Hearst's] policies, procedures or practice for retention or destruction of documents or ESI at any time from December 20, 2009 through July 31, 2016," and direct Hearst to produce all responsive documents. Pl. Mem. at 9. She argues the documents sought are discoverable regardless of whether Hearst had a duty to preserve evidence after the dismissal of *Grenke* because the documents are relevant to her claims and proportional to the needs of the case. Pl. Mem. at 7–8 (citing Fed. R. Civ. P. 26(b)(1)). Edwards contends that the material sought would explain the absence of evidence in the record regarding the transmissions of subscriber data she alleges took place. Pl. Mem. at 8.

Hearst, which failed to brief the issue in depth, contends that because it "had no legal duty to preserve documents after *Grenke* concluded, then *a fortiori* Hearst's litigation hold notice and related communications in *Grenke* cannot possibly be relevant . . . ." Def. Mem. at 9. In its objections to Edwards' Request 34, Hearst did raise additional grounds for opposing production, but its objections are essentially boilerplate in nature. Oct. 19 letter, Ex. 2, at 8–9 ("Hearst further objects to this Request to the extent that it purports to seek information or documents not relevant to any part of a claim or defense on Phase 2 issues and not proportionate to Plaintiff's legitimate Phase 2 discovery needs"). In addition to its relevancy objection, Hearst objected to the time period of the request on the basis that the complaint in *Boelter* was not filed until May 2015. *Id.* at 8.[6] Hearst also objected to the broad language of the request, claimed it to be "unduly burdensome," and contended that the request seeks privileged information. *Id.* at 9.

As a threshold matter, Hearst's response to Edwards' Request 34 is unsatisfactory. Its objections do not provide any basis for its assertion that the request is overly burdensome, and run afoul of Rule 34, which requires that a party "state with specificity the grounds for objecting to the request," and also "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(B)–(C); *see also, e.g.*, *Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (A response "stating that the

---

[6] Hearst did agree to conduct a reasonable search for non-privileged documents about policies in place since *Boelter* was filed. *Id.*, at 8.

16

requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing."). Hearst also has not complied with Rule 26, which requires a party withholding information as privileged or subject to work-product protection to "describe the nature of the documents," and Rule 26.2 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York regarding the assertion of claim of privilege. Fed. R. Civ. P. 26(b)(5); Local R. 26.2.

Furthermore, the Court rejects Hearst's argument that, as a result of it having no pre-*Boelter* duty to preserve, the material sought is *a fortiori* not relevant. Hearst's memoranda erroneously construe Request 34 as if it were only a request for litigation hold notices and related documents, and also improperly assume that the destruction of documents or ESI from 2009 to 2015 would be relevant to this action only if Hearst continued to have a legal duty to preserve evidence after *Grenke's* dismissal. Def. Mem. at 9. However, Request 34 contemplates more than merely litigation hold notices, and the Court finds that the material it seeks is relevant to Edwards' claims.[7] The Court's relevancy finding is entirely unrelated to any duty to preserve evidence that might have existed during the pendency of a prior action (*Grenke*). Rather, the Court finds that the material sought is relevant to Edwards' claims <u>in this action</u>.[8] In a case about Hearst's

---

[7] One example of the type of document that is responsive to Request 34 and not litigation hold-related is Hearst's document retention policy, which has been in place since 2004, and which Hearst reports it has already produced. Letter re: Plaintiff's Oct. 19 Letter Motion, dated Oct. 23, 2017, Dkt. No. 208, at 6.

[8] The relevancy of Hearst's treatment of documents and ESI is underscored by Judge Torres' summary judgment decision, in which she expressed "frustrat[ion]

alleged transmissions of subscriber data, how Hearst dealt with documents and ESI is plainly relevant. Edwards may, therefore, seek discovery about Hearst's document retention and destruction, if any, dating back to December 20, 2009.[9]

Thus, the Court directs Hearst to respond anew to Request 34 in a comprehensive manner and in conformity with the Court's ruling today as well as with applicable law, including Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.2. If privilege is to be invoked, then Hearst must prepare and serve a privilege log. Hearst's revised response to Request 34 must be served no later than January 5, 2018.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that, once *Grenke* was dismissed, Hearst did not have a duty to preserve evidence relevant to Edwards' claim until the filing of the *Boelter* complaint. Separately, the Court directs Hearst to respond anew to Request 34 by January 5, 2018.

**SO ORDERED.**

Dated: New York, New York
December 18, 2017

_____
JAMES L. COTT
United States Magistrate Judge

---

[at] the parties' failure to provide a clearer record." *Boelter*, 2017 WL 3994934, at *23.

[9] This time frame is justified because Judge Torres found that "[t]aking into account the three-year statute of limitations, any disclosures by Defendant that occurred after December 20, 2009 are actionable." *Boelter*, 2017 WL 3994934, at *11.