**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JOSEPHINE JAMES EDWARDS, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

HEARST COMMUNICATIONS, INC.,

Defendant.

No. 1:15-cv-09279-AT-JLC
(consolidated with 15 Civ. 3934
(AT)(JLC))

**DEFENDANT HEARST COMMUNICATIONS, INC.'S
MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S
OBJECTIONS TO THE DECEMBER 18, 2017 OPINION & ORDER**

Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
Email: jdonnellan@hearst.com

*Attorneys for Defendant Hearst
Communications, Inc.*

Of Counsel:

Andrea R. Butler
Kristen L. Hauser
Evan J. Saucier

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

LEGAL STANDARD.........................................................................................................4

ARGUMENT ...................................................................................................................4

    I.      Magistrate Judge Cott's Ruling on the Duty to Preserve After Grenke
           Was Not an Advisory Opinion.................................................................................4

    II.     Magistrate Judge Cott Correctly Dismissed Plaintiff's Public Policy
           Arguments Seeking to Create a New One-Size-Fits-All Duty to
           Preserve in Class Actions and Instead Applied Well-Established
           Law Regarding the Duty to Preserve in All Cases .................................................10

    III.    Magistrate Judge Cott's Ruling Fits Squarely Within Applicable Case Law
           Finding the Duty to Preserve Terminates When Litigation Is Fully and Finally
           Resolved and There Is No Indication Future Litigation Is Forthcoming...............13

    CONCLUSION......................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters &
Joiners of Am. v. McAdory*,
325 U.S. 450 (1945)................................................................................................4

*Alan Guttmacher Inst. v. McPherson*,
616 F. Supp. 195 (S.D.N.Y. 1985)........................................................................5

*Boelter v. Hearst Commc'ns, Inc.*,
No. 15-CV-3934 (AT) (JLC), 2017 WL 3994934 (S.D.N.Y. Sept. 7, 2017) .....................7, 12

*Broadview Chem. Corp. v. Loctite Corp.*,
417 F.2d 998 (2d Cir. 1969)..................................................................................4

*Cacace v. Meyer Mktg. (MACAU Commercial Offshore) Co.*,
No. 06 CIV. 2938 (KMK) (GAY), 2011 WL 1833338 (S.D.N.Y. May 12,
2011) .....................................................................................................................14

*Casale v. Kelly*,
710 F. Supp. 2d 347 (S.D.N.Y. 2010)..................................................................18

*Fujitsu Ltd. v. Fed. Express Corp.*,
247 F.3d 423 (2d Cir. 2001)................................................................................12

*Henry v. Abbott Labs.*,
No. 2:12- CV-841, 2015 WL 5729344 (S.D. Ohio Sept. 30, 2015) ......................14

*Joostberns v. United Parcel Servs., Inc.*,
166 F. App'x 783 (6th Cir. 2006) ........................................................................14

*Lan v. Time Warner, Inc.*,
No. 11 CIV 2870 (AT) (JCF), 2016 WL 928731 (S.D.N.Y. Feb. 9, 2016)..............................4

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
No. 09 Civ. 08083, 2011 WL 2946380 (S.D.N.Y. July 14, 2011) ........................4

*M & T Mortg. Corp. v. Miller*,
No. CV 2002-5410 (NG) (MDG), 2007 WL 2403565 (E.D.N.Y. Aug. 17,
2007) .....................................................................................................................17

*Major Tours, Inc. v. Colorel*,
No. 05-3091 (JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4, 2009) ........................17

*Mastr Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc.*,
295 F.R.D. 77 (S.D.N.Y. 2013) .......................................................................16, 17

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................................................................17

*Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*,
No. 1:05-CV-674 TS, 2010 WL 3767318 (D. Utah Sept. 16, 2010) ......................17

*Pippins v. KPMG LLP*,
No. 11 CIV. 0377 (CM), 2011 WL 4701849 (S.D.N.Y. Oct. 7, 2011) ...................16

*Range Rd. Music, Inc. v. Music Sales Corp.*,
90 F. Supp. 2d 390 (S.D.N.Y. 2000).........................................................................9

*Stinson v. City of New York*,
No. 10 CIV. 4228 (RWS), 2016 WL 54684 (S.D.N.Y. Jan. 5, 2016) ..............14, 18

*Tracy v. NVR, Inc.*,
No. 04-CV-6541L, 2012 WL 1067889 (W.D.N.Y. Mar. 26, 2012).........................15

*United States v. Dupree*,
706 F.3d 131 (2d Cir. 2013).....................................................................................15

*Weiss v. La Suisse*,
161 F. Supp. 2d 305 (S.D.N.Y. 2001)........................................................................4

*Williams v. BASF Catalysts LLC*,
No. CV 11-1754 (JLL) (JAD), 2016 WL 1367375 (D.N.J. Apr. 5, 2016) .............17

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) .............................................................................12

**Statutes**

M.C.L. § 445.1711.....................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 72(a) ...................................................................................................4

