# HEARST

**Office of
General Counsel**

Eve Burton
**Senior Vice President
Chief Legal Officer**

Catherine A. Bostron
**Corporate Secretary**

Jonathan R. Donnellan
Mark C. Redman
**Vice President
Deputy General Counsel**

Kristina E. Findikyan
Kenan J. Packman
Maureen Walsh Sheehan
Ravi V. Sitwala
Jack Spizz
**Associate General Counsel**

Debra S. Weaver
**Senior Counsel**

Sultan Barazi
Liddy Barrow*
Jennifer D. Bishop
Lisa Bozman
Andrea Chui
Adam Colón
Travis P. Davis
Ignacio Diaz*
Carolene S. Eaddy
Carl G. Guida
Audra B. Hart
Diego Ibargüen
Monika Jedrzejowska
Siu Y. Lin
Miyuki Matsumoto
Kate Mayer
Marianne Chow Newman
Aimee Nisbet*
Shira R. Saiger
Eva M. Saketkoo
Evan Saucier
Jennifer Schanes
Aryn Sobo
Jennifer G. Tancredi
Federica Tigani*
Kitty Yang*
Stephen H. Yuhan
**Counsel**

* Not admitted or
  resident in New York

June 7, 2018

**VIA ECF**

Honorable James L. Cott
United States Magistrate Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
CottNYSDChambers@nysd.uscourts.gov

**Jonathan R. Donnellan**
Vice President
Deputy General Counsel

Re:   *Edwards v. Hearst Communications, Inc.*, 15 Civ. 09279 (AT) (JLC)
(consolidated with 15 Civ. 3934 (AT) (JLC))
Hearst Renewed 30(b)(6) Deposition Topics

Dear Judge Cott:

   Plaintiff's June 5, 2018 letter motion ("Pl.'s Ltr.") alleges several issues connected to non-party discovery that Plaintiff propounded on CDS Global Inc. ("CDS"), Hearst Communications, Inc. ("Hearst")'s magazine fulfillment agent, by Rule 45 subpoena. Because CDS (a Hearst company) retained outside counsel, David Keyko of Pillsbury Winthrop Shaw Pittman LLP, to represent it in this case in the fall of 2017, Plaintiff's letter motion will be rejoined by Mr. Keyko directly.[1] However, because Plaintiff's letter also includes a number of dispersions levied against Defendant Hearst, I write here to provide a few points of clarification.

   Plaintiff's latest letter motion suggests that Defendant Hearst and/or non-party CDS failed to conduct a search for materials that were the subject of Your Honor's December 18, 2017 Order (the "December Order," ECF No. 244). (Pl.'s

---

[1]   Plaintiff's latest letter motion attempts to conflate the defendant in this lawsuit—Hearst—with non-party CDS Global, Inc., a company that provides fulfillment services to hundreds of magazine publishers, including Hearst. Plaintiff is well aware that while Hearst and CDS are corporate affiliates, they are not the same business or corporate entity, a fact that Plaintiff tacitly if not explicitly acknowledged by propounding separate party discovery on Hearst and Rule 45 non-party discovery on CDS for compliance in Iowa (where CDS is located).

300 West 57th Street
New York, NY 10019
T 212.649.2051
F 646.280.2051
jdonnellan@hearst.com

Hon. James L. Cott
Page 2

Ltr. at 1-2).  This argument is entirely unsupported by the facts.  First, as to Plaintiff's argument regarding Subpoena Request No. 3 propounded on CDS for "[a]ll documents concerning [CDS's] policies, procedures or practices for the retention or destruction of documents or ESI", the December Order concerned, in pertinent part, a document request propounded on Hearst, a party, for "[a]ll documents concerning [Hearst's] policies, procedures or practice for retention or destruction of documents or ESI at any time from December 20, 2009 through July 31, 2016." (December Order at 15, quoting Document Request No. 34 propounded on Hearst).  The December Order did not decide that the document retention policies, procedures, or practices for every non-party in this case was relevant to this case, let alone that such documents from non-party CDS were therefore discoverable.  That issue was not before the Court in December.

