**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPHINE JAMES EDWARDS, individually
and on behalf of all others similarly situated,

                          Plaintiff,

     v.

HEARST COMMUNICATIONS, INC.,

                          Defendant.

Civil Action No. 15-cv-09279-AT-JLC

---

### DECLARATION OF JOSEPH I. MARCHESE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Joseph I. Marchese, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      I make this declaration in support of Plaintiff's motion for preliminary approval of class action settlement filed herewith.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

4.      On May 21, 2015, Suzanne Boelter filed a putative class action on behalf of Hearst subscribers alleging violations of the VRPA.  *See Boelter v. Hearst Communications, Inc.*, Case No. 15-cv-03934-AT-JLC (S.D.N.Y.), Dkt. 1.

5.      In response to the complaint, on June 13, 2015, Defendant Hearst Communications, Inc. ("Hearst" or "Defendant") filed a letter requesting a premotion conference

on a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted. *Boelter*, Dkt. 11.

6.     On August 17, 2015 – after the Court granted permission – Hearst filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  *Boelter*, Dkt. 17.  On September 14, 2015, Ms. Boelter opposed Hearst's motion to dismiss.  *Boelter*, Dkt. 28.  On October 2, 2015, Hearst filed a reply in support of its motion to dismiss.  *Boelter*, Dkt. 32.

7.     On November 24, 2015, Plaintiff Josephine James Edwards filed this putative class action asserting essentially the same claims as the previously filed *Boelter* action.  Dkt. 1.

8.     On February 8, 2016, the Court entered a Stipulation and Order to Consolidate this case with *Boelter*.  Dkt. 13.  And on February 26, 2016, Plaintiff and Ms. Boelter filed a Consolidated Class Action Complaint.  *Boelter*, Dkt. 67; *see also* Dkt. 218.

9.     On March 11, 2016, the Parties refiled their briefing on Hearst's motion to dismiss under Rules 12(b)(1) and 12(b)(6).  Dkt. 18.

10.     On May 17, 2016, the Court ordered the Parties to submit supplemental briefing on Hearst's motion to dismiss.  Dkt. 21.  On May 31, 2016, Hearst submitted its supplemental brief.  Dkt. 22.  On June 14, 2016, Plaintiff and Ms. Boelter submitted their supplemental brief. Dkt. 24.

11.     On June 17, 2016, the Court issued an order denying Hearst's motion to dismiss. Dkt. 26.

12.     On August 9, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and entered a phased discovery schedule.  Dkts. 39 & 40.  Phase I discovery focused on the claims of the named Plaintiff and Ms. Boelter, while Phase II discovery focused

2

on the claims of the putative class.  *Id.*

13.     On October 17, 2016, the Parties entered in a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) voluntarily dismissing Ms. Boelter's individual claims with prejudice. Dkt. 67.

14.     On April 3, 2017, after the completion of Phase I discovery, which included the production and review of thousands of pages of documents, multiple depositions, and third-party discovery, Hearst filed a motion to dismiss and a motion for summary judgment.  Dkt. 132.  On May 1, 2017, Plaintiff filed an opposition to Hearst's motions, Dkt. 146, as well as her own motion for partial summary judgment.  Dkt. 140.  On May 22, 2017, Hearst filed an opposition to Plaintiff's motion for partial summary judgment, Dkt. 160, and a reply brief in support of its motion to dismiss and for summary judgment.  Dkt. 165.  On June 7, 2017, Plaintiff filed a reply brief in support of her motion for partial summary judgment.  Dkt. 171.

15.     On September 7, 2017, the Court issued a Memorandum Order granting in part and denying in part the Parties' motions for summary judgment, and denying Hearst's motion to dismiss.  Dkt. 182.

16.     Thereafter, the Parties engaged in Phase II discovery, which included the production and review of millions of pages of documents, multiple depositions, third-party discovery, and expert discovery.  The Parties substantially completed Phase II discovery on June 7, 2018.

17.     From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of settlement.

18.     Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before former U.S. Magistrate Judge Frank

Maas (of the U.S. District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York.

19.     The mediation with Judge Maas took place on March 12, 2018 at JAMS's offices in New York and lasted approximately three hours.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement.

20.     Thereafter, the Parties agreed to participate in a second mediation, which the Parties agreed would take place before Jay Cohen, Esq., an experienced mediator.

21.     On June 11, 2018, the parties participated in an approximately 15-hour mediation with Mr. Cohen at the New York offices of Pillsbury Winthrop Shaw Pittman, LLP.  At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement, and executed a term sheet.

22.     The resulting $50 million Proposed Settlement secures extraordinary relief for the class, and is the largest ever reached in a Michigan Preservation of Personal Privacy Act (the "VRPA") case.  Based on Hearst's records the proposed Settlement Class includes approximately 1,936,594 persons with a Michigan street address at any time on or before July 30, 2016 who purchased and/or had a subscription to a Hearst Publication on or before July 30, 2016.  With a $50 million non-reversionary Settlement Fund, and based on class action claims rates that have been experienced in similar cases (including in *Taylor v. Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK (S.D.N.Y.)), Class Counsel estimates that each claimant should receive approximately $155.

23.     My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action.  (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit B**).  My firm

regularly engages in major complex litigation involving consumer privacy, including recent VRPA cases such as *Taylor*, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. My firm has also been recognized by courts across the country for its expertise. (*See* Ex. B); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

24.     My co-counsel, Carey Rodriguez Milian Gonya, LLP, also has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Carey Rodriguez Milian Gonya, LLP, a true and accurate copy of which is attached hereto as **Exhibit C**). The firm has been appointed class counsel by courts throughout the country, including in consumer protection class actions. *See Chimeno-Buzzi v. Hollister Co.*, 2015 WL 9269266, at *2 (S.D. Fla. Dec. 18, 2015) (naming Carey Rodriguez Milian Gonya, LLP as Class Counsel in a $10 million TCPA settlement).

25.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

26.     Plaintiff and proposed Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately each secure a $5,000 statutory award under the VRPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.

27.     Plaintiff and proposed Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever.  Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case.  Plaintiff and Class Counsel are also aware that Defendant would continue to challenge liability and the constitutionality of the VRPA, as well as assert a number of defenses.  Defendant had indicated that it would continue to assert numerous defenses on the merits, including that the VRPA does not prohibit the disclosure of the magazine information at issue at all.  More specifically, Plaintiff is aware that Defendant would continue to assert that the VRPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute.  Defendant would also continue to challenge Plaintiff's standing, and the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general.  Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due

process concerns.

28.     Plaintiff and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 12th day of July 2018 at New York, New York.


   */s Joseph I. Marchese*
   Joseph I. Marchese