**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPHINE JAMES EDWARDS, individually and
on behalf of all others similarly situated,

                 Plaintiff,

     v.

HEARST COMMUNICATIONS, INC.,

                 Defendant.

Civil Action No. 15-cv-09279-AT-JLC

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARD**

Dated: March 11, 2019

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        pfraietta@bursor.com


**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email:  jcarey@careyrodriguez.com
        dmilian@careyrodriguez.com
*Admitted *Pro Hac Vice*

*Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

    A.    Michigan's Preservation Of Personal Privacy Act ................................. 2

    B.    Plaintiff's Allegations ............................................................................. 3

    C.    The Litigation And Work Performed To Benefit The Class .................... 4

SUMMARY OF THE SETTLEMENT ...................................................................... 6

ARGUMENT ............................................................................................................... 7

I.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
       SHOULD BE APPROVED ............................................................................... 7

    A.    The Percentage Method Should Be Used To Calculate Fees ................. 10

    B.    The Reasonableness Of The Requested Fees Is Supported By This
          Circuit's Six-Factor *Goldberger* Test ................................................. 11

        1.    Time And Labor Expended By Counsel ..................................... 11

        2.    Magnitude And Complexity Of The Litigation ......................... 14

        3.    The Risk Of Litigation ............................................................... 16

        4.    The Quality Of Representation .................................................. 17

        5.    The Requested Fee In Relation To The Settlement ................... 18

        6.    Public Policy Considerations ..................................................... 19

    C.    The Requested Attorneys' Fees Are Also Reasonable Under A
          Lodestar Cross-Check ........................................................................... 20

II.    CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE
       REASONABLE AND WERE NECESSARILY INCURRED TO
       ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS ...................... 24

III.   THE REQUESTED INCENTIVE AWARD REFLECTS MS. JAMES
       EDWARDS' ACTIVE INVOLVEMENT IN THIS ACTION AND
       SHOULD BE APPROVED ........................................................................... 25

CONCLUSION ............................................................................................................ 26

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008)..................................................................................... 8, 9

*Asare v. Change Grp. of N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......................................................... 23

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  2002 WL 1315603 (S.D.N.Y. June 17, 2002) ............................................................ 8

*Beacon Assocs. Litig.*,
  2013 WL 2450960 (S.D.N.Y. May 9, 2013) ............................................................. 10

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 23

*Blum v. Stenson*,
  465 U.S. 886 (1984)............................................................................................. 20, 21

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) ............................................................................... 20

*Chimeno-Buzzi v. Hollister Co.*,
  2015 WL 9269266 (S.D. Fla. Dec. 18, 2015) .......................................................... 18

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 9

*Clark v. Ecolab, Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................................ 9

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017) ............................................................................ 16

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................. 9, 23

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................. 26

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................................... 18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................................ 19

*Flores v. Anjost Corp.*,
  2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .............................................................. 9

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
   894 F. Supp. 2d 415 (S.D.N.Y. 2012)...........................................................................8

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................................. passim

*Hayes v. Harmony Gold Min. Co.*,
   2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ...............................................................9

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001)........................................................................................9

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................7, 9

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...........................................................23

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. Oct. 22, 2009) ................................................................26

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .....................................................11, 24

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
   2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018)...............................................................9

*In re IMAX Secs. Litig.*,
   2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ............................................................25

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y.2009)..........................................................................9

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................16, 18

*In re MetLife Demutalization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................18

*In re Nasdaq Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................14, 15

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ......................................................................24

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .............................................................9

*LeBlanc-Sternberg v. Fletcher*,
   143 F. 3d 748 (2d Cir. 1998).................................................................................21, 22

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997)...................................................................... 21

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012).................................... 19, 25

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)........................................................................ 7

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................... 24

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)................................................................................... 21

*Monzon v. 103W77 Partners, LLC*,
   2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .......................................... 7, 10

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
   2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)............................................... 23

*Parker v. Time Warner Entertainment Co., L.P.*,
   631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................... 20

*Pennsylvania Public School Employees' Retirement System v. Bank of Am. Corp.*,
   318 F.R.D. 19 (S.D.N.Y. 2016) ................................................................... 9

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)................................................................................... 20

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)................................................................................... 10

*Raniere v. Citigroup Inc.*,
   310 F.R.D. 211 (S.D.N.Y. 2015) .............................................................. 26

*Reyes v. Altamarea Grp.*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)...................................... 9, 25

*Shapiro v. JPMorgan Chase 7 Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................... 16, 19, 20

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ........................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................. passim

*Wang v. Hearst Corp.*,
   877 F.3d 69 (2d Cir. 2017)....................................................................... 17

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................. 9

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. 2013) .................................................................. 24

*Zorrilla v. Carlson Restaurants Inc.*,
    2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018) ......................................................... 8

**STATUTES**

Michigan Preservation of Personal Privacy Act,
    M.C.L. §§ 445.1711-1715 .................................................................... passim

28 U.S.C. § 1292(b) ...................................................................................... 4, 12

**RULES**

Fed. R. Civ. P. 16 ............................................................................................. 4

Fed. R. Civ. P. 23(h) ..................................................................................... 1, 7

Fed. R. Civ. P. 26 ......................................................................................... 5, 13

**OTHER AUTHORITIES**

H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West).  ................................................ 2

**INTRODUCTION**

The Class Action Settlement between Plaintiff Josephine James Edwards and Defendant Hearst Communications, Inc. ("Hearst"), if finally approved, resolves Plaintiff's and the Class' claims against Hearst under Michigan's Preservation of Personal Privacy Act ("VRPA"), M.C.L. §§ 445.1711-1715.  The Settlement is the latest of several class settlements reached under the VRPA, but it is by far the largest.  The Settlement – preliminarily approved by this Court on January 24, 2019 – creates a $50 million non-reversionary cash Settlement Fund, from which class members who submit a short and simple one-page claim form will receive a *pro rata* cash payment.

