**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPHINE JAMES EDWARDS, individually
and on behalf of all others similarly situated,

                    Plaintiff,

    v.

HEARST COMMUNICATIONS, INC.,

                    Defendant.

Civil Action No. 15-cv-09279-AT-JLC

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: April 4, 2019

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email: jcarey@careyrodriguez.com
      dmilian@careyrodriguez.com
*Admitted *Pro Hac Vice*

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    Michigan's Preservation Of Personal Privacy Act ........................ 2

    B.    Plaintiff's Allegations ................................................................... 3

    C.    The Litigation History And Settlement Discussions ..................... 4

TERMS OF THE SETTLEMENT ..................................................................... 7

    A.    Class Definition ............................................................................ 7

    B.    Monetary Relief ............................................................................ 7

    C.    Release .......................................................................................... 7

    D.    Notice And Administration Expenses ........................................... 8

    E.    Incentive Award ........................................................................... 8

    F.    Attorneys' Fees And Expenses ..................................................... 8

ARGUMENT ..................................................................................................... 8

I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
APPROPRIATE ........................................................................................ 8

    A.    Numerosity ................................................................................... 9

    B.    Commonality ................................................................................ 10

    C.    Typicality ..................................................................................... 11

    D.    Adequacy ..................................................................................... 12

    E.    The Proposed Settlement Class Is Ascertainable ......................... 14

    F.    The Proposed Settlement Class Meets The Requirements of Rule
23(b)(3) ....................................................................................... 14

        1.    Common Questions Predominate ..................................... 15

        2.    A Class Action Is A Superior Mechanism For Adjudication ..................... 15

II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ............................. 16

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED BY THE COURT ................................. 18

    A.    The Proposed Settlement Is Procedurally Fair (Fed. R. Civ. P.
23(e)(2)(B)) ................................................................................. 19

    B.    The Proposed Settlement Is Substantively Fair ............................ 20

        1.    Litigation Through Trial Would Be Complex, Costly, And
Long (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factor 1) ..................... 20

        2.    The Reaction Of The Class Is Overwhelmingly Positive
(Fed. R. Civ. P. 23(e)(2)(C)(ii) And *Grinnell* Factor 2) ..................... 22

        3.    Discovery Has Advanced Far Enough To Allow The Parties
To Responsibly Resolve The Case (*Grinnell* Factor 3) ..................... 23

i

4.   The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 4, 5, And 6) ........................................ 24

5.   Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ...................................................................................... 25

6.   The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 8 And 9) ................... 26

CONCLUSION ............................................................................................................... 27

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    271 F. App'x 41 (2d Cir. 2008) ........................................................................ 17

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 14, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ....................................................................................... 15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ........................................................................ 12, 13

*Beckman v. Keybank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ............................................................................ 10

*Chimeno-Buzzi v. Hollister Co.*,
    2015 WL 9269266 (S.D. Fla., Dec. 18, 2015) .................................................. 13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................... 20, 22, 26

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................ 9

*Coulter-Owens v. Time, Inc.*,
    308 F.R.D. 524 (E.D. Mich. 2015) ........................................................... passim

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ....................................................................... 10

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .......................................................... 12, 13, 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................ 16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................... 18, 25, 26, 27

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................................... 27

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................... 23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................................ 19

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................ 20, 24, 25

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................ 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 17

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................ 22

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................ 22

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................ 24

*In re Petrobas Sec.*,
   862 F.3d 250 (2d Cir. 2017) ........................................................ 14

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ........................................................ 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ........................................................ 15

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................ 20, 22, 24

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ........................................................ 27

*Kinder v. Meredith Corporation*,
   2016 WL 454441 (E.D. Mich. 2016) ........................................................ 11, 15

*Krueger v. N.Y. Tel. Co.*,
   163 F.R.D. 433 (S.D.N.Y. 1995) ........................................................ 10

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................ passim

*Marek v. Lane*,
   571 U.S. 1003 (Nov. 4, 2013) ........................................................ 22

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ........................................................ 9, 11

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012) ........................................................ 23

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) .................................................................. 15

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ....................................................................... 19

*Michalow v. E. Coast Restoration & Consulting Corp.*,
    2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011) ............................................ 10