M.C.R. 3.501(A)(5) ...................................................................................................11

The Sedona Conference, *Commentary On Legal Holds: The Trigger & The Process*, 11 Sedona Conf. J. 265 (2010)..................................................................14

iii

## PRELIMINARY STATEMENT

Through multiple rounds of motion to compel letters, oral argument, and supplemental briefs, Plaintiff repeatedly asked Magistrate Judge Cott to decide that: (1) Hearst had an ongoing duty to preserve information during an 87-day window **after** *Grenke v. Hearst Communications, Inc.*, No. 12-CV-14221 (E.D. Mich.) was voluntarily dismissed with prejudice on February 23, 2015 and **before** *Boelter v. Hearst Communications, Inc.*, No. 15-CV-3934 (S.D.N.Y.) was filed on May 21, 2015; and (2) Hearst should have to produce information related to its document retention policies and practices in response to Plaintiff's Request for Production No. 34.  After careful consideration of the issues, on December 18, 2017, Magistrate Judge Cott issued an 18-page discovery ruling: (1) rejecting Plaintiff's argument and concluding that "once *Grenke* was dismissed, Hearst did not have a duty to preserve evidence relevant to [Plaintiff's] claim until the filing of the *Boelter* complaint"; but nonetheless (2) directing "Hearst to respond anew to Request 34" because the material Plaintiff seeks is still relevant to the claims in *this* action unrelated to the issue of whether Hearst had a duty to preserve based on the prior *Grenke* action.  ECF No. 244 ("Order") at 17-18.

On December 20, 2017, before the ink was dry on the decision, Plaintiff lodged the instant objection directed only to the first part of Magistrate Judge Cott's ruling.  According to Plaintiff, Magistrate Judge Cott somehow issued an "advisory opinion" because he did not need to reach the issue of whether Hearst's duty to preserve extended beyond *Grenke* in order to decide whether information about Hearst's document retention policies and practices is relevant to the current litigation.  Plaintiff also claims that Magistrate Judge Cott's conclusion was "clearly erroneous" in any event because Hearst should have been on notice of Plaintiff's potential claim for preservation purposes since *Grenke* was a putative class action and the statute

of limitations period had not run as to all absent class members.  As set forth below, Plaintiff

falls far short of meeting her heavy burden of showing that Magistrate Judge Cott erred in any

way or abused his discretion.

*First*, far from deciding some abstract, hypothetical, or contingent question, Magistrate

Judge Cott addressed a question that Plaintiff herself put squarely at issue in her motion to

compel letter briefing.  Specifically, Plaintiff asserted and relied on Hearst's alleged continuing

duty to preserve after the dismissal of *Grenke* to anchor her request to seek leave to file a motion

for spoliation sanctions (along with a motion to compel the documents she believed she needed

to create a record of alleged spoliation) in this case:

- Oct. 19, 2017 – Plaintiff's first letter-motion accused Hearst of "spoliation" during
  *Grenke* and requested "leave to file a motion to compel and seeking sanctions against
  Defendant Hearst . . . for spoliation of important evidence."  Pl.'s Oct. 19, 2017 Ltr., ECF
  No. 203, at 1.

- Oct. 24, 2017 – Recognizing that without a continuing obligation to preserve documents
  following *Grenke*'s dismissal, she would not be entitled to the negative inference against
  Hearst she apparently seeks as sanctions in *this* case, Plaintiff's second letter-motion
  stated her position that "Hearst's argument that its preservation obligations ended when
  *Grenke* was dismissed is clearly wrong," and Plaintiff again accused Hearst of
  "admit[ting] to spoliation" and of "committ[ing] massive spoliation."  Pl.'s Oct. 24, 2017
  Ltr., ECF No. 210-1, at 1-2.

- Oct. 26, 2017 – At oral argument on the letter-motions, Plaintiff's counsel repeatedly
  accused Hearst of spoliating evidence to the point that Magistrate Judge Cott instructed
  Plaintiff's counsel to "stop it" and Plaintiff suggested that she "may have to ask for an
  adverse inference" as a sanction for the alleged spoliation she claimed. 10/26/17 Hr'g Tr.,
  ECF No. 230, at 38:5, 49:19-50:5.

Moreover, Plaintiff never once told Magistrate Judge Cott that the Court would be wasting its

scarce resources issuing an advisory opinion when the topic of Hearst's duty to preserve was

discussed at length at oral argument and in the subsequent supplemental briefing ordered by

Magistrate Judge Cott.  Plaintiff had a full and fair opportunity to be heard on the issue that she

injected into this case:  whether there is any legal basis to permit Plaintiff to bring a motion for

sanctions based on purported spoliation in a prior case after that case had concluded.  Plaintiff is not the first litigant to be upset with a judicial ruling and try to attack it after-the-fact as somehow being "advisory" or irrelevant to the part of the ruling the litigant happens to like.  The law does not countenance such procedural gamesmanship.