Even assuming that CDS's own corporate policies, practices, or procedures for retaining or destroying documents are relevant and discoverable in this case at all, Plaintiff is again wrong in arguing that CDS never searched for these materials; in fact, CDS produced such documents at Plaintiff's request during the lunch break of the CDS 30(b)(6) deposition, despite CDS having objected to production of these materials back in November 2017, and Plaintiff having failed to request to meet and confer or otherwise follow-up with CDS's counsel concerning CDS's objections until six months later during the 30(b)(6) deposition itself.[2]  *See* Ex. A (May 8, 2018 Letter from D. Keyko); Ex. B (excerpts of Donnelly 30(b)(6) transcript, "Dep. Tr.") at 122-123.  Given this search and production, it is unclear what further documents Plaintiff seeks from CDS responsive to Subpoena Request No. 3, and Plaintiff does not identify any such documents in her letter motion.  Accordingly, Plaintiff's request to compel new document searches and productions pursuant to Subpoena Topic 3 should be denied, particularly here when Phase II fact discovery has been closed in this case for over a month, *see* ECF No. 249, and Plaintiff never sought to meet and confer with CDS's counsel concerning objections served in November 2017.

---

[2]   Plaintiff attempts to mislead the Court when it writes "Hearst has stated that it would be searching CDS documents in making its production." (Pl.'s Ltr. at 2, citing ECF No. 242).  To the extent that Hearst has been served with discovery in this case that sought documents or information about Hearst magazine subscribers that is held by CDS in its capacity as Hearst's fulfillment agent, Hearst has consistently stated that it would search for and produce responsive documents and information over which it has custody or control (*i.e.*, data about *Hearst's* magazine subscribers that belongs to Hearst), and Hearst did so.  Hearst has never represented that that it would be searching and producing CDS's own documents and data more generally, *e.g.*, for CDS's own corporate policies or procedures for retention of documents, to comply with CDS's subpoena or otherwise.  *See, e.g.*, Ex. C (Defendant's Objections and Responses to Plaintiff's "Fourth" Set of Requests for Production of Documents) ¶ 4 ("To the extent Hearst has custody or control over responsive and discoverable documents or ESI maintained by its corporate parent, subsidiaries, consultants, or agents Acxiom and CDS Global, Hearst will search for and produce such documents or ESI in their custody or control.").  Indeed, in November 2017, Mr. Keyko, not Hearst's counsel, interposed the responses and objections to Plaintiff's document subpoena issued to CDS, including a specific objection to the production of CDS's own retention policies that is at issue here.  (*See* Ex. D (Nov. 10, 2017 Letter from D. Keyko)).

Hon. James L. Cott
Page 3

Second, as to Subpoena Request No. 4, Plaintiff is again incorrect in arguing that "Hearst and CDS failed to even search" for such materials. Pursuant to Your Honor's December Order that "Edwards may . . . seek discovery about Hearst's document retention and destruction, if any, dating back to December 20, 2009," December Order at 18, Hearst provided amended written objections and responses to Plaintiff's RFP No. 34 in early January 2018, and searched for and produced responsive non-privileged documents within its custody and control accordingly (and provided a log for materials withheld on the basis of privilege). Pursuant to that document request, Hearst located and produced non-privileged communications between Hearst and various third parties alerting them to the *Grenke*, *Boelter*, and *Edwards* lawsuits and placing them on litigation hold; several of those produced litigation holds were directed to CDS employees, the fact of which Plaintiff is well aware because they asked about certain of these litigation holds during CDS's 30(b)(6) deposition. (*See* Ex. B (Dep. Tr.) at 70-75; 83; 125-26). Hearst also located and produced various contracts between itself and CDS relating to CDS's fulfillment services for Hearst (H000212004 to H000212026), one of which (H000212026) specifically provided for the cost allocation for CDS to preserve documents pursuant to litigation holds issued by Hearst (Plaintiff chose not to ask any questions about this document during Ms. Donnelly's deposition). Plaintiff is thus wrong that "Hearst and CDS failed to even search for" documents responsive to Subpoena Request No. 4, because Hearst performed a reasonable search for such materials in connection with the discovery propounded on it by Plaintiff, and again, it is unclear what incremental documents responsive to this request Plaintiff is now seeking from CDS that have not already been produced by Hearst. Plaintiff's request to compel new document searches and productions by CDS pursuant to Subpoena Topic 4 should be denied.