Obtaining this unprecedented relief did not come easily.  Plaintiff shouldered significant risk and battled through almost four years of hard-fought litigation, involving complex factual investigation into Hearst's disclosure practices, case-dispositive motion practice on novel legal issues, complete Phase I discovery, including substantial document review and depositions of the Defendant and third parties, competing motions for summary judgment, and complete Phase II discovery, including substantial document review, depositions of the Defendant and third parties, and expert discovery.  Moreover, the Settlement was not reached until the Parties participated in two mediations with well-respected mediators, including a 15-hour mediation with Jay Cohen, Esq.

In light of this exceptional result, Plaintiff respectfully requests pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees of one-third of the settlement fund, or $16,666,666.66, plus reimbursement of $325,764.99 in costs and expenses associated with this action, as well as an incentive award of $10,000 for Plaintiff for her service as class representative.  Even though this Settlement is more than three times larger than any other VRPA settlement, the requested fee is an equal percentage to that approved by other courts in this

District in VRPA class action settlements.  *See Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812-KMK, ECF No. 87 (S.D.N.Y. Feb. 1, 2018) (awarding one-third of $8.225 million settlement fund resolving plaintiff's VRPA claim); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444-KMK, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (awarding one-third of $16.375 million settlement fund resolving plaintiff's VRPA claim).  And it is a <u>lesser</u> percentage than courts have approved in the Eastern District of Michigan.  *See Perlin v. Time Inc.*, No. 16-cv-10635-GCS, ECF No. 55 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's VRPA claim); *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, ECF No. 81 (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's VRPA claim); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's VRPA claim).

For these reasons, and as explained further below, this Court should approve the requested fees, costs, expenses, and incentive award.

## FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of the VRPA, the litigation performed by Class Counsel for the Settlement Class' benefit, and the beneficial terms of the Settlement provide necessary context to the reasonableness of the requested fee and incentive award.

### A.   Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West).  As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the
> business of selling at retail . . . books or other written materials . . .
> shall not disclose to any person, other than the customer, a record

> or information concerning the purchase . . . of those materials by a
> customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the VRPA authorizes civil actions and provides for the recovery of

statutory damages in the amount of $5,000, plus costs and reasonable attorneys' fees.  *See id.*

§ 445.1715.

### B.    Plaintiff's Allegations

Hearst is an international media company that publishes widely-circulated magazines

throughout the United States, such as *Country Living, Good Housekeeping*, *Redbook*, and *O, The*

*Oprah Magazine*.  *See* Consolidated Class Action Complaint, ECF No. 218 ["Compl."], ¶ 1.[1]

Plaintiff alleges that Hearst sells information related to its customers' magazine subscription

histories and personal reading habits.  *Id.* ¶¶ 1-4, 8, 40-46.  To increase the value of such

information, Plaintiff alleges that Hearst trades its customers' protected reading information with

certain third parties – including data mining companies – in exchange for other demographic and

lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.*

¶¶ 8, 40-42.  Plaintiff further alleges that Hearst thereafter "enhances" its own customer profiles

with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits,

medical conditions, etc.), and then sells the enhanced information to other unrelated third parties

for a profit.  *Id.* ¶¶ 8, 40-42.

Plaintiff further alleges that no matter how consumers subscribe (*i.e.*, via postcard, over

the phone, on Hearst's website, or through a subscription agent's website), Hearst's customers

never provide consent to disclose information related to their magazine subscriptions to third

parties.  *Id.* ¶¶ 8, 43-44.  This is because – during the subscription process – Plaintiff claims that

customers are not required to consent to any terms or policies informing them of Hearst's

---

[1] All "ECF No." citations are to the *Edwards* docket, unless otherwise noted.

disclosure practices.  *Id.*

### C.    The Litigation And Work Performed To Benefit The Class

In April 2015, Class Counsel began a pre-suit investigation into Hearst's alleged data-sharing practices.  *See* Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award ("Marchese Decl.") ¶ 3.  While that investigation was ongoing, *Spokeo v. Robins* – a case regarding Article III standing in statutory cases – was then pending before the Supreme Court.  *Id.* ¶ 4.  Knowing *Spokeo* would impact the litigation, Suzanne Boelter, through Class Counsel, filed a class action lawsuit on May 21, 2015, and Hearst has vigorously defended itself from the outset.  *Id.* ¶ 5.