*Monaco v. Stone*,
    187 F.R.D. 50 (E.D.N.Y. 1999) .................................................................. 10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................................................ 26

*Parker v. Time Warner Entertainment Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) ................................................................ 11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................... 9, 11, 12

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)........................................................................ 14

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................. 21

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
    2004 WL 2997957 (S.D.N.Y. May 14, 2004) ............................................ 27

*Tiro v. Public House Invs., LLC*,
    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)............................................ 18

*Torres v. Gristede's Oper. Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................................ 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................... 17, 18, 19

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988)................................................................. 17, 18

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).............................................. 16

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................... 16

**STATUTES**

Michigan Preservation of Personal Privacy Act,
    M.C.L. §§ 445.1711-1715................................................................. passim

**RULES**

Fed. R. Civ. P. 16 ........................................................................................................... 5

Fed. R. Civ. P. 23 .................................................................................................... passim

Fed. R. Civ. P. 26 ........................................................................................................... 6

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...................................................................................... 5

**OTHER AUTHORITIES**

H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West) ..................................................... 3

## INTRODUCTION

On January 24, 2019, this Court preliminarily approved the Class Action Settlement between Plaintiff Josephine James Edwards ("Plaintiff") and Defendant Hearst Communications, Inc. ("Defendant" or "Hearst") and directed that notice be sent to the Settlement Class.  ECF No. 299.[1]  The settlement administrator, JND Legal Administration ("JND") has implemented the Court-approved notice plan and direct notice has reached 88.9% of the certified Settlement Class.  The reaction from the Class has been overwhelmingly positive, which is not surprising given that this $50 million cash Settlement is by far the largest ever under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("VRPA").  Specifically, of the approximately 3,930,421 Settlement Class Members, zero objected, and only 43 requested to be excluded.[2]  As of April 1, 2019, 294,748 claim forms have been submitted.  Thus, the Court should have no hesitation in granting final approval to the unopposed Settlement.

The Settlement provides for substantial *pro rata* cash payments to Settlement Class Members, which will be approximately $104 per claimant after *pro rata* adjustment based on claims volume.  The Settlement creates a non-reversionary $50 million cash common fund, which will be used to pay all approved claims by Settlement Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees, costs, and expenses to Class Counsel to the extent awarded by the Court.

The $50 million cash fund is more than three times larger than the funds in the other settlements that have been finally approved by other courts in VRPA class actions.  *See Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, 1:15-cv-05671-NRB, ECF No. 143 (S.D.N.Y. Mar. 6, 2019) (granting final approval to a settlement that created a $13.75 million

---

[1] All "ECF No." citations are to the *Edwards* docket, unless otherwise noted.

[2] The deadline to object or opt-out of the Settlement was March 25, 2019.  ECF No. 299 ¶¶ 16, 21.

cash fund); *Ruppel v. Consumers Union of United States, Inc.*, 7:16-cv-02444-KMK, ECF No.

111 (S.D.N.Y. Dec. 4, 2018) (granting final approval to a settlement that created a $16.375

million cash fund); *Perlin v. Time Inc.*, 2:16-cv-10635-GCS, ECF No. 55 (E.D. Mich. Oct. 15,

2018) (granting final approval to a settlement that created a $7.4 million cash fund); *Taylor v.*

*Trusted Media Brands, Inc.*, 7:16-cv-01812-KMK, ECF No. 87 (S.D.N.Y. Feb. 1, 2018)

(granting final approval to a settlement that created an $8.225 million cash fund); *Moeller v.*

*American Media Inc.*, 5:16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (granting

final approval to a settlement that created a $7.6 million cash fund); *Coulter-Owens v. Rodale,*

*Inc.*, 1:14-cv-11284-RHC, ECF No. 54 (E.D. Mich. Sept. 29, 2016) (granting final approval to a

settlement that created a $4.5 million cash fund); *Kinder v. Meredith Corp.*, 1:14-cv-11284-TLL,

ECF No. 72 (E.D. Mich. Oct. 5, 2015) (granting final approval to a settlement that created a $7.5

million cash fund); *Halaburda v. Bauer Publishing Co.*, 2:12-cv-12831-GCS, ECF No. 68 (E.D.