*Second*, far from being "clearly erroneous," Magistrate Judge Cott correctly applied well-established law regarding the duty to preserve and concluded that Hearst's duty terminated when *Grenke* was dismissed.  Specifically, Magistrate Judge Cott identified the correct test that applies in all cases—including putative class actions—that a party has a duty to preserve evidence when it knows or reasonably should know that it may be relevant to future litigation.  Magistrate Judge Cott then reviewed the record evidence showing that: (1) prior to *Grenke*, the Video Rental Privacy Act ("VRPA") had been a "dead letter" for over 25 years; (2) David Grenke filed and voluntarily withdrew a motion for class certification and never re-filed one as scheduled in February 2015;  (3) *Grenke* was dismissed with prejudice with no possibility of appeal on a voluntary basis, not pursuant to any settlement with Hearst and with Hearst paying no money; (4) the only plaintiff class action firm to have brought any cases under that statute as of February 2015, including *Grenke*, told Hearst that it did not intend to sue on behalf of any other plaintiffs for alleged violations of the statute; and (5) before, during, and after *Grenke*, Hearst had received no pre-suit or other complaints from potential regulators or plaintiffs indicating that future litigation under the VRPA was on the horizon or reasonably anticipated.  After surveying the applicable case law—including all the cases relied upon by Plaintiff in attempting to substantiate her novel theory of the duty to preserve—Magistrate Judge Cott was well within his discretion to find (and it was not clearly erroneous to conclude) that, under the specific facts and

circumstances of *Grenke*'s termination and this case, "it was reasonable for Hearst to believe that no future litigation was forthcoming." Order at 11.

Accordingly, Hearst respectfully requests that there is no legitimate basis to upset this aspect of Magistrate Judge Cott's ruling and it should be affirmed.

## LEGAL STANDARD

As this Court knows, under Rule 72(a) of the Federal Rules of Civil Procedure, a district court can "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A decision is clearly erroneous "only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lan v. Time Warner, Inc.*, No. 11 CIV 2870 (AT)(JCF), 2016 WL 928731, at *1 (S.D.N.Y. Feb. 9, 2016) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001)). In addition, to overturn a non-dispositive order by a magistrate judge, an objecting party must show that the ruling reflected an abuse of discretion. *Id.* (quoting *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 08083, 2011 WL 2946380, at *1 (S.D.N.Y. July 14, 2011)) ("It is well-settled that a magistrate judge's resolution of a non-dispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion."). Here, Plaintiff comes nowhere close to showing that Magistrate Judge Cott was clearly erroneous or abused his discretion.

## ARGUMENT

### I.   Magistrate Judge Cott's Ruling on the Duty to Preserve After *Grenke* Was Not an Advisory Opinion.

An advisory opinion is a judicial ruling that decides "abstract, hypothetical or contingent questions." *Ala. State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 461 (1945). *See also Broadview Chem. Corp. v.*

4

*Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969) (holding that an advisory opinion is "a hypothetical or academic dispute or a request in the abstract [and is not] a definite, concrete controversy of sufficient immediacy"); *Alan Guttmacher Inst. v. McPherson*, 616 F. Supp. 195, 200 (S.D.N.Y. 1985), *aff'd as modified*, 805 F.2d 1088 (2d Cir. 1986) ("An advisory opinion constitutes a decision of law concerning a set of facts which are hypothetical or speculative, facts which do not now exist and whose existence is not imminent.").  Plaintiff is manifestly incorrect in claiming that Magistrate Judge Cott's ruling on Hearst's duty to preserve is an advisory opinion.  Pl.'s Obj., ECF No. 247, at 4-5.

Plaintiff first brought the duty to preserve issue before Magistrate Judge Cott in the initial letter-motion Plaintiff filed on October 19, 2017 seeking documents from Hearst relating to its document retention practices and procedures before, during and after *Grenke* (some of which documents Hearst had produced during Phase I) and requesting "leave to file a motion to compel and [ ] sanctions against [Hearst] for spoliation of important evidence."  ECF No. 203 at 1. Plaintiff asked the "Court [to] set a schedule for discovery and briefing on Plaintiff's anticipated motion for spoliation sanctions."  *Id.* at 2; *see also* ECF No. 244 at 6.  That letter included an entire section accusing Hearst of spoliation during *Grenke* and arguing that "Hearst certainly did have an obligation to preserve evidence" during and after *Grenke*.  ECF No. 203 at 3.  Indeed, Plaintiff's motion to compel was ancillary to her request to bring a motion for spoliation sanctions, stating that she also sought to compel production of certain documents because "[w]e expect the Court will wish to have a well-developed record of these matters to enable it to determine the appropriate sanction . . . ."  *Id.* at 5.

Plaintiff reiterated these points in the second letter she filed on October 24, 2017.  ECF No. 210-1 at 2-4.  There, Plaintiff again accused Hearst of "committ[ing] massive spoliation"

during and after *Grenke*, and sought production of various discovery documents from Hearst. *Id.*
at 2-4.  Plaintiff cited five different cases discussing the duty to preserve and a substantial
portion of her letter arguing that Hearst's duty to preserve documents continued even after
*Grenke* was dismissed with prejudice.  *Id.*  This was no hypothetical dispute.