Third, Plaintiff comes to Your Honor for the second time in weeks to complain about a so-called "know-nothing" 30(b)(6) deponent. *See* Pl's Ltr. at 3-4; *see also* ECF No. 269 (Plaintiff's letter motion on Hearst's alleged "know-nothing" 30(b)(6) designee). As before, Plaintiff's accusations are completely off base. Jan Donnelly, CDS's Rule 30(b)(6) corporate designee, spent a day and a half in preparation for her deposition and spoke with various of her colleagues at CDS to fill in gaps in her knowledge as needed, *see* Ex B (Dep. Tr.) at 6-9; 85-88; 104-105, and the transcript of her deposition reveals that she was in fact a knowledgeable corporate representative on the deposition topics propounded on CDS directly as well as the topics propounded on Hearst for which Ms. Donnelly was designated.[3] This is true of the specific topic about which Plaintiff complains in her letter ("Your efforts to locate and produce documents"). (Pl.'s Ltr. at 3). Your Honor may recall that the search for and production of materials pursuant to RFP Nos. 38 & 39 propounded on Hearst, in particular, required Hearst to instruct CDS to query and produce massive sets of information and data belonging to Hearst,

---

[3]   Ms. Donnelly was designated to testify on four of the 30(b)(6) topics propounded on Hearst, but only to the extent those topics related to CDS's role as Hearst's magazine fulfillment agent. *See* Ex. E (Defendant's Objections and Responses to Plaintiff's Revised & Amended Second Notice of Deposition) (designating Jan Donnelly of CDS Global, Inc. to testify on its behalf as to "Topics 3-6 (as to CDS as Hearst's agent)", but designating James H. Murphy to testify to these same Topics 3-6 as to Hearst).

Hon. James L. Cott
Page 4

specifically (a) the extraction and production of millions of rows of data relating to Hearst magazine subscriptions and subscribers in Michigan prior to July 2016 that is held and maintained on CDS's "SERV" database; and (b) the search for and production of over two million pages of order and payment images relating to Hearst magazine subscriptions in Michigan, which paper records are received in the mail by CDS in the normal course, scanned, and stored to portable storage devices along with similar images related to non-Hearst magazine publications.  *See* ECF No. 242 (Dec. 7, 2017 Ltr.) at 1-3.  Ms. Donnelly was adequately prepared to testify as to the broad topic as written ("Your efforts to locate and produce documents"), and to the extent Plaintiff made such inquiry, Ms. Donnelly did so testify on this topic, with respect to both the effort to search and export data from the SERV database, *see* Ex. B (Dep. Tr.) at 15-18; 26-27; 95-97; 147-152, and the effort to query and extract images related to Hearst subscriptions in Michigan, *see* Ex. B (Dep. Tr.) at 15; 21-25; 33; 81-82; 103-106.