During the pleading stage, the Parties briefed four motions:  (1) a motion to dismiss, (2) a motion to stay discovery pending the outcome of the motion to dismiss, (3) a motion to strike the claims for injunctive relief, and (4) a motion for a preliminary injunction.  *Id.* ¶ 46; *see also id.* ¶¶ 6-45.  Also during the pleading stage, the Supreme Court issued a decision in *Spokeo*, and the Michigan Legislature amended the VRPA.  *Id.* ¶¶ 34-35.  Thus, in connection with the motion to dismiss, the Parties also submitted supplemental briefing that was the first ever to address the impact of *Spokeo* on a VRPA case, and the first ever to address whether the amendments to the VRPA applied retroactively.  *Id.* ¶¶ 37-40.  The Parties also submitted letter-briefing on whether to grant Defendant permission to seek an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), with regard to the question of whether strict constitutional scrutiny should apply to the VRPA under the First Amendment.  *Id.* ¶¶ 43-45.

After the Court denied Hearst's motion to dismiss (ECF No. 26), the case proceeded to discovery.  *Id.* ¶ 47.  On August 9, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and thereafter entered a phased discovery schedule.  *Id.* ¶ 48 (citing ECF Nos. 39-40).  Phase I discovery focused on the claims of the named Plaintiff and Ms. Boelter,

while Phase II discovery focused on the claims of the putative class.  *Id.*  During Phase I discovery, the Parties produced and reviewed thousands of pages of documents, engaged in a number of meet-and-confer teleconferences, brought six discovery disputes to Magistrate Judge Cott, and took five depositions, including depositions of the Parties, and of three third parties. *Id.* ¶ 61; *see also id.* ¶¶ 49-60.

At the conclusion of Phase I discovery, the Parties filed competing motions for summary judgment.  *Id.* ¶¶ 62-71.  The summary judgment briefing was the first ever to address many issues, including, but not limited to, whether the VRPA is limited to only "public" disclosures, whether the VRPA permits disclosures to a defendant's agent, and how to determine whether a third party recipient is a defendant's agent.  *Id.* ¶ 71.  On September 7, 2017, the Court issued a Memorandum and Order granting in part and denying in part the Parties' motions for summary judgment.  *Id.* ¶ 72 (citing ECF No. 182).  The Parties then proceeded to fully brief motions for reconsideration of that Memorandum and Order.  *Id.* ¶¶ 73-75.

As the motions for reconsideration were being briefed, the Parties began Phase II discovery.  *Id.* ¶ 76.  Phase II discovery was extensive and included:  (1) the production and review of millions of pages of documents, (2) numerous meet-and-confer teleconferences regarding the scope of discovery, (3) three discovery disputes before Magistrate Judge Cott, (4) seven depositions of fact witnesses, including third-party witnesses, (5) the procurement of four declarations from third parties in lieu of depositions, and (6) expert discovery, including Class Counsel hiring three expert witnesses, and the Parties submitting three Expert Reports and engaging in three expert depositions.  *Id.* ¶ 97; *see also id.* ¶¶ 77-96.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.  *Id.* ¶ 98.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the

Parties agreed would take place before former U.S. Magistrate Judge Frank Maas (of the U.S.

District Court for the Southern District of New York), who is a neutral affiliated with JAMS

New York. *Id.* ¶ 99. On March 12, 2018, the Parties participated in a mediation before Judge

Maas at JAMS's offices in New York. *Id.* ¶ 101. The mediation lasted approximately 3 hours.

*Id.* While the Parties engaged in good faith negotiations, which at all times were at arms' length,

they failed to reach an agreement. *Id.*

Thereafter, the Parties agreed to participate in a second mediation with Jay Cohen, Esq.

*Id.* ¶ 102. On June 11, 2018, the Parties participated in a mediation with Mr. Cohen at the New

York offices of Pillsbury Winthrop Shaw Pittman, LLP. *Id.* ¶ 104. The mediation lasted

approximately 15 hours. *Id.* At the conclusion of the mediation, the Parties reached agreement

on all material terms of a class action settlement, and executed a term sheet. *Id.* Thereafter the

parties drafted and executed the Settlement Agreement and related documents which are

submitted herewith. *Id.* ¶ 106. On January 24, 2019, the Court granted preliminary approval to

the Settlement. *Id.* ¶ 108 (citing ECF No. 299).

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in the largest settlement ever achieved under the VRPA.

*Id.* ¶ 105. The Settlement provides an exceptional result for the class by delivering immediate

cash to approximately 3,930,421 persons with a Michigan street address at any time on or before

July 30, 2016 who purchased and/or had a subscription to a Hearst Publication on or before July

30, 2016. *Id.* The Settlement creates a non-reversionary $50,000,000 Settlement Fund, from

which class members will receive a *pro rata* cash payment, which, based on available claiming

data, Class Counsel estimates will be approximately $155, however, class members have until

March 25, 2019 to submit claims, so this estimate is subject to change. *Id.*; *see also* Ex. A, Class

Action Settlement Agreement ("Agreement") ¶¶ 1.33, 2.1.

**ARGUMENT**

**I.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED**

The requested fee award of $16,666,666.66, representing one-third of the cash common fund, is reasonable and merits approval.  Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, the Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award of attorneys' fees up to one-third of the Settlement Fund.  Agreement ¶ 8.1.