Mich. Jan. 6, 2015) (granting final approval to a settlement that created a $775,000 cash fund).

Moreover, when compared to approved settlements of cases alleging violations of similar

privacy statutes – which typically offer no monetary relief to the class whatsoever – the fairness,

reasonableness, and adequacy of the instant Settlement becomes even more apparent.  *See, e.g.*,

*Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013)

(approving a settlement of federal Video Privacy Protection Act ("VPPA") claims with $9.5

million to *cy pres* as the sole form of monetary relief).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and

adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the VRPA "to preserve personal privacy with respect to

the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."

H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West).  The VRPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the VRPA authorizes civil actions and provides for statutory damages in the amount of $5,000, plus costs and reasonable attorneys' fees.  *See id.* § 445.1715.

## B.   Plaintiff's Allegations

Hearst is an international media company that publishes widely-circulated magazines throughout the United States, such as *Country Living, Good Housekeeping*, *Redbook*, and *O, The Oprah Magazine.  See* Consolidated Class Action Complaint, ECF No. 218 ["Compl."], ¶ 1. Plaintiff alleges that Hearst sells information related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 8, 40-46.  To increase the value of such information, Plaintiff alleges that Hearst trades its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 8, 40-42.  Plaintiff further alleges that Hearst thereafter "enhances" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then sells the enhanced information to other unrelated third parties for a profit.  *Id.* ¶¶ 8, 40-42.

Plaintiff further alleges that no matter how consumers subscribe (*i.e.*, via postcard, over the phone, on Hearst's website, or through a subscription agent's website), Hearst's customers never provide consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 8, 43-44.  This is because – during the subscription process – Plaintiff claims that

customers are not required to consent to any terms or policies informing them of Hearst's disclosure practices.  *Id.*

### C.   The Litigation History And Settlement Discussions

On May 21, 2015, Suzanne Boelter filed a putative class action on behalf of Hearst subscribers alleging violations of the VRPA.  *See Boelter v. Hearst Communications, Inc.*, No. 1:15-cv-03934-AT-JLC, ECF No. 1 (S.D.N.Y. May 21, 2015).  On June 13, 2015, Hearst filed a letter requesting a premotion conference on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Final Approval ("Marchese Decl.") ¶ 5 (citing *Boelter*, ECF No. 11).  On August 17, 2015 – after the Court granted permission – Hearst filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  *Id.* ¶ 6 (citing *Boelter*, ECF No. 17).  On September 14, 2015, Ms. Boelter opposed Hearst's motion to dismiss.  *Id.* (citing *Boelter*, ECF No. 28).  On October 2, 2015, Hearst filed a reply in support of its motion to dismiss.  *Id.* (citing *Boelter*, ECF No. 32).

On November 24, 2015, Plaintiff Josephine James Edwards filed this putative class action asserting essentially the same claims as the previously filed *Boelter* action.  *Id.* ¶ 7 (citing ECF No. 1).  On February 8, 2016, the Court entered a Stipulation and Order to Consolidate this case with *Boelter*.  *Id.* ¶ 8 (citing ECF No. 13).  On February 26, 2016, Plaintiff and Ms. Boelter filed a Consolidated Class Action Complaint.  *Id.* (citing *Boelter*, ECF No. 67; *see also* ECF No. 218).

On March 11, 2016, the Parties refiled their briefing on Hearst's motion to dismiss under Rules 12(b)(1) and 12(b)(6).  *Id.* ¶ 9 (citing ECF No. 18).  On May 17, 2016, the Court ordered the Parties to submit supplemental briefing on Hearst's motion to dismiss to address the impact of the Supreme Court's decision in *Spokeo v. Robins* and to address the impact of amendments to the VRPA that were enacted after Hearst's motion to dismiss had been fully briefed.  *Id.* ¶ 10

(citing ECF No. 21).  On May 31, 2016, Hearst submitted its supplemental brief.  *Id.* (citing ECF No. 22).  On June 14, 2016, Plaintiff and Ms. Boelter submitted their supplemental brief. *Id.* (citing ECF No. 24).  On June 17, 2016, the Court issued an order denying Hearst's motion to dismiss in its entirety.  *Id.* ¶ 11 (citing ECF No. 26).