Given Plaintiff's arguments, not surprisingly, Magistrate Judge Cott noted on four
separate occasions that to resolve Plaintiff's letter-motions (including her request for leave to file
a spoliation motion) he needed to first answer the legal question of whether Hearst's duty to
preserve continued after *Grenke* was dismissed.  ECF No. 230 at 52:2-6, 56:21-22, 60:8-13,
63:7-8, 63:22-64:17.  That is precisely because the parties disagreed both in their letter briefs and
at the hearing on that fundamental threshold question with Plaintiff's counsel being adamant that
Hearst had a duty to preserve the purportedly spoliated information that extended beyond
*Grenke*:

> *The Court*: "All documents" is incredibly broad.  What [do] you really
> want?  What are you really looking for in No. 34?
>
> *Mr. Bursor*: I want to know if there were communications between Hearst
> and Acxiom about preserving documents for *Grenke* and about destroying
> documents ***before, during or after Grenke,*** anything about the preservation or
> destruction of the files that we just talked about, the FTP logs, the actual database
> files that were transmitted, those emails to Charlie Swift.  If there were
> communications about that, we want those communications.   And if those
> communications came from lawyers, we want a privilege log if there's a claim of
> privilege.  That's all we want now, is to get the documents about what happened to
> those files.  ***Because your Honor, there is no question that there was a duty to
> preserve them.***

*Id.* at 51:11-52:1 (emphasis added).

Tellingly, as the hearing neared an end, Magistrate Judge Cott communicated his
intention to resolve the legal question of Hearst's duty to preserve and asked Plaintiff and Hearst
to file supplemental briefs on the issue.  *Id.* at 63:22-64:17.  Plaintiff's counsel agreed with

Magistrate Judge Cott that this legal question was directly implicated by the requests made by her October 19 letter:

> *The Court*: Let's say they say there wasn't a litigation hold, then what?
>
> *Mr. Bursor*: Then there was spoliation ongoing during the *Grenke* case.
>
> *The Court*: What difference does that make for our case?
>
> *Mr. Bursor*: Here's the difference it makes. That's a legal question.  Did their duty to preserve continue between *Grenke* and the 87 days when we filed?
>
> *The Court*: Right.
>
> *Mr. Bursor*: That's the legal question.

*Id.* at 60:2-12.  In other words, Plaintiff recognized that even if she obtained the litigation hold documents sought, it would not resolve the question as to whether she might be entitled to sanctions in this case, because there was still the legal question of whether any duty to preserve continued after *Grenke's* dismissal.  Plaintiff not only agreed with Magistrate Judge Cott's order to brief and rule on the issue but also stressed that the decision was "important" and needed to be resolved "quickly".  *Id.* at 64:3-19.  And in case there was any confusion on what Magistrate Judge Cott would be deciding, Magistrate Judge Cott again reiterated his intention to rule on whether Hearst had a duty to preserve evidence after *Grenke* was dismissed, and Plaintiff's counsel repeatedly responded that he understood:

> *The Court*: What we're briefing right now is simply the question of whether Hearst did or did not have a duty here to preserve in light of the sequence and timing of *Grenke* relative to the sequence and timing of *Boelter* and *Edwards*.
>
> *Mr. Bursor*: I understand that.
>
> *The Court*: That's the issue.
>
> *Mr. Bursor*: I understand that.
>
> *The Court*: That's the narrow legal issue that I'm going to opine.  That's all I'm opining on and nothing beyond that.
>
> *Mr. Bursor*:  I understand that.

*Id.* at 65:15-25.  Eventually, at Plaintiff's request, Magistrate Judge Cott expanded the scope of

the supplemental briefing to address the question of whether Hearst had to produce the sought-

after documents *even if* Hearst did *not* have a duty to preserve them after *Grenke*.  *Id.* at 66:2-

67:5.  Magistrate Judge Cott nonetheless reiterated his intention to rule on both the duty to

preserve issue and the "secondary" issue Plaintiff raised, and Plaintiff, as before, agreed with the

approach:

> *The Court*: Ok.  Let's do this.  Within your briefing, you can brief both the
> duty question and the related secondary question . . . .  So why don't we fold that
> in as well, and I will adjudicate both the duty question and the irrespective-of-the-
> duty question, if you will.  OK?
> . . . .
> *Mr. Bursor*:  Yes, your Honor.

*Id.* at 66:25-67:7.  In arguing that the briefing should address the secondary question, Plaintiff's

counsel never said, or came close to suggesting, that a ruling on Hearst's preservation obligations

after *Grenke's* dismissal would be improper or advisory or irrelevant to any issue on which

Plaintiff has sought Magistrate Judge Cott's judicial resolution.  Instead, this was a litigant

offering a fallback argument with respect to her motion to compel after initially hinging that

request on an argument that Hearst had a duty to preserve beyond *Grenke.*

Similarly, and in direct contradiction to Plaintiff's current argument, Plaintiff's initial

brief following the hearing explicitly asked Magistrate Judge Cott to make a ruling on the duty to

preserve issue Plaintiff now argues was improper.  Pl.'s Initial Br., ECF No. 222.  Specifically,

Plaintiff's initial brief asked Magistrate Judge Cott to "hold that Hearst's duty to preserve

evidence relevant to this action was triggered by no later than the filing date of *Grenke.*"  *Id.* at 9.