     As Ms. Donnelly identified during her deposition and testified to at length, an inadvertent coding error at the time CDS was implementing a litigation hold for Hearst resulted in payment and order images associated with the "pub code" "HRT" not to be preserved, and therefore, those images were not produced to Plaintiff along with the millions of pages of other payment images that were successfully preserved and extracted from the storage devices. (*See* Ex. B (Dep. Tr.) at 28-36; 39-46; 65-70).  Despite Plaintiff's suggestion that they learned of this problem for the "first time" during Ms. Donnelly's deposition, *see* Pl.'s Ltr. at 1-2, the fact that CDS did not have a full and exhaustive set of payment images to match every single Hearst subscription in Michigan was no secret.  When Plaintiff propounded the document requests on Hearst that called for the search and production of these payment images, Hearst's written responses advised it would search for and produce such records as were still available: "Hearst will search for and produce available documents sufficient to reflect payments for subscriptions to a Hearst magazine with a Michigan address for subscriptions ordered prior to July 31, 2016.  To the best of its current knowledge, records reflecting certain payments for subscriptions to Hearst magazines are available for the period starting at least as early as August 2012 to July 31, 2016 . . . ." (Ex. C (Defendant's Objections and Responses to Plaintiff's "Fourth" Set of Requests for Production of Documents) at 5).  Shortly after Hearst finished producing these payment images by the Court ordered deadline of January 31, 2018, *see* ECF No. 248, Plaintiff requested a meet and confer.  On February 13, 2018, during that meet and confer, Plaintiff's counsel Phil Fraietta and Frank Hedin observed that Hearst's production of payment images "doesn't appear to be complete," and my colleague Kristina Findikyan and I responded on that call that Hearst had produced those images that were still available to CDS on the storage devices.  Plaintiff never sought additional details from Hearst, not by further meet and confer requests, a specific deposition topic, or interrogatory. And in Plaintiff's expert report by Colin Weir, served April 16 and prior to Ms. Donnelly's deposition, Plaintiff again confirmed that they understood the payment images produced from CDS's hard drives were not complete and that, in Plaintiff's expert's own words, many payment images had not been preserved:

> I have been provided with a set of payment records that Hearst produced to the Plaintiff in this litigation.  The payment records are incomplete.  There are far fewer payment records than the customer and subscription records

Hon. James L. Cott
Page 5

> Hearst transmitted to third parties. I understand that Hearst failed to preserve all pertinent payment records, but that I have been provided with all of the payment records that Hearst (including CDS Global Inc., a Hearst Company) were able to locate and produce to the Plaintiff. The payment records I received include a collection of image data that show customer orders as well as payment data. There are approximately 2.2 million images containing this type of data.

(Ex. F (Weir Declaration) ¶ 17). Plaintiff therefore has no basis for suggesting in their letter that they only learned during Ms. Donnelly's deposition that CDS was unable to locate and produce certain mail-order images relating to Hearst magazine subscribers in Michigan, *see* Pl.'s Ltr. at 1-2. Had Plaintiff decided they wished to pursue in detail the reason(s) that the production of payment records was not exhaustive, they had every prerogative to do so by propounding an appropriately detailed deposition topic. But Plaintiff propounded a broad topic instead, concerning "Your efforts to locate and produce documents and ESI," and Ms. Donnelly was more than adequately prepared to give meaningful and knowledgeable deposition testimony on this topic as written, and she did so. Plaintiff's request, now, for an unlimited deposition of a new CDS deponent after the close of discovery is entirely unwarranted under the circumstances.

Finally, Plaintiff's letter motion yet again demands that Hearst be "precluded" from offering certain evidence or testimony, this time, "from offering any testimony contradicting Ms. Donnelly's testimony concerning the HRT error." (Pl.'s Ltr. at 4-5). Hearst agrees that Ms. Donnelly's testimony was provided as a corporate representative and thus binds CDS (and on issues that CDS is Hearst's agent, binds Hearst), and Hearst has no intention of offering evidence that would contradict Ms. Donnelly's testimony on the "HRT" error or otherwise. However, Plaintiff has not shown any prejudice whatsoever that would warrant this Court's ordering preclusion on this issue or any other, and without knowing how Plaintiff will attempt to characterize or mischaracterize Ms. Donnelly's testimony in its forthcoming motions, it is entirely inappropriate for the Court to issue an Order precluding Hearst from offering evidence at a later stage in this case as warranted.

Respectfully submitted,

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan

cc: All Counsel of Record (by ECF)
David Keyko (via e-mail)