In common-fund cases such as this one, courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  "The trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources."  *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (Torres, J.); *see also* Marchese Decl. Ex. L, 1/31/18 *Trusted Media Brands* Final Approval Hearing Transcript ("*TMBI* Hearing Tr.") at 16-18 (applying percentage of the fund method in a VRPA case).   In fact, the "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388

(S.D.N.Y. 2013).  As the Second Circuit has stated, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'"  *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).  Indeed, over a decade ago, the Second Circuit described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the
> lodestar method proved vexing.  Our district courts found it created
> a temptation for lawyers to run up the number of hours for which
> they could be paid.  For the same reason, the lodestar created an
> unanticipated disincentive to early settlements.  But the primary
> source of dissatisfaction was that it resurrected the ghost of
> Ebenezer Scrooge, compelling district courts to engage in a gimlet-
> eyed review of line-item fee audits.  There was an inevitable waste
> of judicial resources.

*Goldberger*, 209 F.3d at 48-49.  And as Judge Karas has noted, "courts in the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees" in fee-shifting cases.  *GB ex rel NB v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)); *see also TMBI* Hearing Tr. at 16:18-19 ("Now, the lodestar method is not supposed to be used for computing attorneys' fees.").

Moreover, "Courts in this Circuit routinely approve fee awards in class actions that constitute one-third of the settlement fund."  *In re Tommie Copper Prods. Consumer Litig.*, Case No. 15-cv-03183-AT-LMS, ECF No. 130 at 14:13-15 (S.D.N.Y. May 1, 2018) (Torres, J.); *see TMBI* Hearing Tr. at 17:21-22 ("As I said, it's one-third.  That's typically approved by other courts."); *Zorrilla v. Carlson Restaurants Inc.*, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018)

8

(Torres, J.) (awarding "$6,336,666.67, or one-third of the Gross Settlement Amount, for attorneys' fees"); *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (Torres, J.) (awarding attorneys' fees equal to one-third of the settlement fund); *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y.2009) (awarding one-third of the $510 million net settlement fund); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding one-third of $42 million settlement fund); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6–7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund).[2]   Indeed, as courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (citing *Arbor Hill*, 522

---

[2] In so-called "megafund" cases, where the relief obtained exceeds $100 million, courts typically award reduced percentages. *See Wal-Mart Stores, Inc.*, 396 F.3d at 123 (noting that megafunds are over $100 million) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (discussing megafunds over $100 million)); *Pennsylvania Public School Employees' Retirement System v. Bank of Am. Corp.*, 318 F.R.D. 19, 25 (S.D.N.Y. 2016) (noting that "'mega funds' [are] funds of more than $100 million"); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018) (applying megafund criteria to an approximately $2.3 billion settlement); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d at 401 (applying megafund criteria to a $590 million settlement).

F.3d 182).

### A.    The Percentage Method Should Be Used To Calculate Fees

As aforementioned, the "trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases." *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *see also Monzon*, 2015 WL 993038, at *2 (same).  Indeed, the percentage method has been used to calculate fees for the eight other major VRPA class action settlements, including by courts in this District.  *See TMBI* Hearing Tr. at 16-18 (applying percentage method); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444-KMK, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (same); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671-NRB, ECF No. 143 (S.D.N.Y. Mar. 6, 2019) (same); *Halaburda v. Bauer Publ'g Co., L.P.*, No. 12-cv-12831-GCS, ECF No. 68 (E.D. Mich. Jan. 6, 2015) (same); *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, ECF No. 81 (E.D. Mich. May 18, 2016) (same); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688-RHC, ECF No. 54 (E.D. Mich. Sept. 29, 2016) (same); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (same); *Perlin v. Time Inc.*, No. 16-cv-10635-GCS, ECF No. 55 (E.D. Mich. Oct. 15, 2018) (same).  In contrast, the lodestar approach is more often applied in federal fee-shifting cases, particularly civil rights actions.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  As Judge Cote has stated, the percentage method is preferred for several reasons:

> First, it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.  Second, it decreases plaintiff lawyers' incentive to run up the number of billable hours for which they would be compensated by the lodestar method.  And finally, it decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay.

*Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (internal

citations omitted); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys.  It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").

Under the circumstances of this case – wherein Class Counsel received an exceptional result for the Settlement Class – the Second Circuit prefers the percentage method.  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (noting that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").  In contrast, "the lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits."  *Id.* at 121.

### B.   The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.  A review of these factors support Class Counsel's fee request.

#### 1.   Time And Labor Expended By Counsel

For almost four years, Class Counsel has devoted 5,065.6 hours to investigating, litigating, and resolving this complex case.  *See* Marchese Decl. ¶ 117; Declaration of David P. Milian In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award ("Milian Decl.") ¶ 5.  Class Counsel has been working on this case since April 2015,

11

when it began investigating magazine publishers' violations of the VRPA.  *See* Marchese Decl.

¶ 3.  The pre-suit investigation was extensive and involved in-depth research into a number of

data sharing practices, including data appending, subscriber list rental, and use of data

cooperatives.  *Id.*  During that pre-suit investigation, Class Counsel also conducted extensive

research into the Supreme Court's Article III standing precedents, in light of the Supreme Court

granting *certiorari* in *Spokeo v. Robins*.  *Id.* ¶ 4.