On August 9, 2016, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and entered a phased discovery schedule.  *Id.* ¶ 12 (citing ECF Nos. 39 & 40).  Phase I discovery focused on the claims of the named Plaintiff and Ms. Boelter, while Phase II discovery focused on the claims of the putative class.  *Id.*

On October 17, 2016, the Parties entered into a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) voluntarily dismissing Ms. Boelter's individual claims with prejudice. *Id.* ¶ 13 (citing ECF No. 67).

During Phase I discovery, the Parties produced and reviewed thousands of pages of documents, engaged in a number of meet-and-confer teleconferences, brought six discovery disputes to Magistrate Judge Cott, and took five depositions, including depositions of the Parties, and of three third parties.  *Id.* ¶ 14.

After the completion of Phase I discovery, on April 3, 2017, Hearst filed a motion to dismiss and a motion for summary judgment.  *Id.* ¶ 15 (citing ECF No. 132).  On May 1, 2017, Plaintiff filed an opposition to Hearst's motions, as well as her own motion for partial summary judgment.  *Id.* (citing ECF Nos. 140 & 146).  On May 22, 2017, Hearst filed an opposition to plaintiff's motion for partial summary judgment, and a reply brief in support of its motion to dismiss and for summary judgment.  *Id.* (citing ECF Nos. 160 & 165).  On June 7, 2017, Plaintiff filed a reply brief in support of her motion for partial summary judgment.  *Id.* (citing ECF No. 171).

On September 7, 2017, the Court issued a Memorandum Order granting in part and denying in part the Parties' motions for summary judgment, and denying Hearst's motion to dismiss. *Id.* ¶ 16 (citing ECF No. 182). In part, the Court's Memorandum Order found that Hearst had violated the VRPA by disclosing Plaintiff's personal information to third parties. *Id.* (citing ECF No. 182 at 45, 54-55). The Parties then engaged in Phase II discovery, which was extensive and included: (1) the production and review of millions of pages of documents, (2) numerous meet-and-confer teleconferences regarding the scope of discovery, (3) three discovery disputes before Magistrate Judge Cott, (4) seven depositions of fact witnesses, including third-party witnesses, (5) the procurement of four declarations from third parties in lieu of depositions, and (6) expert discovery, including the Parties submitting three Expert Reports and engaging in three expert depositions. *Id.* ¶ 17. The Parties substantially completed Phase II discovery on June 7, 2018. *Id.*

From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of settlement. *Id.* ¶ 18. Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before former U.S. Magistrate Judge Frank Maas (of the U.S. District Court for the Southern District of New York), who is a neutral affiliated with JAMS New York. *Id.* ¶ 19. On March 12, 2018, the Parties participated in a mediation before Judge Maas at JAMS's offices in New York. *Id.* ¶ 20. The mediation lasted approximately 3 hours. *Id.* While the Parties engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach an agreement. *Id.*

Thereafter, the Parties agreed to participate in a second mediation with Jay Cohen, Esq. *Id.* ¶ 21. On June 11, 2018, the Parties participated in a mediation with Mr. Cohen at the New York offices of Pillsbury Winthrop Shaw Pittman, LLP. *Id.* ¶ 22. The mediation lasted

approximately 15 hours. *Id.* At the conclusion of the mediation, the Parties reached agreement

on all material terms of a class action settlement, and executed a term sheet. *Id.* Thereafter the

Parties drafted and executed the Settlement Agreement and related documents which are

submitted herewith. *Id.* ¶ 23. On January 24, 2019, the Court granted preliminary approval to

the Settlement. ECF No. 299.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement ("Agreement" or "Settlement"), attached to

the Marchese Declaration as Exhibit A, are briefly summarized as follows:

### A.  Class Definition

As part of preliminary approval, the Court provisionally certified a class for settlement

purposes of: "all Persons with a Michigan street address at any time on or before July 30, 2016

who purchased and/or had a subscription to a Hearst Publication on or before July 30, 2016."