In addition, six of the nine pages of Plaintiff's initial brief were devoted to arguing that Hearst's

duty to preserve documents extended past the dismissal of *Grenke*.  *Id.* at 1-7.  Further,

Plaintiff's second brief, which was filed seven days later, spent its entire five pages exclusively

on the issue of Hearst's duty to preserve.  Pl.'s Second Br., ECF No. 228, at 1-5.  In fact, the

entire conclusion section in Plaintiff's second brief focused on answering when Hearst's duty to

preserve expired:

> The filing of *Grenke* made Hearst aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class.  *Grenke*'s dismissal obviously did not prejudice those class members' claims, ***thus it did not end Hearst's duty to preserve evidence.***

*Id.* at 5 (emphasis added) (citations and quotation marks omitted).  Like in the letters and at the

hearing, nowhere in the two briefs is there any mention that Magistrate Judge Cott lacked the

authority to opine on Hearst's duty to preserve or should not rule on that issue or that a ruling by

Magistrate Judge Cott would be merely advisory.  In fact, Plaintiff only first mentioned the word

"advisory" in her objection.  The word is conspicuously absent from Plaintiff's two letter

motions, the 69-page hearing transcript, and Plaintiff's two supplement briefs.  Plaintiff pressed

Magistrate Judge Cott at every turn to resolve the question of Hearst's preservation obligation

after *Grenke* and only now claims that it is advisory because she is unhappy that it came out

against her.[1]

Accordingly, Magistrate Judge Cott's ruling that Hearst's duty to preserve terminated

between *Grenke*'s dismissal and the filing of *Boelter* was an actual dispute between the parties

raised by the Plaintiff in the context of her requests and was not advisory in any way.  To the

contrary, the question of Hearst's legal duty is a threshold legal question that would need to be

resolved before any sanction could be considered in this case.  It would have been wasteful of

judicial and party resources to delve into that question in the absence of a legal duty to preserve

---

[1] *Cf. Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) ("That plaintiffs are unhappy with the Court's decision to deny their motion for summary judgment affords no basis to support a motion for reconsideration.").

following *Grenke's* dismissal.  Magistrate Judge Cott's decision to resolve the duty to preserve

question at the outset was not clearly erroneous or an abuse of discretion.

## II.     Magistrate Judge Cott Correctly Dismissed Plaintiff's Public Policy Arguments Seeking to Create a New One-Size-Fits-All Duty to Preserve in Class Actions and Instead Applied Well-Established Law Regarding the Duty to Preserve in All Cases.

In objecting to Magistrate Judge Cott's decision that Hearst owed no duty to preserve

after *Grenke* was dismissed, Plaintiff first argues that this is "contrary to the United States

Supreme Court's opinions in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) and

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)."  ECF No. 247 at 9.  Plaintiff

extrapolates from a sentence in *Crown Cork* that, as a result of tolling the statute of limitations

for absent class members when a putative class action is filed, "[t]he defendant will be aware of

the need to preserve evidence and witnesses respecting the claims of all the members of the

class."  *Id.*  But this sentence, which Plaintiff contends "bears repeating," merely acknowledges

long-settled law that a class action defendant—like a defendant in any case—has a duty to

preserve when it is sued.

These cases dealing with federal tolling law, not Michigan tolling law, have no

application to this purely state law case (where the tolling Plaintiff was afforded on summary

judgment was based on Michigan state law).  More to the point, however, nowhere in *Crown

Cork* did the Supreme Court mention, let alone hold, that the tolling of absent class members'

individual claims imposes on defendants a sweeping duty to preserve evidence for the benefit of

*every* absent class member until the tolled statute of limitations expires for *each* potential class

members' claims.  Plaintiff cites no subsequent authority to suggest that either *Crown Cork* or

*American Pipe* have ever been interpreted in the way Plaintiff proposes—because there is none.

Far from being "clearly erroneous," Magistrate Judge Cott correctly rejected Plaintiff's invitation

10

to create a new, expansive duty to preserve unique to class actions that extends automatically to the latest possible claim that could be brought by any absent member of an uncertified class.[2]

Under Plaintiff's proposed new rule, *all* class action defendants would need to make abstract unilateral judgment calls (rife for future litigation themselves) as to the proper contours of a putative class and the availability of any applicable tolling doctrine that are often heavily litigated—*e.g.*, identifying every potential absent class member, determining the statute of limitations for each of their claims, assessing whether their claims are tolled, and then waiting for the statute of limitations for each potential individual plaintiff to expire before reverting back to normal document retention practices—regardless of the strength or specificity of the claims, the ultimate resolution of the case, or whether defendants reasonably anticipate additional litigation involving those claims.  To illustrate the radical nature of the change in law that Magistrate Judge Cott properly rejected, under Plaintiff's mistaken view, even if Plaintiff had not brought suit, Hearst's duty to preserve evidence in *Grenke* would still be ongoing because it would not expire until three years after *Grenke* was voluntarily dismissed with prejudice, or until February 23, 2018.  That has never been the law in this Circuit (or elsewhere) and should not become so today.