During the pleading stage, Class Counsel briefed four motions:  (1) a motion to dismiss,

(2) a motion to stay discovery pending the outcome of the motion to dismiss, (3) a motion to

strike the claims for injunctive relief, and (4) a motion for a preliminary injunction.  *Id.* ¶ 46; *see*

*also id.* ¶¶ 6-45.  Also during the pleading stage, the Supreme Court issued a decision in *Spokeo*,

and the Michigan Legislature amended the VRPA.  *Id.* ¶¶ 34-35.  Thus, in connection with the

motion to dismiss, Class Counsel also submitted supplemental briefing that was the first ever to

address the impact of *Spokeo* on a VRPA case, and the first ever to address whether the

amendments to the VRPA applied retroactively.  *Id.* ¶¶ 37-40.  Class Counsel also submitted

letter-briefing on whether to grant Hearst permission to seek an immediate interlocutory appeal

pursuant to 28 U.S.C. § 1292(b), with regard to the question of whether strict constitutional

scrutiny should apply to the VRPA under the First Amendment.  *Id.* ¶¶ 43-45

Next, during Phase I discovery, Class Counsel served and responded to discovery

requests, conducted several meet-and-confer teleconferences with defense counsel and counsel

for various third parties, reviewed thousands of pages of documents, brought six discovery

disputes to Magistrate Judge Cott, and participated in five depositions, including depositions of

the Parties, and of three third parties.  *Id.* ¶ 61; *see also id.* ¶¶ 49-60.

After Phase I discovery was complete, Class Counsel fully briefed competing motions for

summary judgment.  *Id.* ¶¶ 62-71.  The summary judgment briefing was the first ever to address

many issues, including, but not limited to, whether the VRPA is limited to only "public" disclosures, whether the VRPA permits disclosures to a defendant's agent, and how to determine whether a third party recipient is a defendant's agent. *Id.* ¶ 71.  As a result of the discovery Class Counsel gathered in Phase I discovery, and the motion papers Class Counsel drafted and submitted, the Court granted plaintiff's motion for partial summary judgment. *Id.* ¶ 72 (citing ECF No. 182).  Class Counsel then also fully briefed competing motions for reconsideration of the Court's summary judgment Memorandum and Order. *Id.* ¶¶ 73-75.

The case then proceeded to Phase II discovery, where Class Counsel:  (1) served and responded to discovery requests, (2) conducted several meet-and-confer teleconferences with defense counsel and counsel for various third parties, (3) reviewed millions of pages of documents, (4) brought three discovery disputes to Magistrate Judge Cott, (5) took seven depositions of fact witnesses, including third-party witnesses, (6) procured four declarations from third parties in lieu of depositions, and (7) conducted expert discovery, which included Class Counsel hiring three expert witnesses, and the Parties submitting three Expert Reports and engaging in three expert depositions. *Id.* ¶ 97; *see also id.* ¶¶ 77-96.

Further, Class Counsel expended considerable time and labor on the settlement process as well.  From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.* ¶ 98.  To that end on March 12, 2018, Class Counsel participated in a mediation with former U.S. Magistrate Judge Frank Maas (of the U.S. District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York. *Id.* ¶ 101.  In preparation for that mediation, Class Counsel prepared a detailed mediation statement, outlining the strengths of Plaintiff's case and comparing her case with other VRPA case against magazine publishers that had settled, in order to help evaluate any potential settlement.  Class Counsel also thoroughly reviewed Defendant's

applicable insurance policies.  *Id.* ¶ 100.  Then, on June 11, 2018, Class Counsel participated in

an approximately 15-hour mediation with Jay Cohen, Esq., an experienced mediator, at the New

York offices of Pillsbury Winthrop Shaw Pittman, LLP.  *Id.* ¶ 104.  In preparation for that

mediation, Class Counsel again prepared a detailed mediation statement, which incorporated the

evidence Class Counsel had procured in Phase II discovery.  *Id.* ¶ 103.  At the conclusion of that

mediation, Class Counsel executed a term sheet, and thereafter drafted and executed the Class

Action Settlement Agreement.  *Id.* ¶¶ 104, 106.

Since that time, Class Counsel has:  (1) prepared Plaintiff's Motion For Preliminary

Approval; (2) worked with the Settlement Administrator, JND Legal Administration ("JND"), to

carry out the Court-ordered notice plan and monitor settlement claims and any other issues that

may arise; and (3) fielded calls from Settlement Class Members and assisted them with filing

claims.  *Id.* ¶¶ 107, 113-114.

Thus, the work performed by Class Counsel to date has been comprehensive, complex,

and wide ranging.  This factor supports the requested fee award.

**2.    Magnitude And Complexity Of The Litigation**

"[C]lass actions have a well deserved reputation as being most complex."  *In re Nasdaq*

*Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and

quotations omitted).  This case was no exception, both factually and legally.  This case involved

multiple layers of factual complexity, much of which was obscured at the outset due to Hearst's

alleged concealment of its data sharing practices from consumers.  As a result, this required

extensive preliminary investigation into Hearst's business practices, its methods of data

collection, aggregation, and sharing, and the nature of its relationships with various third-party

data companies.  Marchese Decl. ¶ 3.

The case involved complex legal issues as well.  The case was the first ever to address the

14

impact of *Spokeo* on a VRPA case, and the first ever to address whether the amendments to the VRPA applied retroactively. *Id.* ¶ 40. The case was also the first ever to address many issues regarding the VRPA, including, but not limited to, whether the VRPA is limited to only "public" disclosures, whether the VRPA permits disclosures to a defendant's agent, and how to determine whether a third party recipient is a defendant's agent. *Id.* ¶ 71.