ECF No. 299 ¶ 9; Agreement ¶ 1.31.[3]

### B.  Monetary Relief

Hearst has established a $50 million non-reversionary cash Settlement Fund, from which

each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion

after payment of notice and administrative expenses, attorneys' fees, and an incentive award to

the Class Representative.  Agreement ¶¶ 1.33, 2.1.  No portion of the Settlement Fund will revert

back to Hearst. *Id.* ¶ 1.33.  Individual cash payments are estimated to be approximately $104.

### C.  Release

In exchange for the relief described above, Hearst and each of its related and affiliated

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action
and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies,
successors, predecessors, and any entity in which the Defendant or its parents have a controlling
interest and their current or former officers, directors, agents, attorneys, and employees; (3)
persons who properly execute and file a timely request for exclusion from the class; and (4) the
legal representatives, successors or assigns of any such excluded persons.

entities as well as all "Released Parties" as defined in ¶ 1.27 of the Settlement will receive a full release of all claims arising out of or related to Hearst's disclosure of its Michigan customers' magazine subscription information.  *See id.* ¶¶ 1.26-1.28.

### D.   Notice And Administration Expenses

Hearst has paid, and will continue to pay or cause to be paid, all notice and administration expenses out of the Settlement Fund.  *Id.* ¶¶ 1.29, 1.33.

### E.   Incentive Award

In recognition for her efforts on behalf of the Settlement Class, Hearst has agreed that Plaintiff James Edwards may receive, subject to Court approval, an incentive award of $10,000 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action.  *Id.* ¶¶ 1.33, 8.3.

### F.   Attorneys' Fees And Expenses

Hearst has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees, and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶ 8.1.  Class Counsel petitioned the Court for an award of attorneys' fees equal to one-third of the Settlement Fund, plus reimbursement of costs and expenses.  *Id.*; *see also* ECF No. 302.  That motion is unopposed, and there were no objections to it.  Payment of attorneys' fees, costs, and expenses is due within 10 days after entry of the Court's Final Judgment.  *Id.* ¶ 8.2.

## **ARGUMENT**

## I.   **CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE**

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of:  "all Persons with a Michigan street address at any time on or before July 30, 2016 who purchased and/or had a subscription to a Hearst Publication on or before July 30, 2016."

ECF No. 299 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The  Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (granting plaintiff's motion for class certification of a VRPA claim against another magazine publisher); Marchese Decl. Ex. D, 1/31/18 *Trusted Media Brands* Fairness Hearing Transcript ("*TMBI* Hearing Tr.") at 9:2-4 (certifying class for VRPA settlement).

## A. Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

483 (2d Cir. 1995).

Here, the Settlement Class easily satisfies Rule 23's numerosity requirement.  According to Hearst's records, the Settlement Class is comprised of approximately 3,930,421 persons with a Michigan street address at any time on or before July 30, 2016 who purchased and/or had a subscription to a Hearst Publication on or before July 30, 2016.  Marchese Decl. ¶ 24.  There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  The disputed issue of law or fact must "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class."  *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (internal quotations omitted).  "[A] single common issue of law will satisfy the commonality requirement."  *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims."  *Monaco*, 187 F.R.D. at 61.  Courts find common issues of law even if there is "some factual variation among class members' specific grievances."  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008).

Here, Plaintiff alleges that the common contention on which the claims of all Class Members depends is that Hearst disclosed each of its customers' protected personal reading information to third parties in violation of the VRPA.  Plaintiff contends that determination of

10

the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises common questions that track the elements of a VRPA claim.  Numerous courts considering settlement classes in the context of VRPA claims have agreed.  *See, e.g.*, *TMBI* Hearing Tr. at 6:11-15; *Moeller*, 5:16-cv-11367-JEL, ECF No. 42; *Kinder*, 2016 WL 454441, at *1.  Moreover, the only court to consider a contested motion for class certification under the VRPA certified the class.  *See Coulter-Owens*, 308 F.R.D. at 532-34 (finding VRPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law.  *See, e.g.*, *Parker v. Time Warner Entertainment Co*., 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").  Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.    Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was

directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936-37.