---

[2] As this Court knows, it was far from clear at that time when *Grenke* was voluntarily dismissed with prejudice whether any tolling—let alone *American Pipe* tolling—even applied to Michigan state law claims asserted in *Grenke* and this case.  Indeed, as Magistrate Judge Cott concluded, this tolling question was "complicated," not "clear-cut," and involved "unsettled questions of Michigan state law" (Memorandum Order, ECF No. 77, at 1, 6, 8) and ultimately this Court came to a different conclusion than Magistrate Judge Cott.  Beyond the novel questions of tolling under Michigan statute of limitations law, Michigan class action procedure does not even allow for a class action like the instant case to be brought because class actions seeking minimum statutory damages, like under the VRPA, cannot be brought in state court.  *See id.* at 7-8 (citing M.C.R. 3.501(A)(5)).

11

Instead, in determining whether a litigant like Hearst has a duty to preserve evidence for future litigation (after *Grenke* was dismissed with prejudice), the test is whether the "party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). In other words, the "duty to preserve attache[s] at the time that litigation [i]s reasonably anticipated." *Id.* at 217. As discussed below, Magistrate Judge Cott correctly applied this controlling test to the record evidence, *see* Order at 7, and thus had no reason to address explicitly either *American Pipe or Crown Cork* in his decision.

Plaintiff also reiterates the related class action-based argument that "in holding that *Grenke* tolled the statute of limitations for Ms. James Edwards' claims in this action, this Court necessarily held that the filing of *Grenke* put Hearst on notice of the claims in this action, and of the need to preserve evidence concerning those claims." ECF No. 247 at 10. As Magistrate Judge Cott correctly concluded, Plaintiff's attempt to transform a statute of limitations ruling into a preservation ruling is "misplaced." Order at 14. Moreover, the question of Hearst's duty to preserve and whether it extended beyond *Grenke* was unquestionably not before this Court, or addressed by this Court, in its decision, which Magistrate Judge Cott had available to him—and considered—at the time of his ruling. *Id.* (addressing *Boelter v. Hearst Commc'ns, Inc.*, No. 15-CV-3934 (AT) (JLC), 2017 WL 3994934 (S.D.N.Y. Sept. 7, 2017)). And, of course, this Court's ruling on tolling under Michigan state law was not available to Hearst in February 2015 when the *Grenke* case was voluntarily dismissed. *See also supra* n.2. Whatever benefit 20-20 hindsight provides now, the test for whether a legal duty to preserve existed in February 2015 necessarily focuses on what was known and reasonably anticipated then.

As a result, Magistrate Judge Cott correctly determined that this Court's tolling ruling does not disturb all the reasons why "[t]he Court [could] not find, on the record before it, that Hearst should have known when *Grenke* was dismissed that evidence from that case might be relevant to future litigation." *Id.* at 11-12.  In explaining the parameters of his fact-specific ruling, Magistrate Judge Cott made clear that "the Court is not today finding that a duty to preserve could never survive the dismissal of a case, particularly if it is known that members of a putative class wait in the wings ready to bring suit following the dismissal." Order at 15.  The Court "simply conclude[d] that in this case, once *Grenke* was dismissed, Hearst was not on notice of future litigation to an extent sufficient to create a duty to preserve." *Id.*

Thus, Plaintiff has failed to show that Magistrate Judge Cott's carefully calibrated decision was based on a serious mistake concerning the appropriate legal test for the duty to preserve.

## III.   Magistrate Judge Cott's Ruling Fits Squarely Within Applicable Case Law Finding the Duty to Preserve Terminates When Litigation Is Fully and Finally Resolved and There Is No Indication Future Litigation Is Forthcoming.

The remainder of Plaintiff's objection to Magistrate Judge Cott's decision is simply a re-hash of Plaintiff's strained view of the applicable case law that was already considered and properly rejected.  *See* ECF No. 247 at 11-13.  Plaintiff's disagreement with Magistrate Judge Cott is not sufficient to meet her burden for this objection and, in any event, Plaintiff is mistaken as the ruling is well-grounded in the law and not clearly erroneous or an abuse of discretion.