Moreover, Plaintiff and Class Counsel are aware that Defendant would continue to challenge liability and the constitutionality of the VRPA, as well as assert a number of defenses. Defendant had indicated that it would continue to assert numerous defenses on the merits, including that the VRPA does not prohibit the disclosure of the magazine information at issue at all. *Id.* ¶ 111. More specifically, Plaintiff is aware that Defendant would continue to assert that the VRPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. Defendant would also continue to challenge Plaintiff's standing, and the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns. *Id.*

In the end, because this case involved complex factual and legal questions under the VRPA – its application to Hearst and its alleged disclosures, the constitutionality of the underlying statute, and defining the scope of what it means to sell a magazine "at retail," an issue

which was ultimately decided unfavorably for Plaintiff by the Sixth Circuit in *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 124 (6th Cir. 2017) – the magnitude and complexity of the litigation further supports the requested fee award.

### 3. The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis). "It is well settled that class actions are notoriously complex and difficult to litigate." *Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted). This case presented a substantial risk of non-payment for Class Counsel.

For almost four years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation. Marchese Decl. ¶ 117. Cognizant of the risk of nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation of Hearst's practices, engaged in dispositive motion practice, and completed Phase I and Phase II discovery. *Id.* ¶¶ 3-97. Class Counsel also filed this case with *Spokeo* pending, which could have been dispositive on the case. *Id.* ¶¶ 4-5. Additionally, Class Counsel incurred $325,764.99 in out-of-pocket costs, including court fees, expert witness fees, mediation fees, legal research charges, travel costs, postage fees, court reporting fees, and other related costs. *Id.* ¶ 120, Ex. C; Milian Decl. ¶ 8; Ex. B; *see also infra* Argument § II. Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case, and in doing so, had to forego other work, including hourly non-contingent matters, and other class action cases.

Marchese Decl. ¶¶ 3-97, 119; Milian Decl. ¶ 7.  And given the defenses mounted by Hearst, as well as the fairly limited history of VRPA litigation, the risk of establishing class-wide liability was substantial.  Marchese Decl.  ¶¶ 3-97, 111.

Moreover, Class Counsel faced highly qualified defense counsel, who themselves have defeated complex class action cases.  *See, e.g.*, *Wang v. Hearst Corp.*, 877 F.3d 69 (2d Cir. 2017) (affirming denial of class certification).

The fact that Class Counsel undertook this representation, despite the significant risk of nonpayment, supports the requested fee award.

### 4.    The Quality Of Representation

Class action litigation presents unique challenges and – by achieving by far the largest settlement ever in a VRPA case – Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively.  In addition, Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity.  Marchese Decl. ¶¶ 126-128, Ex. N, Milian Decl. ¶¶ 13-17; Ex. D.  Bursor & Fisher, P.A. also served as Class Counsel in *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444-KMK (S.D.N.Y.), a case brought under the VRPA wherein Judge Karas approved a class-wide settlement for $16.375 million, in *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671-NRB (S.D.N.Y.), a case brought under the VRPA wherein Judge Buchwald approved a class-wide settlement for $13.75 million, in *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812-KMK (S.D.N.Y.), a case brought under the VRPA wherein Judge Karas approved a class-wide settlement for $8.225 million, and in *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL (E.D. Mich.), a case brought under the VRPA wherein Judge Levy approved a class-wide settlement for $7.6 million.  *Id.* ¶ 127

Moreover, Class Counsel has been recognized by courts across the country for their

expertise.  *See* Firm Resume of Bursor & Fisher, P.A., Marchese Decl. Ex. N; Firm Resume of

Carey Rodriguez Milian Gonya, LLP, Milian Decl. Ex. D; *see also Ebin v. Kangadis Food Inc.*,

297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class

action lawyers who have experience litigating consumer claims. … The firm has been appointed

class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar

verdicts or recoveries in five class action jury trials since 2008."); *Chimeno-Buzzi v. Hollister

Co.*, 2015 WL 9269266, at *2 (S.D. Fla. Dec. 18, 2015) (naming Carey Rodriguez Milian Gonya,

LLP as Class Counsel in $10 million TCPA settlement).

Furthermore, "[t]he quality of the opposition should be taken into consideration in

assessing the quality of the plaintiffs' counsel's performance."  *In re MetLife Demutalization

Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).  Class Counsel achieved an exceptional result

in this case while facing well-resourced and experienced defense counsel.  *See Marsh ERISA

Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts

further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly.  The excellent result

is a function of the high quality of that work, which supports the requested fee award.

### 5.    The Requested Fee In Relation To The Settlement

Class Counsel seeks attorneys' fees of one-third of the $50 million cash Settlement Fund.