Here, Plaintiff alleges that Hearst's disclosure of her subscriptions is not a one-off situation unique to her, but rather, part of Hearst's alleged business of disclosing its customers' subscription information to third parties without consent. Compl. ¶¶ 1-4, 7-8, 40-46. It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the Settlement Class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose. And, because Plaintiff alleges that such conduct violates the VRPA, which provides identical statutory damages to all members of the Settlement Class, her claims are typical of the other Settlement Class Members. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g.*, *TMBI* Hearing Tr. at 6:15-16; *Coulter-Owens*, 308 F.R.D. at 534-35; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### D.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether:  1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a

Michigan customer that purchased a magazine subscription from Hearst and then allegedly had her subscription information disclosed to third parties without her consent.  Compl. ¶¶ 8, 40-46. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.  Moreover, Plaintiff was extensively involved in the litigation and settlement of this case.  *See* Declaration of Josephine James Edwards, ECF No. 305 ¶¶ 3-11; Declaration of Joseph I. Marchese, ECF No. 303 ¶¶ 130-132; Declaration of David P. Milian, ECF No. 304 ¶¶ 18-20.

Likewise, Class Counsel – Bursor & Fisher, P.A. and Carey Rodriguez Milian Gonya, LLP – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Marchese Decl. ¶¶ 31-35.  Class Counsel regularly engages in major complex litigation involving consumer privacy, including recent VRPA cases, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country, including this Court.  *Id.*; *see* Marchese Decl. Ex. B (Firm Resume of Bursor & Fisher, P.A.); Ex. C (Firm Resume of Carey Rodriguez Milian Gonya, LLP); *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Farnham v. Caribou Coffee Company, Inc.*, Case No. 16-cv-00295-WMC, ECF No. 105 at 19-20 (W.D. Wis., Dec. 15, 2017) (describing Carey Rodriguez Milian Gonya, LLP as competent and approving $8.5 Million class settlement); *Chimeno-Buzzi v. Hollister Co.*, 2015 WL 9269266, at *1-2 (S.D. Fla., Dec. 18,

13

2015) (appointing Carey Rodriguez Milian Gonya class counsel in a  $10 Million class wide settlement and noting that counsel "are experienced and adequate counsel").

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.   The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability." *Ebin*, 297 F.R.D. at 566-67.  "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definitive boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).  Here, the Settlement Class is defined as "all Persons with a Michigan street address at any time on or before July 30, 2016 who purchased and/or had a subscription to a Hearst Publication on or before July 30, 2016." ECF No. 299 ¶ 9.  "[T]his class satisfies the ascertainability requirement as it is limited to Michigan residents who subscribed to the aforementioned publications between the prescribed time period." *TMBI* Hearing Tr. at 7:20-23.

### F.   The Proposed Settlement Class Meets The Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.   Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a classwide basis, even when there are some individualized damage issues." *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013).

In this case, Hearst allegedly engaged in a common course of conduct provable by common evidence, including subscriber lists, payment records, and data transmission records.  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues.  *See TMBI* Hearing Tr. at 8:13-21; *Moeller*, 5:16-cv-11367, ECF No. 42; *Kinder*, 2016 WL 454441, at *2; *Coulter-Owens*, 308 F.R.D. at 536; *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

### 2.   A Class Action Is A Superior Mechanism For Adjudication

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation."  Fed. R. Civ. P. 23(b)(3).[4]  "Courts have found that the superiority requirement is satisfied where[] [t]he potential class members are both

---

[4] Whether the case would be manageable as a class action at trial is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

significant in number and geographically dispersed[,] [and] [t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *13-14 (S.D.N.Y. Sept. 4, 2014). "Class adjudication … is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims. Given that there are approximately 3,930,421 Settlement Class Members, the class device is the most efficient and fair means of adjudicating these claims. "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the time and other resources to bring their claims individually." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013); *see also Coulter-Owens*, 308 F.R.D. at 536-37 (finding superiority was satisfied because "a class action lawsuit, rather than potentially hundreds of separate lawsuits, achieves economies of time, effort, and expense"). Moreover, Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations. Therefore, a class action is the superior method of adjudicating the Settlement Class Members' claims.