As Magistrate Judge Cott noted, the "dismissal of a case with prejudice on the parties' joint motion, and without any settlement, typically provides a defendant with a sense of finality, and certainly militates against the foreseeability of future litigation." Order at 9.  Plaintiff objects to this aspect of the ruling, arguing "that is not true in the context of a class action because the filing of a class action puts the defendant on notice not only of the claims brought by

13

the individual plaintiff, but also of the likelihood that similar claims may be brought in the future by absent class members."  ECF No. 247 at 12.  But Magistrate Judge Cott's conclusion is not clearly erroneous; it is well supported by numerous cases finding that once a dispute is fully and finally resolved—like *Grenke* was as of February 23, 2015—the duty to preserve documents relevant to that dispute terminates.  *See* Order at 9-11; *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2016 WL 54684, at *4 n.3 (S.D.N.Y. Jan. 5, 2016) (duty to preserve did not trigger upon filing of an earlier grievance proceeding that ended in an arbitration because "[w]hen the arbitration process ended, any duty of preservation would have ended with it"); *Cacace v. Meyer Mktg. (MACAU Commercial Offshore) Co.*, No. 06 CIV. 2938 (KMK) (GAY), 2011 WL 1833338, at *2 (S.D.N.Y. May 12, 2011) (no duty to preserve after parties entered into a license agreement that defendant reasonably believed had fully resolved potential infringement claims); *see also Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006) (completed grievance proceeding did not trigger duty to preserve evidence for subsequent litigation involving same facts); *Henry v. Abbott Labs.*, No. 2:12- CV-841, 2015 WL 5729344, at *9 (S.D. Ohio Sept. 30, 2015) (no regulatory violation where defendant "put a hold on documents when it learned of [an earlier civil rights commission] charge and kept it in place until this case was disposed of by this Court's dismissal with prejudice"), *aff'd in part, rev'd in part and remanded on other grounds*, 651 F. App'x 494 (6th Cir. 2016).[3]

---

[3] *See also* The Sedona Conference, *Commentary On Legal Holds: The Trigger & The Process,* 11 Sedona Conf. J. 265, 272 (2010) ("[N]ew information may enable an organization to determine that it should no longer reasonably anticipate a particular litigation, and that it is consequently no longer subject to a preservation obligation."); *id*. at 287 (Guideline 11 contemplates that a duty to preserve will come to a logical ending at some point: "Any legal hold policy, procedure, or practice should include provisions for releasing the hold upon the termination of the matter at issue so that the organization can adhere to policies for managing information through its useful lifecycle in the absence of a legal hold.").

As for Magistrate Judge Cott's reliance on the *undisputed* facts that Hearst had never been sued under the VRPA before *Grenke* and that Hearst did not receive any pre-suit letters, complaints, or inquiries from regulators alleging VRPA violations before, during, or after *Grenke*, *see* Order at 10, Plaintiff has no serious response and certainly identifies no clear error or abuse of discretion.[4]  According to Plaintiff, Hearst's competitors were also sued under the VRPA.  ECF No. 247 at 13.  But that provides no basis to upset Magistrate Judge Cott's conclusion that, either at the time or with the benefit of 20-20 hindsight, Hearst had no reason to anticipate anyone else would sue Hearst given that *Grenke* was the *only* case against Hearst.  Plaintiff's response that this "is how class actions work" is hollow.  *Id.* at 14.  For example, Plaintiff or her counsel could have sent a pre-suit letter to Hearst before or during *Grenke*, but the first Hearst learned of the next VRPA lawsuit was when it was filed.  The fact is that Hearst received no other pre-suit complaints or threats from consumers or regulators.  Plaintiff cannot and does not claim that Magistrate Judge Cott improperly relied upon sworn statements by Hearst to that effect.[5]

Lastly, in every case re-cited by Plaintiff, defendants had a duty to preserve not by virtue of being defendants in a class action but because the specific factual circumstances exhibited that

---

[4] "[T]he court's determination of the scope of the duty to preserve is a highly fact-bound inquiry that involves considerations of proportionality and reasonableness."  *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2012 WL 1067889, at *9 (W.D.N.Y. Mar. 26, 2012); *see also* The Sedona Conference, *supra*, at 272 ("Whether litigation can be reasonably anticipated should be based on a good faith and reasonable evaluation of the facts and circumstances as they are known at the time.").

[5] Instead, Plaintiff takes issue with sworn testimony that counsel for Mr. Grenke told counsel for Hearst that his law firm did not intend to bring another VRPA suit against Hearst.  ECF No. 247 at 15.  Plaintiff's hearsay objection is mistaken: this is a textbook example of admissible non-hearsay offered for its effect on the listener (here, Hearst). *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay.").  No reasonable defendant hearing that statement would believe future VRPA litigation would be brought against it.

those defendants were on notice that future litigation was reasonably anticipated.  For example, Plaintiff cites Magistrate Judge Cott's decision in *Pippins v. KPMG LLP*, No. 11 CIV. 0377 (CM) (JLC), 2011 WL 4701849 (S.D.N.Y. Oct. 7, 2011), *aff'd*, 279 F.R.D. 245 (S.D.N.Y. 2012), *see* ECF No. 247 at 12, even though the circumstances there were "far afield from those analyzed here," Order at 14.  In *Pippins*, KPMG was facing multiple pending suits, including an action in California and a separate class action in New York, and several individuals had already opted in to the *Pippins* FLSA class.  *Pippins*, 2011 WL 4701849, at *2.  *Pippin*s also involved claims "under federal and state labor laws, which is to say, issues that are nearly constantly litigated." Order at 14.  The Court therefore "concluded that a number of potential actions could have resulted if a motion to certify was denied."  *Id.*  By contrast, Hearst had never litigated or even been threatened with litigation under the VRPA prior to *Grenke* and few suits had ever been brought under the VRPA (unlike the FLSA).  *See* Order at 10; M.C.L. § 445.1711 (annotated history).