As aforementioned, courts in this Circuit routinely approve fee requests for one-third of a

common fund.  *See supra* cases cited in Argument § I.  Moreover, the requested fees of one-third

of the settlement fund is an equal percentage to that approved by other courts in this District in

VRPA cases.  *See Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812-KMK, ECF No. 87

(S.D.N.Y. Feb. 1, 2018) (awarding one-third of $8.225 million settlement fund resolving

plaintiff's VRPA claim); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444-

KMK, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (awarding one-third of $16.375 million settlement fund resolving plaintiff's VRPA claim).  And it is a <u>lesser</u> percentage than courts have approved in the Eastern District of Michigan in VRPA cases.  *See Perlin v. Time Inc.*, No. 16-cv-10635-GCS, ECF No. 55 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's VRPA claim); *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, ECF No. 81 (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's VRPA claim); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's VRPA claim).  This factor thus supports the requested fee award.

### 6.   Public Policy Considerations

The final *Goldberger* factor is public policy.  "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct.  *See id.*  "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).  Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of consumers' personal reading choices.  In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of

readers under the VRPA, especially because consumers are generally unaware that their privacy rights are being violated by these data sharing practices (here, Plaintiff alleged that Hearst secretly disclosed its customers' personal reading information). *See also TMBI* Hearing Tr. at 17:23-25 ("Here the private Attorney General role is something that does merit compensation and this case is another example of that."). Thus, the alternative to a class action in this case would have been no enforcement at all, and Hearst's allegedly unlawful conduct would have continued unabated. This factor thus supports the requested fee award.

### C.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check

A lodestar cross-check further supports the requested fee. Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal–Mart Stores, Inc.*, 396 F.3d at 121. Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009). The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors. *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature

20

of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. *See* Marchese Decl. ¶¶ 121-125; Milian Decl. ¶¶ 9-12.[3] And they are the rates paid by hourly-paying clients of Class Counsel in non-contingent representations. Marchese Decl. ¶ 121; Milian Decl. ¶ 9.

The hours worked, lodestar fee, and expenses for both of the firms representing the Settlement Class are set forth in the declarations of Mr. Marchese and Mr. Milian, submitted herewith. They can be summarized as follows:

| Summary Of Class Counsel's Time, Lodestar And Expenses | | | |
|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Expenses** |
| Bursor & Fisher, P.A. | 3,973.1 | $2,504,995 | $287,126.33 |
| Carey Rodriguez Milian Gonya, LLP | 1,092.5 | $665,975 | $38,638.66 |
| **Total** | **5,065.6** | **$3,170,970** | **$325,764.99** |

---

[3] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

These records confirm Class Counsel's efficient billing.  For example, Class Counsel strives to assign as much work as possible to less senior lawyers or paralegals who bill at lower hourly rates in order to minimize fees for the Class.  Approximately 57.75% of Class Counsel's hours (2,925.3 hours) were billed by attorneys who were associates or of counsel at the time, or by paralegals.  Marchese Decl. ¶ 116; Milian Decl. ¶ 5.  However, this was a complex case that involved a lot of novel legal issues, which required some involvement by more experienced lawyers.  Thus, attorneys who were partners billed approximately 42.25% of the total hours (2,140.3 hours), primarily on the pre-suit investigation, developing the litigation strategy, deposing witnesses and defending depositions, drafting briefs on dispositive motions, making court appearances, attending mediation, and negotiating the settlement.  *See id.*

Thus, even under the optional lodestar cross check, Class Counsel's requested fees are reasonable given the unique circumstances of this case.  Specifically:

- Class Counsel obtained the largest ever VRPA settlement, which will result in class members receiving a substantial amount of money quickly.

- The litigation was conducted and the settlement was obtained in an efficient manner, by experienced and qualified counsel.

- The case involved complex and novel legal issues and factual theories, which involved significant litigation risks.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case, including Defendant's available insurance coverage.

In total, through March 8, 2019, Class Counsel billed 5,065.6 hours, which at their hourly rates amounts to a lodestar of $3,170,970.  *See* Marchese Decl. ¶ 117; Milian Decl. ¶ 5.  Therefore, the requested fee award reflects a 5.25 times multiplier on Class Counsel's regular hourly rates.  This multiplier is well within the accepted range in this Circuit.  *See* Marchese Decl. Ex. M, 1/17/19 *Premier Nutrition Corporation* Final Approval Hearing Transcript at 10:2-

3 ("[T]ypically, courts use multipliers of 2 to 6 times the lodestar.") (quoting *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013)); *Davis*, 827 F. Supp. 2d at 185 (approving attorneys' fees of one-third of a $42 million common fund, representing a "multiplier of about 5.3"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6").   And it is lower than multipliers approved in VRPA cases by other courts in this District.   *See TMBI* Hearing Tr. at 18:4-12 (approving attorneys' fees of one-third of an $8.225 million common fund, representing an 11.7 times multiplier on Class Counsel's regular hourly rates); *Ruppel*, No. 16-cv-02444-KMK, ECF Nos. 104, 111 (S.D.N.Y. 2018) (approving attorneys' fees of one-third of a $16.375 million common fund, representing an 8.18 times multiplier on Class Counsel's regular hourly rates).

| Southern District of New York VRPA Class Action Settlements | | | |
|---|---|---|---|
| **Case** | **Cash Settlement Fund** | **Awarded Attorneys' Fees Percentage** | **Lodestar Multiplier** |
| *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 | $8,225,000 | One-Third | 11.7 |
| *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444 | $16,375,000 | One-Third | 8.18 |
| *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 | $50,000,000 | One-Third (sought) | 5.25 |

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. *See* Marchese Decl. ¶ 118; Milian Decl. ¶ 6.   "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll &*

*Hyde Entm't Holdings, LLC*, 2010 WL 532960, at \*2 (S.D.N.Y. Feb. 9, 2010).  Here, "[t]he fact

that Class Counsel's fee award will not only compensate them for time and effort already

expended, but for time that they will be required to spend administering the settlement going

forward, also supports their fee request."  *Yuzary*, 2013 WL 5492998, at \*11 (quoting *McMahon*

*v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at \*8 (S.D.N.Y. Mar. 3, 2010)).

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a

complex and uncertain case.  Class Counsel should be rewarded for achieving this result.

## II.   CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Class Counsel incurred out-of-pocket costs and expenses of $325,764.99.

*See* Marchese Decl. ¶ 120, Ex. C; Milian Decl. ¶ 8, Ex. B.  These expenses are categorized in the

Marchese and Milian Declarations submitted to the Court herewith.  The incurred costs include

court fees, expert witness fees, mediation fees, legal research charges, travel costs, postage fees,

court reporting fees, and other related costs.  *See id.*

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses."

*McMahon*, 2010 WL 2399328, at \*8.  Indeed, "[c]ourts in the Second Circuit normally grant

expense requests in common fund cases as a matter of course."  *In re EVCI Career Colleges*

*Holding Corp. Sec. Litig.*, 2007 WL 2230177, at \*18.  The expenses categorized in the attorney

declarations submitted herewith reflect commonly reimbursed expenses.  *See Yuzary*, 2013 WL

5492998, at \*11 ("Class Counsel's unreimbursed expenses, including court and process server

fees, postage and courier fees, transportation, working meals, photocopies, electronic research,

expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and

necessary to the representation of the class."); *In re Visa Check/Mastermoney Antitrust Litig.*,

297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) ("I award Lead Counsel reimbursement from the

Fund for … costs and expenses. … [T]hese expenses reflect[] the costs of … litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses. … I see no reason to depart from the common practice in this circuit of granting expense requests."), *aff'd*, *Wal-Mart Stores, Inc.*, 396 F.3d 96 (2d Cir. 2005).

Each of these costs and expenses was necessarily and reasonably incurred to bring this case to a successful conclusion. Moreover, the costs and expenses only equate to approximately 0.65% of the settlement fund. *See In re IMAX Secs. Litig.*, 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012) (listing cases approving costs and expenses totaling approximately 2% of the settlement funds). The Court should therefore approve the reimbursement of costs and expenses in the amount of $325,764.99.

## III. THE REQUESTED INCENTIVE AWARD REFLECTS MS. JAMES EDWARDS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes*, 2011 WL 4599822, at *9. Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of Ms. James Edwards was critical to the ultimate success of the case. *See* Marchese Decl. ¶¶ 130-132; Milian Decl. ¶¶ 18-20. Ms. James Edwards spent approximately 80 hours protecting the interests of the class through her involvement in this case. *See* Declaration of Josephine James Edwards In Support Of Plaintiff's Motion For Final Approval Of Class Action Settlement And Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award ("James Edwards Decl.") ¶ 11. Ms. James Edwards assisted Class Counsel in investigating her claims, by detailing her magazine subscription histories and aiding in drafting the Class Action Complaint and the Consolidated Class Action Complaint. *Id.* ¶¶ 3-4. During

the course of this litigation, Ms. James Edwards kept in regular contact with her lawyers to receive updates on the progress of the case and to discuss strategy. *Id.* ¶ 5. Further, Ms. James Edwards preserved and produced documents in discovery. *Id.* ¶ 6. And Ms. James Edwards prepared for and sat for her deposition in New York City. *Id.* ¶ 7. Finally, Ms. James Edwards was actively consulted during the settlement process. *Id.* ¶ 8.

On these facts, the $10,000 incentive payment is fair and reasonable. Indeed, Judge Karas approved an incentive award of $5,000 for the Class Representative in *Taylor*, but she did not sit for a deposition, and she had spent approximately 30 hours protecting the interests of the class through her involvement in the case. *TMBI* Hearing Tr. at 15:10-19. Here, by contrast, Ms. James Edwards sat for a deposition in New York City and spent approximately 80 hours protecting the interests of the class through her involvement in the case. James Edwards Decl. ¶¶ 7, 11. Thus, a higher incentive award is warranted.

Moreover, the requested $10,000 is well within the range of incentive awards approved by courts in this District. *See, e.g.*, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving incentive awards ranging from $7,500 to $20,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000). Finally, the requested incentive award is approximately 0.02% of the Settlement Fund, which is similar to other cases. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. Oct. 22, 2009) (approving incentive award of approximately 0.1% of the settlement fund).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) approve attorneys' fees in the amount of one-third of the settlement fund, or $16,666,666.66, (2) approve reimbursement of costs and expenses in the amount of $325,764.99, (3) grant Ms. James

Edwards an incentive award of $10,000 in recognition of her efforts on behalf of the class, and

(4) award such other and further relief as the Court deems reasonable and just.


Dated:  March 11, 2019

Respectfully submitted,


By:    */s/ Joseph I. Marchese*
         Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com
          pfraietta@bursor.com

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email: jcarey@careyrodriguez.com
          dmilian@careyrodriguez.com
*Admitted *Pro Hac Vice*


*Class Counsel*