## II.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such

notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice via a postcard or email to 88.9% of the Settlement Class.  *See* Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") ¶ 15.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* ECF No. 299 ¶ 12.  The Plan has now been fully carried out by professional settlement administrator JND.  Pursuant to the Settlement, Hearst provided JND with a list of 3,942,910 available names, addresses and emails of potential Settlement Class Members.  *See* Keough Decl. ¶ 7.  After JND removed duplicates, the Class List contained 3,930,421 unique members.  *See id.* ¶ 8.  JND successfully delivered the Court-

approved notice via email to 1,020,509 class members and via postcard to 2,474,054 class

members.  *See id.* ¶ 15, Ex. D.  Accordingly, the Court-approved notice successfully reached

88.9% of the Settlement Class directly.  *See id.*[5]  These summary notices also directed Settlement

Class Members to the Settlement Website, where they were able to submit claims online; access

important court filings, including the Motion for Attorneys' Fees and all related documents; and

see deadlines and answers to frequently asked questions.  *See id.* ¶ 17.

Given the broad reach of the notice, and the comprehensive information provided, the

requirements of due process and Rule 23 are easily met.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and

substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).[6]  To determine

whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of

the 'strong judicial policy in favor of settlement' of class action suits."  *Tiro v. Public House*

*Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013).  "Fairness is determined upon

review of both the terms of the settlement agreement and the negotiating process that led to such

agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A

presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

*Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class

---

[5] On July 20, 2018, JND also notified the appropriate state and federal officials pursuant to
CAFA.  *See* Keough Decl. ¶¶ 4-6.

[6] Effective December 1, 2018, Rule 23(e) was amended.  The 2018 amendment to Rule 23(e)
provides factors for the Court to consider for approval of a proposed class action settlement.  *See*
Fed. R. Civ. P. 23(e)(2).  The new Rule 23(e)(2) factors overlap with the Second Circuit's
*Grinnell* factors, as set forth and discussed below.

actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.  *Id.* at 117.  If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

**A.     The Proposed Settlement Is Procedurally Fair (Fed. R. Civ. P. 23(e)(2)(B))**

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).

The Settlement was reached after two mediation sessions with well-respected mediators. And the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  Moreover, the Settlement was reached after over three years of litigation, and after the Parties had completed both Phase I and Phase II discovery and had received a decision on their motions for summary judgment. *See* Marchese Decl. ¶¶ 4-17 (summary of litigation); *id.* ¶¶ 18-23 (summary of negotiations).  In such situations, the Second Circuit adopts "a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.").

19

**B.     The Proposed Settlement Is Substantively Fair**

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate.  "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012).  The nine *Grinnell* factors include:  "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463).  However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances."  *Id.*  Here, the *Grinnell* factors weigh in favor of final approval.

**1.     Litigation Through Trial Would Be Complex, Costly,
And Long (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell*
Factor 1)**

By reaching a favorable settlement prior to trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation

with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389

(S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed above, the Parties have engaged in extensive

document and deposition discovery, including third-party and expert discovery.  Marchese Decl.

¶¶ 4-17.  The Parties also engaged in dispositive motion practice in Phase I.  *Id.*  The next steps

in the litigation would have been resolution by the Court of Plaintiff's motion for class

certification, and then of the Parties' motions for summary judgment on the class claims, which

would be at minimum costly and time-consuming for the Parties and the Court, and would

involve a risk that a litigation class would not be certified, in which case class members would

recover nothing at all.  Hearst had indicated that it would continue to assert numerous defenses

on the merits, including that the VRPA does not prohibit the disclosure of the magazine

information at issue at all.  *Id.* ¶ 27.  More specifically, Plaintiff is aware that Hearst would

continue to assert that the VRPA neither prohibits the disclosure of the magazine subscriptions

information at issue (because the recipients of the disclosures are its agents), nor applies to

Hearst at all because it is not engaged in the business of selling magazines "at retail," as is

required to come under the scope of the statute.  Hearst would also continue to challenge

Plaintiff's standing, and the constitutionality of the VRPA, as well as its applicability to

magazines in particular and the magazine publishing industry in general.  Plaintiff and Class

Counsel are also aware that Hearst would oppose class certification vigorously, and that Hearst

would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware

that Hearst could appeal the merits of any adverse decision, and that in light of the statutory

damages in play it would argue – in both the trial and appellate courts – for a reduction of

damages based on due process concerns.  *See id.* ¶ 27.

The Settlement, on the other hand, permits a resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will come years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial, or on appeal.

Against that backdrop of uncertainty, the benefits of the Settlement are obvious and unmistakable:  it creates the largest settlement fund ever in a VRPA case and delivers immediate cash relief to the Settlement Class years earlier than if the case proceeded to judgment through trial and/or appeals.  Specifically, the $50 million settlement fund for the benefit of approximately 3,930,421 potential class members will provide an estimated $104 cash *pro rata* payment.  The reasonableness of the anticipated $104 *pro rata* payments becomes all the more apparent when looking at the relief afforded in the typical privacy settlement, where classes tend to be enormous, but individual class members receive only *cy pres* relief without any individual payments.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 571 U.S. 1003 (Nov. 4, 2013); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of $2,500 per claim were available to class members).  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 2.    The Reaction Of The Class Is Overwhelmingly Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) And *Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement."  *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *In re MetLife Demutualization*

22

*Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).  This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 299 ¶¶ 12-14), and direct notice reached 88.9% of the Settlement Class.  *See* Marchese Decl. ¶ 30; Keough Decl. ¶¶ 4-15.  As of April 1, 2019, 294,748 people filed claims, <u>zero</u> objected to the Settlement, and only 43 opted-out (a mere 0.001% of the Settlement Class).  *See* Keough Decl. ¶¶ 18-20. This exceptional participation rate and lack of objections from the Settlement Class leaves no question that the Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness."  *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

As discussed above, the Parties have conducted substantial discovery, including document production, interrogatories, depositions, third-party discovery, and expert discovery. *See supra*; *see also* Marchese Decl. ¶¶ 4-17.  The Parties also engaged in dispositive motion practice in Phase I.  *Id.*  The document productions included Plaintiff's and the proposed Class's magazine subscription records, records of transmissions of Plaintiff's and the proposed Class's

customer information to multiple third-party companies, and Hearst's purported notices of the disclosures.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

 "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of final approval.

> **4.   The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 4, 5, And 6)**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial.  *In re Vitamin C*, 2012 WL 5289514, at *5.  "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*.

Although Plaintiff's case is strong, it is not without risk.  At the time of the settlement, Hearst had made it clear that it would vigorously contest the certification of a litigation class, and, if a class was certified, file a motion for summary judgment as to the class claims.  In

weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian And German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in certifying a class and overcoming Hearst's summary judgment motion as to the class claims. Moreover, further litigation would only delay (if not deny) relief to the Class Members. The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class for litigation purposes and the Parties anticipate that such a determination would be reached only after exhaustive class certification briefing is filed. Hearst would likely argue that individual questions preclude class certification. Hearst would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Hearst would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed Settlement eliminates this risk, expense, and delay as well. Consequently, these *Grinnell* factors weigh in favor of final approval of the Settlement.

### 5.    Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Hearst probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Thus, at worst, this factor is neutral.

6.     **The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, the total settlement value is $50 million, and each Class Member is estimated to receive $104 in cash.  In addition, Hearst has agreed to pay the costs of notice and administration as well as reasonable attorneys' fees, costs, and expenses for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.33, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.

Further, Class Counsel estimates that class-wide statutory damages would exceed $10 billion.  Thus, it would not be possible to recover based on statutory damages in this matter, and any settlement negotiations based on statutory damages amounts were a non-starter.

Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically

larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

***

The *Grinnell* factors weigh in favor of approval, and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated:  April 4, 2019

Respectfully submitted,

By:     */s/ Joseph I. Marchese*
          Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com
          pfraietta@bursor.com

**CAREY RODRIGUEZ
MILIAN GONYA, LLP**
John C. Carey
David P. Milian*
1395 Brickell Avenue, Suite 700
Miami, FL 33131

Telephone: (305) 372-7474
Facsimile: (305) 372-7475
Email: jcarey@careyrodriguez.com
          dmilian@careyrodriguez.com
*Admitted *Pro Hac Vice*

*Class Counsel*