 *Mastr Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc.*, 295 F.R.D. 77 (S.D.N.Y. 2013) is equally unavailing.  There, U.S. Bank, which served as trustee to certain portfolios of securities created by defendant UBS, had a duty to preserve as soon as Assured, UBS's financial guaranty insurer, sued UBS a year earlier demanding that UBS repurchase certain securities insured by Assured.  *Id.* at 80-81.  Because under the parties' contracts Assured had to rely on U.S. Bank as trustee to enforce UBS's repurchase obligations, the Court held that when Assured "filed its suit to enforce [the repurchase] obligations, U.S. Bank should have recognized that Assured did not have that right and that U.S. Bank would likely be called upon to perform its enforcement duty . . . ."  *Id.* at 81, 84.  The Court also noted that before filing suit, Assured "had demanded the repurchase of thousands of loans" and the

"scale" of those demands "indicated a likelihood of litigation." *Id.* at 83-84. This set of facts is entirely distinguishable from the facts here where there was nothing comparable to U.S. Bank's contractual obligation that could have put Hearst on notice of future litigation and Hearst had not received thousands of "demands" concerning VRPA violations. To the contrary, prior to *Grenke*, and in the three-month period after *Grenke*, there were no pre-suit demands or threats against Hearst. *See* Order at 10.

Plaintiff also cites several cases involving defendants who were explicitly threatened with, or warned of, potential litigation and therefore had a duty to preserve because they had a concrete reason to anticipate future litigation. *See Williams v. BASF Catalysts LLC*, No. CV 11-1754 (JLL) (JAD), 2016 WL 1367375, at *3, 6 (D.N.J. Apr. 5, 2016) (defendant "anticipated [the original case] would be the first of many asbestos lawsuits"); *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-674 TS, 2010 WL 3767318, at *3 (D. Utah Sept. 16, 2010) (important customer notified defendant of potential lawsuit); *Major Tours, Inc. v. Colorel*, No. 05-3091 (JBS/JS), 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009) (plaintiff's counsel threatened to sue if defendants did not provide a "response 'within two weeks'"); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006) (plaintiffs threatened to sue defendant, defendant believed he was "going to be sued," and litigation against former investors like defendant was ongoing). Here, there was no such threat or warning that Hearst would be sued again, either by David Grenke or anyone else. *See* Order at 10.

In the remaining cases cited by Plaintiff, the defendants were actively involved in other pending litigation, subject to ongoing judicial oversight, or involved in government enforcement actions (which often entails risk of subsequent individual actions) that made future litigation plainly foreseeable. *See M & T Mortg. Corp. v. Miller*, No. CV 2002-5410 (NG) (MDG), 2007

17

WL 2403565, at *6 (E.D.N.Y. Aug. 17, 2007) (defendants subject to a regulatory enforcement action during which individual plaintiffs had filed their own action should have foreseen additional suits by individuals); *Casale v. Kelly*, 710 F. Supp. 2d 347, 350, 351-52 (S.D.N.Y. 2010) (lawsuit by individual arrested under unconstitutional statutes foreseeable where defendant had been subject to years-long judicial oversight for continued enforcement of those statutes); *Stinson*, 2016 WL 54684, at *4 (defendant party to prior lawsuit involving same allegations that had "continued up to and beyond the filing of the Complaint in the instant litigation").  Here, there was no overlap between the two cases: nearly three months passed between the dismissal of *Grenke* and the filing of *Edwards*.  And before *Grenke* and in the three-month gap between the two suits, Hearst never received a single pre-suit letter or regulatory inquiry that would have made additional VRPA litigation reasonably foreseeable.  *See* Order at 10.

## CONCLUSION

Magistrate Judge Cott's decision that Hearst's duty to preserve did not extend beyond *Grenke* is non-advisory because Plaintiff specifically put the question at issue in the context of her motion for leave to compel discovery and seek sanctions.  In carefully considering the question after multiple rounds of briefing and argument, Magistrate Judge Cott did not clearly err or abuse his discretion in concluding that Hearst's duty to preserve terminated with *Grenke*'s dismissal with prejudice based on application of the correct legal test to the record evidence.  For the foregoing reasons, Magistrate Judge Cott's ruling on Hearst's duty to preserve should be affirmed.

Dated:  January 10, 2018

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com

*Attorneys for Defendant Hearst*
*Communications, Inc.*

Of Counsel:

Andrea R. Butler
Kristen L. Hauser
Evan J. Saucier

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on January 10, 2018.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan